



U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
APR - 3 2014
CLERK, U.S. DISTRICT COURT
By _____
Deputy

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | | |
|---|---|---|
| HENRY LEE SIMS, JR., *et al* | § § § | |
| *Plaintiffs*, | § | |
| VS. | § § | CASE NO. 4:14-cv-00045-A |
| KIA MOTORS AMERICA, INC., | § § § | |
| *Defendant*. | § | |

**FIRST AMENDED COMPLAINT FOR DAMAGES**

## TABLE OF CONTENTS

**Page**

I. INCORPORATION ........................................................................................................ 3

II. PLAINTIFFS ................................................................................................................. 3

III. DEFENDANTS ............................................................................................................. 4

IV. JURISDICTION AND VENUE ..................................................................................... 4

V. FACTUAL ALLEGATIONS ......................................................................................... 5

    A. The Defects in the Kia Soul's Fuel System ........................................................ 5

    B. Plaintiffs' Injuries ............................................................................................. 11

VI. CAUSES OF ACTION – STRICT PRODUCTS LIABILITY ..................................... 12

VII. CAUSE OF ACTION - NEGLIGENCE ...................................................................... 13

VIII. CAUSE OF ACTION - BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY (CAL. COM. CODE § 2314) ................................................... 14

IX. CAUSE OF ACTION – WRONGFUL DEATH .......................................................... 15

X. CAUSE OF ACTION - SURVIVAL ........................................................................... 15

XI. PRAYER FOR RELIEF ............................................................................................... 16

XII. JURY DEMAND .......................................................................................................... 17

COME NOW Plaintiffs, and allege as follows:

## I.  INCORPORATION

1. By this reference, each paragraph contained herein is incorporated as support for each paragraph which follows.

## II.  PLAINTIFFS

2. Henry Lee Sims, Jr., is the natural son of Henry Lee Sims, Sr. Henry Lee Sims, Jr., is a resident of the State of Texas.

3. Timothy Everett Sims is the natural son of Henry Lee Sims, Sr. Timothy Everett Sims is a resident of the State of Texas.

4. Willie Earl Sims is the natural son of Henry Lee Sims, Sr. Willie Earl Sims is a resident of the State of Texas.

5. Shamika Renee Sims is the maternal granddaughter of Henry Lee Sims, Sr. Shamika Renee Sims is the natural daughter of Lizzie Sims, deceased. Lizzie Sims was the natural daughter of Henry Lee Sims, Sr. Shamika Renee Sims is a resident of the State of Texas.

6. Kathlyn Lenetta Sims is the natural daughter of Henry Sims, Sr. Kathlyn Lenetta Sims is a resident of the State of Texas.

7. Brence Eric Sims is the natural son of Henry Sims, Sr. Brence Eric Sims is a resident of the State of Texas.

8. Michael Andre Sims is the natural son of Henry Sims, Sr. Michael Andre Sims is a resident of the State of Texas.

9. Sarah Denise Sims is the natural daughter of Henry Sims, Sr. Sarah Denise Sims is a resident of the State of Texas.

10. Pamela Rachel Sims is the natural daughter of Henry Sims, Sr. Pamela Rachel Sims is a resident of the State of Texas.

11. When not otherwise specified, the term "Plaintiffs" shall refer to the named Plaintiffs collectively and in their capacity as legal heirs to the Estate of Henry Sims, Sr. When not otherwise specified, "Mr. Sims" shall refer to Henry Sims, Sr.

### III. DEFENDANTS

12. Defendant Kia Motors America, Inc. ("KMA") is a corporation with its principal place of business located in the State of California. According to its website, KMA is "the marketing and distribution arm of Kia Motors Corporation based in Seoul, South Korea. KMA offers a complete line of vehicles through more than 755 dealers throughout the United States."

13. Service of process upon KMA may be had at 11 Peters Canyon Road, Irvine, California, 92606.

14. Defendant Kia Motors Corporation ("KMC") is a Korean corporation headquartered in Seoul, Korea. Kia Motors America is a subsidiary of KMC. At all relevant times, KMC was actively involved in designing, manufacturing, assembling, marketing, distributing, and selling Kia vehicles in California and throughout the United States.

15. Service of process upon KMC may be had at 231 Yangjae-Dong, Seocho-gu, Seoul, Republic of Korea 137-938.

### IV. JURISDICTION AND VENUE

16. Jurisdiction is proper pursuant to 28 U.S.C. § 1332. There exists complete diversity between the parties and the amount in controversy exceeds $75,000.00.

17. This Court has personal jurisdiction over Defendants because a substantial portion of the wrongdoing alleged in this Amended Complaint occurred in this forum, the Defendants are authorized to do business in this forum, both KMA and KMC have intentionally availed themselves of the markets available in the State of Texas and because Defendant KMA voluntarily submitted to the jurisdiction of this Court by seeking transfer of the above-captioned action from the U.S. District Court for the Central District of California. Consequently,

Defendants have extensive contacts with the State of Texas rendering the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

18. The Court further has jurisdiction because all Plaintiffs reside in this forum.

19. Venue is proper in this forum pursuant to 28 U.S.C. § 1391 because a substantial part of the events, acts and omissions giving rise to Plaintiffs' claims occurred herein and because Defendant KMA previously requested that this action be transferred to this forum.

20. This action was original filed in the United States District Court for the Central District of California because Defendant KMA is headquartered in the State of California and Defendant KMC has substantial contacts and operations within the State of California. Because of the substantial interest of the State of California to regulate businesses, activities and/or wrongful conduct occurring and/or emanating from within its borders, the laws of the State of California apply to Plaintiffs' claims.

## V. FACTUAL ALLEGATIONS

### A. The Defects in the Kia Soul's Fuel System

21. On information and belief, KMC and/or KMA undertook the design of the Kia Soul in early 2005 under the direction of Tom Kearns, its Chief Designer. The Kia Soul was designed wholly or in part at the Design Center of America in the State of California.

22. The Kia Soul design is characterized by several defects related to its fuel system.

23. Given the hazards posed by a vehicle's gas tank, vehicle manufacturers must take reasonable steps to design and manufacture a gas tank that is not susceptible to failure in collisions and that, if fire in the gas tank does result, the fire does not immediately explode into the passenger cabin of the vehicle so that occupants have an opportunity to escape the burning car.

24. Standard safety devices call for the fuel tank to be protected by a shield or straps. Almost all cars sold in the United States have a gas tank that is either protected by a shield or reinforcing straps.

25. A gas tank shield is made of a separate piece of sheet metal, which holds the gas tank in place and substantially improves the tank's ability to withstand puncture in an accident.

26. Reinforcing straps tie the gas tank to the frame of the vehicle and ensure that the tank will not dislodge or drop in an accident. Below is a photograph of the underside of a non-Kia vehicle (a 2006 Honda civic) that has its gas tank secured with straps:



27. Failure to use a gas tank shield or reinforcing straps, as most auto manufacturers do, increases the risk that the gas tank will dislodge and ignite in a collision.

28. Other safe design and manufacturing considerations must be given to the vehicle's fuel pump. The fuel pump transmits the gas from the tank to the engine, and it must

be located in a safe place.  Although not common, in some vehicle models, technicians can access the fuel pump through the passenger cabin if the fuel pump needs service.  It is easier and less costly to access the fuel pump in this manner than it is to remove the fuel tank to access the pump when the fuel pump is located inside the gas tank itself.  But when the fuel pump is accessible through the passenger cabin, manufacturers must ensure that the "service cover" for the fuel pump is made of metal and appropriately affixed so that a fire in a gas tank cannot quickly melt through the cover and invade the vehicle.

29.     Unfortunately, Kia has not heeded the foregoing safe design and manufacturing guidelines in the Kia Soul and has, as a result, unnecessarily exposed Plaintiffs to an unreasonable risk of harm.

30.     In the Kia Soul, the gas tank is located just forward of the rear axle and immediately under the rear passenger seats, as depicted in red in the following photograph of a Defective Soul:



31.     Given the gas tank's location and proximity to the rear passengers, the tank must be designed and manufactured in a manner that ensures the safety of those in the car. It was not.

32.     The Kia Soul fails to shield or strap the gas tank – omitting both of these crucial protections. It did so despite the fact that Kia has incorporated fuel tank straps in certain models.

33.     Again, failing to use a gas tank shield or reinforcing straps increases the risk that the gas tank will dislodge and ignite in a major collision. The risk is particularly heightened in the Soul because of the gas tank's location immediately under the rear passenger seats.

34.     This is a defect and presents a significant safety risk exposing Kia Soul passengers to a risk of serious injury or death in the event of an accident.

35.     Kia is well aware of the need to affix the gas tank by using reinforcing straps. Kia has used straps on some of its vehicles and issued a recall in 2011 of 2003-2007 model year Spectra's in northern climates where road salt is used. As the recall notice explained:

> THERE IS A POSSIBILITY THAT CORROSION OF THE FUEL TANK STRAPS WHICH HOLD THE TANK MAY OCCUR AS A RESULT OF PROLONGED EXPOSURE TO ROAD SALT. AS A RESULT OF THE CORROSION, ONE OR BOTH STRAPS MAY SEPARATE ALLOWING THE FUEL TANK TO CONTACT THE GROUND AND POSSIBLY DISRUPT THE INTEGRITY OF THE TANK. **CONSEQUENCE:** THE FUEL TANK CAN FALL FROM THE VEHICLE AND STRIKE THE GROUND WHICH COULD CAUSE A FUEL LEAK. LEAKING FUEL CAN CREATE A FIRE HAZARD.

36. The fuel pump cover in the Kia Soul is located immediately under the rear seat cushion and is made of plastic, increasing the likelihood of a "blow-torch" fire in the rear compartment.

37. The service cover for the fuel pump is plastic and is located underneath the rear seat cushion as shown in the following photographs taken of a Defective Soul:





38.     Thus, the only thing separating the rear passenger from these plastic fuel pump service covers is the seat cushion on which the passenger sits.

39.     This is a highly dangerous location for a fuel pump service cover made of plastic, particularly given the other gas tank defects itemized above that already make the gas tank unreasonably dangerous.  This location, coupled with the use of a plastic instead of a metal fuel pump service cover that is screwed to the floor pan of the vehicle, increases the likelihood that fire will penetrate the rear cabin in a "blow-torch" effect following a collision.

40.     This is a defect and presents a significant safety risk exposing Kia Soul passengers to a risk of serious injury or death in the event of an accident.

41.     Kia promoted the Soul as a "Top Safety Pick" with "advanced safety systems," with "safety awards from IIHS and NHTSA for added peace of mind."

42. A brochure/advertisement for the 2013 Soul proclaims that the Kia Soul is a "2012 Top Safety Pick Insurance Institute For Highway Safety" and that this award provided added "peace of mind."

43. Given the gas tank defects itemized above, marketing statements that the Kia Soul is safe, "world class," and has "world-class quality" are false and misleading.

44. Defendants made these representations to boost vehicle sales knowing that the gas tanks in the Soul were defective.

45. Throughout the relevant period, Defendants possessed vastly superior information to that of Plaintiffs – if not exclusive information – about the design and function of the gas tanks in the Kia Soul.

46. To date, Defendants have never disclosed the defects inherent in the Kia Soul's fuel system.

## B. Plaintiffs' Injuries

47. On April 28, 2013, Henry Sims, Sr. was riding as a passenger in a 2010 Kia Soul. Mr. Sims was one of three passengers seated in the backseat of the vehicle.

48. At approximately 2:00 p.m., the vehicle was traveling northbound on Jacksboro State Highway. As the Kia Soul approached the intersection of Jacksboro State Highway and the Hanger Cutoff Road, near Fort Worth, Texas, it was struck by another vehicle heading southbound on Hanger Cutoff Road.

49. As a result of the collision, the Kia Soul in which Mr. Sims was riding began to spin clockwise. The vehicle struck a signal light pole and later a "Yield" sign located at the intersection.

50. The vehicle caught fire after striking the "Yield" sign. Because the fuel tank had ruptured, flames quickly engulfed the vehicle. The two individuals riding in the front of the Kia Soul were able to escape with minor injuries. However, the three passengers riding in the

backseat, including Mr. Sims, were trapped in the vehicle and succumbed to the fire. All three passengers, including Mr. Sims, were pronounced dead at the scene.

## VI. CAUSES OF ACTION – STRICT PRODUCTS LIABILITY

51. At all times relevant, Defendants KMA and/or KMC were involved in the design, manufacture, assembly, testing, marketing, sale, distribution and/or servicing of the Kia Soul, and its component parts, in which Mr. Sims was riding at the time of his death.

52. Defendants KMC and KMA were responsible for placing the 2010 Kia Soul into the stream of commerce in the State of California.

53. It was reasonably foreseeable to Defendants KMC and KMA that collisions similar to the one that claimed the life of Mr. Sims would occur during the normal and ordinary use of its vehicles, including the 2010 Kia Soul.

54. Whether a gas tank is designed and manufactured with appropriate safeguards is a material safety concern. Defendants KMA and KMC had a duty to disclose and warn of these material facts regarding potential defects in the Kia Soul's fuel system because they were known and/or readily accessible only to Defendants who have superior knowledge and access to the facts, and Defendants knew they were not known to or reasonably discoverable by Plaintiffs. These omitted facts were material because they directly impact the safety of the Kia Soul.

55. Defendants' concealment was done maliciously, oppressively, consciously and deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' rights and well-being and in order to enrich Defendants. Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to the proof adduced at trial.

56. The vehicle in which Mr. Sims was a passenger did not perform safely as an ordinary consumer of the 2010 Kia Soul would expect, despite the vehicle's use for its intended purpose.

57. The fuel system and/or safety features of the 2010 Kia Soul in which Mr. Sims was a passenger were defectively manufactured, designed, assembled, sold, marketed, engineered, distributed and/or tested.

58. The acts and/or omissions of Defendants KMA and KMC were a proximate cause of the death of Henry Sims, Sr.

59. The acts and/or omissions of Defendants KMA and KMC were a proximate cause of the Plaintiffs' damages, both individually and on behalf of the Estate of Henry Sims.

## VII. CAUSE OF ACTION - NEGLIGENCE

60. At all times relevant, Defendants KMA and/or KMC were involved in the design, manufacture, assembly, testing, marketing, sale, distribution and/or servicing of the Kia Soul, and its component parts, in which Mr. Sims was riding at the time of his death.

61. At all times relevant, Defendants KMA and KMC owed Plaintiffs a duty to exercise reasonable care in the design, manufacture, marketing, sale, assembly, distribution and/or testing of the Kia Soul, and its component parts, including a duty to ensure that the vehicle did not cause Plaintiffs, other users, bystanders and/or members of the public, unnecessary injury or death.

62. It was reasonably foreseeable to Defendants that collisions similar to the one involving Mr. Sims would occur during the normal and ordinary use of its vehicles.

63. The injuries suffered by Plaintiffs occurred because the vehicle in which Mr. Sims was traveling was not reasonably crashworthy and/or not reasonably fit to safely withstand foreseeable collisions with other vehicles and/or with fixed objects.

64. Defendants KMA and KMC knew or should have known that the 2010 Kia Soul in which Mr. Sims was a passenger was unreasonably dangerous in the event it was involved in a collision like the one involving Mr. Sims, yet concealed that fact from Plaintiffs and the public. Consequently, Defendants KMA and KMC were negligent and breached their duty of care to Plaintiffs in the following ways:

      a.    Defendants KMA and KMC failed to exercise due care in the design, manufacture, assembly, marketing, sale, engineering, distribution and/or testing of the 2010 Kia Soul in order to avoid the types of injuries experienced by Plaintiffs;

      b.    Defendants KMA and KMC failed to incorporate within the 2010 Kia Soul reasonable safeguards to avoid catastrophic and uncontrollable fires resulting from collisions with other vehicles and/or fixed objects;

      c.    Defendants KMA and KMC failed to take adequate steps to identify and/or mitigate the safety risks, including the risks of catastrophic and uncontrollable fires resulting from collisions with other vehicles and/or fixed objects; and

      d.    Defendants KMA and KMC were otherwise careless or negligent in the design, manufacture, assembly, marketing, engineering and/or testing of the 2010 Kia Soul.

65.    As a direct result of Defendants negligence, Plaintiffs suffered harm in an amount to be determined by a jury following trial.

## VIII. CAUSE OF ACTION - BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (CAL. COM. CODE § 2314)

66.    Defendants are and were at all relevant times merchants with respect to motor vehicles under § 2104.

67.    Prior to the death of Mr. Sims, Defendants KMA and KMC impliedly warranted to members of the general public, including Plaintiffs, that the 2010 Kia Soul was of merchantable quality.

68.    Members of the general public, including Plaintiffs, were intended third-party beneficiaries of the implied warranty of merchantability.

69.    Plaintiffs relied upon the skill and judgment of Defendants KMA and KMC in the purchase, selection, and/or use of the 2010 Kia Soul as a safe and reliable means for transportation.

70.     The 2010 Kia Soul in which Mr. Sims was riding at the time of his death was not of merchantable quality as warranted by Defendants KMA and KMC, in that it was defectively designed, manufactured, marketed, sold, assembled, engineered, distributed and/or tested, thereby dangerously exposing the users and occupants to serious bodily injury.

71.     After Plaintiffs suffered the injuries described herein, notice was given by Plaintiffs to Defendants KMA and KMC, by filing this lawsuit of the breach of said warranty.

72.     As a direct and proximate result of the breach of said implied warranty, Plaintiffs sustained damages alleged herein in an amount to be proven at trial.

## IX.   CAUSE OF ACTION – WRONGFUL DEATH

73.     As alleged throughout this Amended Complaint, Mr. Sims died as a result of the defect, negligence, wrongful conduct and/or statutory violations of Defendants KMA and KMC.

74.     Plaintiffs are the heirs of Mr. Sims and have been harmed and suffered damages resulting from the acts and omissions of KMA and KMC.

75.     Plaintiffs seek general and special damages in connection with the loss of: financial support, gifts, benefits, services and for the pain suffering, mental and physical anguish, loss of care, comfort, society, companionship, advice and friendship of Mr. Sims. Plaintiffs seek all damages permitted by law, including punitive damages, resulting from the wrongful death of Mr. Sims in an amount to be proven at the time of trial.

## X.   CAUSE OF ACTION - SURVIVAL

76.     As alleged throughout this Amended Complaint, Mr. Sims died as a result of the defect, negligence, wrongful conduct and/or statutory violations of Defendants KMA and KMC.

77.     Decedent, Mr. Sims, suffered damages of a personal and pecuniary nature prior to his death, including but not limited to, personal property damage, personal injury, conscious physical and mental pain and suffering, disability, disfigurement, as well as medical expenses

and loss of earnings. Had Mr. Sims survived, he would have been entitled to bring an action for damages and such right of action survives his death.

78. Plaintiffs, as natural children, or issue of deceased children, of Mr. Sims, as survivors claim the following related to the death of Mr. Sims: loss of services, pain, suffering, mental and physical anguish and agony suffered by the decedent prior to his death, loss of care, comfort, protection, companionship, society, advice and friendship, recovery for grief, mental anguish, emotional pain and suffering and distress, medical and/or burial expenses, loss of lifetime earnings of decedent, punitive damages and all other damages allowed by law.

## XI. PRAYER FOR RELIEF

Wherefore, Plaintiffs request that the Court enter judgment against Defendants in the following fashion:

A. The full amount of Plaintiffs' economic damages;

B. The full amount of Plaintiffs' non-economic and/or general damages;

C. The full amount of damages suffered by the Estate of Henry Sims, Sr.;

D. Exemplary or punitive damages to the full extent allowed by law;

E. The full amount of Plaintiffs' damages for loss of consortium, society, companionship, advice, support guidance, or similar benefits, resulting from the wrongful death of Henry Sims, Sr.;

F. Plaintiffs' attorneys' fees and costs to the extent allowable;

G. Prejudgment interest on Plaintiffs' damages; and

H. Such other and further relief the Court deems just and proper.

## XII.   JURY DEMAND

Plaintiffs demand a trial by jury as provided by Federal Rule of Civil Procedure 38.

DATED: March 31, 2014

HAGENS BERMAN SOBOL SHAPIRO LLP

*/s/ Martin D. McLean*

**STEVE W. BERMAN** (*pro hac vice*)
WASB No. 12536
steve@hbsslaw.com
**MARTIN D. MCLEAN** (*pro hac vice*)
WASB No. 33269
martym@hbsslaw.com
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone:   (206) 623-7292
Facsimile:    (206) 623-0594

**MARC R. STANLEY**
State Bar No. 19046500
marcstanley@mac.com
**STANLEY LAW GROUP**
3100 Monticello Ave, Suite 770
Dallas, TX 75205
Telephone:   (214) 443-4301
Facsimile:    (214) 443-0358
**COUNSEL FOR PLAINTIFFS**