

CTS

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

FILED
U.S. DISTRICT COURT
NORTHERN DIST. OF TX
FT. WORTH DIVISION

2015 JAN 28  PM 3: 23

CLERK OF COURT

WJC

| | | |
|---|---|---|
| **HENRY LEE SIMS, JR.,** *et al* | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| **VS.** | § | **CASE NO. 4:14-cv-00045-A** |
| | § | |
| **KIA MOTORS AMERICA, INC., and** | § | |
| **KIA MOTORS CORPORATION** | § | |
| | § | |
| *Defendants.* | § | |

### DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

#### Preliminary Statement

In response to the Kia Defendants' motion for partial summary judgment on Shameka Sims' wrongful death claim, Plaintiffs argue that California law should apply to their claims. Plaintiffs make no other argument and concede that if Texas law applies, Shameka Sims has no standing to participate in this action. Because this lawsuit was originally filed in California but was transferred to the Northern District of Texas pursuant to 28 U.S.C. § 1404(a), this Court must utilize the California choice-of-law rules in deciding whether Texas or California law applies. Consequently, in ruling on this motion for partial summary judgment, the Court is now presented with one, straightforward choice-of-law issue:

> In resolving choice-of-law issues, California courts apply the governmental-interest analysis, which ultimately requires the application of the law of the state with the greatest interest. Here, all Plaintiffs are Texas residents; the vehicle at issue was purchased in Texas; and the last event necessary for liability (Plaintiffs' injury) occurred during an automobile accident on a Texas road. Should California law apply when California's only connection with the case is that Kia Motors America, Inc. is headquartered there?

That is the overarching question that Plaintiffs attempt to obscure in their response brief. In this reply, the Kia Defendants seek, in light of Plaintiffs' brief, to develop this issue and to treat the subissues as succinctly as possible.

---


# Table of Contents

Preliminary Statement.................................................................................................1

Table of Authorities....................................................................................................3

Argument & Authorities..............................................................................................5

   I.  According to California choice-of-law rules, Texas law should apply to the claims
      in this case. ......................................................................................................5

      A.  The applicable laws of Texas and California differ materially as to liability and
          damages. .................................................................................................5

      B.  Despite materially different laws, there is no true conflict because only Texas
          has an interest in having its laws applied. ................................................7

          1.  The "place of the wrong" is Texas, not California, because Texas is the
              state where the last event necessary to make the actor liable occurred...............8

          2.  As the place of the wrong, Texas has an interest in deterring allegedly
              harmful conduct within its borders....................................................12

          3.  Texas has a valid interest in shielding out-of-state businesses conducting
              business within state borders from what Texas considers to be excessive
              litigation. ..........................................................................................13

          4.  Texas has an interest in ensuring its residents are compensated and in
               determining the distribution of proceeds. ...........................................16

      C.  Even if this Court determines that a true conflict exists, Texas has a greater
          interest than California in the application of its own laws, and Texas' interest
          would be more significantly impaired if its laws are not applied...............................17

  II.  Because Texas law applies to this case, Shameka Sims does not have standing
      to bring a wrongful death action..................................................................21

  III.  The Kia Defendants did not waive their right to respond to Plaintiffs' argument
       that California law applies to this case. ......................................................21

Conclusion................................................................................................22

## Table of Authorities

**Cases**

*Barker v. Lull Eng'g Co.*, 573 P.2d 443 (Cal. 1978) ................................................................6

*Berkman v. City of Keene*, No. 3:10-CV-2378-B, 2011 WL 3268214
(N.D. Tex. July 29, 2011)..........................................................................................21

*Bernhard v. Harrah's Club*, 546 P.2d 719 (Cal. 1976) ...........................................................20

*BIC Pen Corp. v. Carter*, 346 S.W.3d 533 (Tex. 2011) ...........................................................6

*Birdsong v. Apple, Inc.*, 590 F.3d 955 (9th Cir. 2009)..............................................................6

*Castro v. Budget Rent-A-Car Sys., Inc.*, 65 Cal. Rptr. 3d 430 (Cal. Ct. App. 2007) ..................18

*Cortez v. Global Ground Support, LLC*, No. 09-4138 SC, 2010 WL 5173861
(N.D. Cal. Dec. 15, 2010) ..........................................................................................11

*Daly v. Gen. Motors Corp.*, 575 P.2d 1162 (Cal. 1978) ...........................................................7

*Downing v. Abercrombie & Fitch*, 265 F.3d 994 (9th Cir. 2001)..............................................14

*Ford Motor Co. v. Ledesma*, 242 S.W.3d 32 (Tex. 2007) .........................................................12

*Hernandez v. Burger*, 162 Cal. Rptr. 564 (Cal. Dist. Ct. App. 1980) ...................................16, 17

*Hill v. Novartis Pharm. Corp.*, No. 1:06–cv–00939–AWI–DLB, 2012 WL 967577
(E.D. Cal. Mar. 21, 2012)........................................................................10, 17, 18, 19

*Howe v. Diversified Builders, Inc.*, 69 Cal. Rptr. 56 (Cal. Dist. Ct. App. 1968)....................15, 16

*Hurtado v. Super. Ct. of Sacramento Cnty.*, 522 P.2d 666 (Cal. 1974)...............................15, 16

*Int'l-Matex Tank Terminals-Illinois v. Chem. Bank*, No. 1:08-CV-1200, 2009 WL 1651291
(W.D. Mich. June 11, 2009)........................................................................................22

*Kearney v. Salomon Smith Barney, Inc.*, 137 P.3d 914 (Cal. 2006) ...........................................5

*Lane v. Hughes Aircraft Co.*, 993 P.2d 388 (Cal. 2000)............................................................7

*Lombardi v. Bank of Am.*, No. 3:13-CV-1464-O, 2014 WL 988541 (N.D. Tex. Mar. 13, 2014)...21

*Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012)......................................... passim

*McCann v. Foster Wheeler LLC*, 225 P.3d 516 (Cal. 2010).............................................. passim

*Morris v. AGFA Corp.*, 51 Cal. Rptr. 3d 301 (Cal. Ct. App. 2006).............................................19

*Offshore Rental Co. v. Cont'l Oil Co.*, 583 P.2d 721 (Cal. 1978) .........................................13, 14

*Stangvik v. Shiley Inc.*, 819 P.2d 14 (Cal. 1991) ...................................................................19, 20

*State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003) ...........................................12

*Vestal v. Shiley Inc.*, No. SACV96-1205-GLT(EEX), 1997 WL 910373
   (C.D. Cal. Nov. 17, 1997) ...................................................................................................19

**Statutes**

Cal. Civ. Proc. Code § 377.60.........................................................................................................6

Tex. Bus. & Com. Code Ann. § 2.314 ............................................................................................6

Tex. Civ. Prac. & Rem. Code Ann. § 33.001 .................................................................................7

Tex. Civ. Prac. & Rem. Code Ann. § 41.001 .................................................................................7

Tex. Civ. Prac. & Rem. Code Ann. § 41.008 ............................................................................7, 14

Tex. Civ. Prac. & Rem. Code Ann. § 71.002 ................................................................................14

Tex. Civ. Prac. & Rem. Code Ann. § 71.004 ....................................................................6, 14, 21

Tex. Civ. Prac. & Rem. Code Ann. § 82.005 ....................................................................6, 12, 14

## Argument & Authorities

**I.      According to California choice-of-law rules, Texas law should apply to the claims in this case.**

California courts apply the governmental-interest analysis in resolving choice-of-law issues.[1]  This analysis generally involves three steps.[2]  First, the Court determines whether the relevant law of each of the potentially affected jurisdictions is the same or different.[3]  Second, if there is a difference, the Court examines the jurisdictions' respective interests to determine which jurisdiction's interests would be more severely impaired if that jurisdiction's laws were not applied in the particular context presented by the case.[4]  Third, if the Court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interests of each jurisdiction in the application of its own law to determine which state's interests would be more impaired if its policy were subordinated to the policy of the other state.[5]  The Court should apply the law of the state whose interest would be more impaired if its law were not applied.[6]

**A.      The applicable laws of Texas and California differ materially as to liability and damages.**

Without belaboring this point, which has been thoroughly briefed in KMA's motion to transfer venue and Plaintiffs' response to the Kia Defendants' motion for partial summary judgment, California law conflicts with Texas law concerning the elements necessary to support Plaintiffs' claims and the potential measure of damages.  The following is a non-exhaustive table comparing each jurisdiction's relevant laws:

---

[1] *See, e.g., Kearney v. Salomon Smith Barney, Inc.*, 137 P.3d 914, 922 (Cal. 2006).
[2] *Id.*
[3] *Id.*
[4] *Id.*
[5] *Id.*
[6] *Id.*

| Claim | California | Texas |
|---|---|---|
| **Wrongful Death Claim** | A cause of action for the death of a person caused by the wrongful act or neglect of another may be asserted by any of the following persons or by the decedent's personal representative on their behalf: (a) The decedent's surviving spouse, domestic partner, children, and issue of deceased children, or, if there is no surviving issue of the decedent, the persons, including the surviving spouse or domestic partner, who would be entitled to the property of the decedent by intestate succession.[7] | An action to recover damages as provided by the wrongful death subchapter is for the exclusive benefit of the surviving spouse, children, and parents of the deceased.[8] |
| **Manufacturing Defect** | The product deviates from the manufacturer's intended result or from other seemingly identical products from the manufacturer's same product line.[9] | The product deviates, in its construction or quality, from the specifications or planned output in a manner that renders it unreasonably dangerous.[10] |
| **Design Defect** | The product failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner, or the product may alternatively be found defective in design if the plaintiff demonstrates that the product's design proximately caused his injury and the defendant fails to establish, in light of the relevant factors, that on balance the benefits of the challenged design outweigh the risk of danger inherent in such design.[11] | (1)   There was a safer alternative design other than the one actually used that in reasonable probability: (a) would have prevented or significantly reduced the risk of the claimant's personal injury, property damage, or death without substantially impairing the product's utility; and (b) was economically and technologically feasible at the time the product left the control of the manufacturer or seller by the application of existing or reasonably achievable scientific knowledge; and<br>(2)   the defect was a producing cause of the personal injury, property damage, or death for which the claimant seeks recovery.[12] |
| **Breach of Implied Warranty of Merchantability** | A breach of the warranty of merchantability occurs if the product lacks even the most basic degree of fitness for ordinary use.[13] | (1)  The defendant sold or leased a product to the plaintiff;<br>(2)  the product was unmerchantable;<br>(3)  the plaintiff notified the defendant of the breach; and<br>(4)  the plaintiff suffered injury.[14] |

---

[7] Cal. Civ. Proc. Code § 377.60.

[8] Tex. Civ. Prac. & Rem. Code Ann. § 71.004(a).

[9] *Barker v. Lull Eng'g Co.*, 573 P.2d 443 (Cal. 1978).

[10] *BIC Pen Corp. v. Carter*, 346 S.W.3d 533, 540 (Tex. 2011).

[11] *Barker*, 573 P.2d 443.

[12] Tex. Civ. Prac. & Rem. Code Ann. § 82.005.

[13] *Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 (9th Cir. 2009).

[14] Tex. Bus. & Com. Code Ann. § 2.314.

| Claim | California | Texas |
|---|---|---|
| Punitive Damages | California has no statutory cap on punitive damages.[15] | Recovery of exemplary damages is limited to the greater of (1) two times economic damages[16] plus noneconomic damages up to $750,000; or (2) $200,000.[17] |
| Impact of Claimant's Responsibility on Recovery | Responsibility and liability for damage are assigned in direct proportion to the amount of negligence of each of the parties, were to be applied to actions founded on strict products liability; in such an action, the plaintiff's recovery would be reduced to the extent that his own lack of reasonable care contributed to his injury.[18] | A claimant may not recover damages if his percentage of responsibility is greater than 50 percent.[19] |

The Kia Defendants, therefore, agree that California and Texas laws materially differ and that the first prong of the governmental-interest analysis is satisfied.

### B. Despite materially different laws, there is no true conflict because only Texas has an interest in having its laws applied.

Because the laws of California and Texas differ materially, the Court must examine the interests of each jurisdiction in having its own law applied to the dispute to determine whether there is a true conflict.[20] A "true conflict" occurs when each state has a legitimate interest in having its law applied in a particular setting.[21] Only if the Court determines that the laws are materially different and that each state has an interest in having its own law applied, thus reflecting an actual conflict, must the Court take the final step and select the law of the state whose interests would be "more impaired" if its laws were not applied.[22] In other words, this Court may properly find Texas law applicable without proceeding to the third step if it finds that California has no legitimate interest in the application of its laws.

---

[15] *See, e.g., Lane v. Hughes Aircraft Co.*, 993 P.2d 388 (Cal. 2000).

[16] Economic damages are compensatory damages for pecuniary loss. Tex. Civ. Prac. & Rem. Code Ann. § 41.001(4).

[17] Tex. Civ. Prac. & Rem. Code Ann. § 41.008.

[18] *Daly v. Gen. Motors Corp.*, 575 P.2d 1162, 1172 (Cal. 1978).

[19] Tex. Civ. Prac. & Rem. Code Ann. § 33.001.

[20] *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 590 (9th Cir. 2012).

[21] *McCann v. Foster Wheeler LLC*, 225 P.3d 516, 523 (Cal. 2010).

[22] *Mazza*, 666 F.3d at 590.

1. **The "place of the wrong" is Texas, not California, because Texas is the state where the last event necessary to make the actor liable occurred.**

Ignoring relevant California Supreme Court precedent, Plaintiffs repeatedly argue in their brief that Texas has no interest in the application of its laws in this case. In fact, Texas has several interests in having its laws applied here, and its interests arise from more than merely the location of the collision.[23] To circumvent California Supreme Court precedent establishing Texas' interests, which will be explained in the proceeding sections, Plaintiffs have argued, "[T]here is overwhelming evidence that a substantial part of the wrongful conduct alleged in Plaintiffs' Amended Complaint occurred in California."[24] Plaintiffs dedicate three pages to proving that the place of the wrong is California because the subject vehicle was designed and developed at KMA in California.[25] Plaintiffs alternatively argue that "the wrongful conduct alleged in Plaintiffs' Amended Complaint occurred when defendants placed the defective Kia Soul into the stream of commerce in the United States."[26]

First, as fully briefed in KMA's motion to transfer venue, Plaintiffs' factual allegations regarding KMA's activities are incorrect. KMA does not design, develop, certify compliance testing, or manufacture vehicles of any type.[27] It is a distributor of Kia brand motor vehicles.[28] Its business activities are focused on distribution of those vehicles, along with the related activities to support the independent dealers who sell Kia brand motor vehicles.[29] Those related

---

[23] *But see* Pls.' Brief in Support of Resp. in Opposition to Defs.' Motion for Partial Summary Judgment, Doc. 62, at 3 (stating that the Kia Defendants "insinuate that Texas law should apply merely because the collision occurred in Texas") [hereinafter Pls.' Resp. Brief].

[24] Pls. Resp. Brief, Doc. 62, at 5.

[25] *Id.* at 5-7.

[26] *Id.* at 14-15.

[27] *See* Order Granting Def.'s Mot. to Transfer, App'x in Supp. of Defs.' Brief in Supp. of Their Mot. for Partial Summ. J. at 27-28 [hereinafter Defs.' Mot. Brief App'x]; Kia Motors America, Inc. Original Answer to Pls.' First Am. Complaint, App'x in Supp. of Pls.' Brief in Supp. of Resp. to Defs.' Mot. for Partial Summ. J. at 39 [hereinafter Pls.' Resp. Brief App'x].

[28] *See* Order Granting Def.'s Mot. to Transfer, Defs.' Mot. Brief App'x at 27-28.

[29] *See, e.g.,* Commercial invoice reflecting sale of subject vehicle to KMA and commercial invoice reflecting distribution of subject vehicle, Pls. Resp. Brief App'x at 41-44.

---

activities include vehicle and part marketing and wholesale, warranty administration, and customer service functions.[30]  Although KMA was the distributor of the subject 2010 Kia Soul, the vehicle was not purchased by a consumer in California.[31]  Instead, the subject vehicle was placed in the stream of commerce in Texas where Beverly Fuller purchased it at an authorized Kia dealership.[32]

Plaintiffs are aware that KMA does not design vehicles because this issue was explained by KMA in its motion to transfer venue and in Michele Cameron's sworn declaration that accompanied the motion.[33]  Plaintiffs are also aware of the inaccuracy of their argument as Plaintiffs deposed Michele Cameron on January 8, 2015.[34]  In her deposition, Cameron explained that the type of design performed in California is different from the design of a fuel tank or the other component parts at issue here.  The design center in California has designers that develop exterior vehicle designs and styling and the look and feel of the vehicles.  The research and development of the vehicle and the actual design of the vehicle to be built are done in Korea.[35]  Cameron specifically stated that KMA was not involved in the fuel system design in the subject vehicle or the components used therein, and the brochures and materials Plaintiffs bring before the Court never state otherwise.[36]  Yet, Plaintiffs continue to misconstrue this information and the word "design" in order to bolster their argument that California has an interest in this case.

Second, regardless of the inaccuracy of the assertion that KMA had any role in the design or development of the vehicle, California courts have consistently held that when

---

[30] *See, e.g.,* Press releases, warranty documentation authored by Defendant KMA, and marketing materials authored by Defendant KMA, Pls.' Resp. Brief App'x at 24-36.

[31] *See* Commercial invoice reflecting distribution of subject vehicle, Pls.' Resp. Brief App'x at 44.

[32] *See id.*

[33] *See* Order Granting Def.'s Mot. to Transfer, Defs.' Mot. Brief App'x at 27-28.

[34] The Kia Defendants can provide the transcript of the deposition of Michele Cameron to the Court upon request.

[35] *See* Order Granting Def.'s Mot. to Transfer, Defs.' Mot. Brief App'x at 27-28.

[36] *See* Press releases and marketing materials, Pls.' Resp. Brief App'x at 24-31, 36.

---

analyzing choice-of-law issues, the "place of the wrong" is the state where the last event necessary to make the actor liable occurred.[37] For instance, in *Mazza*, the plaintiffs sought certification of a class and claimed that Honda misrepresented and concealed material information in connection with the marketing and sale of certain vehicles.[38] The court found that the last event necessary for liability as to the foreign class members—communication of the advertisements to the claimants and their reliance thereon in purchasing the vehicle—took place in the various foreign states.[39] The court then held that these foreign states had a strong interest in the application of their laws to transactions between their citizens and corporations doing business within their state.[40]

In a case such as this alleging strict products-liability claims, a plaintiff must prove a defect in the manufacture or design of the product or failure to warn, causation, *and injury*.[41] Accordingly, the place where the plaintiff was injured is considered the place of the wrongful conduct.[42] This principle was applied in *Hill* where the plaintiff alleged that a drug she had taken caused severe osteonecrosis.[43] The court refused to find that New Jersey—the state of the defendant's headquarters where key decisions were made—was the place of the wrong. Instead, California was the place of the wrong because the last event necessary to make the defendant liable—the plaintiff's injury—occurred in California.[44] Thus, California, as the place where the drug was prescribed to and injured one of its residents, had the predominate interest in having its law applied.[45] Here, the last event necessary to make the Kia Defendants liable in

---

[37] *See, e.g., Hill v. Novartis Pharm. Corp.*, No. 1:06–cv–00939–AWI–DLB, 2012 WL 967577, at *7 (E.D. Cal. Mar. 21, 2012); *Mazza*, 666 F.3d at 593-94.

[38] *Mazza*, 666 F.3d at 593-94.

[39] *Id.*

[40] *Id.*

[41] *Hill*, 2012 WL 967577, at *7.

[42] *Id.*

[43] *Id.*

[44] *Id.*

[45] *Id.*

this case—Plaintiffs' injury—occurred in Texas, giving Texas the predominate interest in having its law applied.[46]

Plaintiffs' primary argument that California has an interest in the application of its laws stems from the faulty premise that the place of the wrong is the location where the product was manufactured, developed, or distributed. In *Cortez v. Global Ground Support*, a California court rejected an argument very similar to Plaintiffs'.[47] The defendants in that case argued that Kansas law should apply because the product at issue was designed, manufactured, and configured in Kansas by a company with its principal place of business in Kansas.[48] The court found that "[w]hile Defendants may have designed and manufactured the [subject product] in Kansas, it ultimately entered California through the stream of commerce, and it allegedly injured Plaintiff[, a California resident,] in California."[49] Consequently, Kansas had *no legitimate interest* in having its law applied to this action.[50] The court further found that the defendants' choice-of-law argument was wholly unsupported by the law and bordered on frivolous.[51]

Plaintiffs must assert this flawed argument that KMA's activities are sufficient to create an interest in applying California law because California has no connection to the case outside of KMA. Disregarding for a moment that KMA did not design, develop, or manufacture the subject vehicle, *Cortez* makes clear that the location of product design and development is irrelevant during a choice-of-law analysis.[52] The vehicle at issue here entered the stream of commerce in Texas, and Plaintiffs were injured in Texas.[53] Therefore, the place of the alleged

---

[46] Pls.' Resp. Brief, Doc. 62, at 3.

[47] *Cortez v. Global Ground Support, LLC*, No. 09-4138 SC, 2010 WL 5173861, at *3-4 (N.D. Cal. Dec. 15, 2010).

[48] *Id.*

[49] *Id.*

[50] *Id.*

[51] *Id.*

[52] *Id.*

[53] *See* Pls.' Resp. Brief, Doc. 62, at 3; Commercial invoice reflecting distribution of subject vehicle, Pls.' Resp. Brief App'x at 44.

wrong for the purposes of determining which state, California or Texas, has a predominate interest in having its laws applied is Texas. California, in contrast, has no true connection to this case, and no legitimate interest in having its laws applied.

> **2.     As the place of the wrong, Texas has an interest in deterring allegedly harmful conduct within its borders.**

The California Supreme Court has recognized a state's interests in deterring conduct within its borders.[54] This interest is based on the "basic principle of federalism . . . that each State may make its own reasoned judgment about what conduct is permitted or proscribed within its borders, and each State alone can determine what measure of punishment, if any, to impose on a defendant who acts within its jurisdiction."[55]

Through its legislature and its courts, Texas has made reasoned judgments about what it considers to be a "defective product" that should not be released into the stream of commerce in Texas.[56] Utilizing these products-liability causes of action, Texas consumers can hold manufacturers accountable when a defective product used in Texas causes an injury. Texas has also determined that if the defective product causes the death of a Texas resident, certain individuals may bring a wrongful death claim, through which exemplary damages may be recovered to punish the manufacturer. These threats of litigation and of punitive damages act to deter harmful conduct within Texas borders. In fact, in his Order Granting KMA's Transfer, Judge Carney recognized, "Texas's interest in vindicating the rights of its citizens with respect to claims arising out of conduct that allegedly caused a fatality within its borders is significant."[57] Because the conduct alleged by Plaintiffs to be harmful occurred in Texas, Texas has an

---

[54] *McCann*, 225 P.3d at 534.

[55] *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 422 (2003).

[56] *See, e.g.*, *Ford Motor Co. v. Ledesma*, 242 S.W.3d 32 (Tex. 2007) (defining the elements of a manufacturing defect claim); Tex. Civ. Prac. & Rem. Code Ann. § 82.005 (establishing the elements of a design defect claim).

[57] Order Granting Def.'s Mot. to Transfer, Defs.' Mot. Brief App'x at 29-30.

interest in applying its law in the case in order to ensure that the allegedly harmful conduct, if proven wrongful, does not reoccur within its borders.

> **3.** **Texas has a valid interest in shielding out-of-state businesses conducting business within state borders from what Texas considers to be excessive litigation.**

Achieving the optimal balance between protecting consumers and attracting foreign businesses, with resulting increase in commerce and jobs, is a decision properly to be made by the legislatures and courts of each state.[58] Accordingly, as the California Supreme Court has recently reiterated, each state has an interest in setting the appropriate level of liability for companies conducting business within its territory.[59] Each state also has an interest in being able to assure individuals and commercial entities operating within its territory that applicable liability limitations set forth in the jurisdiction's law will be available to those individuals and businesses in the event they are faced with litigation in the future.[60]

The California Supreme Court's decision in *Offshore Rental* supports the foregoing principles. In that case, the plaintiff was a California company that brought suit in California to recover economic damages it had suffered when one of its key employees had been injured in Louisiana, allegedly as a result of the negligence of one of the defendant company's employees in Louisiana.[61] The case presented a choice-of-law issue because California law permits a company to maintain a cause of action for the economic damage suffered by the company as a result of an injury to a key employee, whereas Louisiana law does not permit an employer to maintain such a cause of action.[62] In examining the question of whether Louisiana had an interest in having its law, the court explained, "At the heart of Louisiana's denial of liability lies

---

[58] *Mazza*, 666 F.3d at 592.
[59] *See McCann*, 225 P.3d at 529; *Mazza*, 666 F.3d at 592.
[60] *Mazza*, 666 F.3d at 592-93.
[61] *Offshore Rental Co. v. Cont'l Oil Co.*, 583 P.2d 721 (Cal. 1978).
[62] *Id.*

---

the vital interest in promoting freedom of investment and enterprise within Louisiana's borders, among investors incorporated both in Louisiana and elsewhere.  The imposition of liability on defendant, therefore, would strike at the essence of a compelling Louisiana law."[63]  Thus, although the defendant in that case was a California company doing business in Louisiana, the California court recognized that the interest of Louisiana in protecting companies from what Louisiana viewed as excessive liability extended to the California company.[64]

Texas has created limitations on liability for individuals and businesses faced with litigation in this state.  For example, Texas created a wrongful death cause of action in the heirs for the wrongful death of the decedent, which deters the kind of conduct within Texas' borders that wrongfully takes life.[65]  But, unlike other states, Texas limited the availability of this cause of action to the surviving spouse, parents, and children of the decedent.[66]  Additionally, although exemplary damages are allowed in wrongful death actions, the amount of punitive damages recoverable is limited in Texas to "an amount equal to the greater of: (1)(A) two times the amount of economic damages; plus(B) an amount equal to any noneconomic damages found by the jury, not to exceed $750,000; or(2) $200,000."[67]  Moreover, in products-liability cases alleging a design defect, the plaintiff is required to show that a reasonable alternative design existed.[68]

In other words, Texas has exercised its right to limit the level of liability for companies doing business within the state, and it has an interest in being able to assure businesses that these limitations will apply to them when faced with litigation in this state.  In this case, Plaintiffs'

---

[63] *Id.*

[64] *Id.*

[65] Tex. Civ. Prac. & Rem. Code Ann. § 71.002; *see also Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1006 (9th Cir. 2001).

[66] Tex. Civ. Prac. & Rem. Code Ann. § 71.004(a).

[67] Tex. Civ. Prac. & Rem. Code Ann. § 41.008(b).

[68] *See* Tex. Civ. Prac. & Rem. Code Ann. § 82.005.

decedent, a Texas resident, died in a Kia vehicle being driven on a Texas roadway.[69] Texas, therefore, has an interest not only in deterring any allegedly wrongful conduct that caused the death of Plaintiffs' decedent from occurring within its borders but also in assuring Kia that Texas' limitations of liability apply to them.[70] California, in contrast, has no interest in impairing the ability of Kia to compete for business in Texas by imposing upon them obligations that Texas does not impose upon foreign corporations or their own domestic corporations.[71]

Plaintiffs argue that the Kia Defendants "cannot establish that the State of Texas has an interest in limiting the recovery of its residents to the benefit of two non-resident defendants."[72] This argument ignores the existence of Texas's other interests such as encouraging economic growth and deterring wrongful conduct. Plaintiffs offer *Hurtado*, a case they argue is nearly identical to this case, for the proposition that foreign states are deemed to have no interest in limiting the recovery of their own residents. *Hurtado* concerned an automobile accident that *occurred in California* and *involved private individuals* from California (defendants) and Mexico (plaintiffs).[73] The court found that Mexico had no interest in applying its limitation of damages to plaintiffs because Mexico had no defendant resident to protect and no interest in denying full recovery to its residents injured by non-Mexican defendants.[74]

Unlike in this case, no commercial entities were involved in *Hurtado*, so the state's interest in regulating out-of-state commercial entities and limiting their potential liability was not at issue.[75] In fact, the California Supreme Court later recognized that nothing in *Hurtado* suggests that a state's interest in the application of a statute limiting liability for a specified commercial activity carried on within the state should not apply to out-of-state companies doing

---

[69] Pls.' First Am. Complaint for Damages, Pls.' Resp. Brief App'x at 3-20.

[70] *See McCann*, 225 P.3d at 534.; *Mazza*, 666 F.3d at 592-93.

[71] *Howe v. Diversified Builders, Inc.*, 69 Cal. Rptr. 56, 59 (Cal. Dist. Ct. App. 1968).

[72] Pls.' Resp. Brief, Doc. 62, at 14.

[73] *Hurtado*, 522 P.2d 666.

[74] *Id.*

[75] *Id.*

business within the state.[76] Contrary to Plaintiffs' argument, then, Texas does have an interest in limiting the recovery of its residents to protect out-of-state companies from what Texas has determined to be excessive liability. If California law were to be applied in this situation, Texas would be impaired in its ability to calibrate liability to foster commerce.[77]

### 4. Texas has an interest in in determining the distribution of proceeds to its statutory plaintiffs.

The California Supreme Court has recognized a state's interest in determining the distribution of proceeds from litigation to the state's residents.[78] The interest of the state in compensation of plaintiffs is to ensure that residents of the state do not become dependent on the resources of that state for necessary medical, disability, and unemployment.[79] A state has no interest in either ensuring the compensation of non-resident plaintiffs who will not become dependent on that state for its resources or extending to non-resident plaintiffs rights to which they are not entitled by the state of their domicile.[80]

Thus, in *Hernandez v. Burger*, a California court refused to extend its own domestic damages rule to a plaintiff who was a resident of Mexico and who was allegedly injured in Mexico.[81] There was no risk that the non-resident plaintiff would become a ward of the State of California.[82] And the only connection California had with the case was "that defendants happen to be California residents and that California [was] the forum."[83] California, therefore, had no

---

[76] *McCann*, 225 P.3d at 531.

[77] See *Mazza*, 666 F.3d at 593.

[78] *Hurtado v. Super. Ct. of Sacramento Cnty.*, 522 P.2d 666 (Cal. 1974).

[79] See *Hernandez v. Burger*, 162 Cal. Rptr. 564 (Cal. Dist. Ct. App. 1980).

[80] See *Howe*, 69 Cal. Rptr. at 60.

[81] *Hernandez*, 162 Cal. Rptr. 564.

[82] *Id.*

[83] *Id.*

legitimate concern in extending its own domestic damages rule and providing the non-resident plaintiffs with rights to which they were not entitled by Mexico.[84]

Similarly, this Court should refuse to extend California's laws to Plaintiffs in this case who are residents of Texas, not California, and who were allegedly injured in Texas. Like in *Hernandez*, the only connection California has with this case is that KMA happens to be headquartered in California.[85] There is no risk that Plaintiffs will become wards of the State of California, so California has no interest in ensuring Texas Plaintiffs are compensated and benefit from California's laws.[86] Texas, on the other hand, has an interest in making sure that these Texas residents do not become dependent on the State of Texas for necessary medical, disability, and unemployment.[87] In sum, Texas has a strong interest in this case simply because Plaintiffs are Texas residents.

**C.    Even if this Court determines that a true conflict exists, Texas has a greater interest than California in the application of its own laws, and Texas' interest would be more significantly impaired if its laws are not applied.**

If this Court determines that California has a legitimate interest in the application of its law, then the Court must proceed to the comparative impairment analysis.[88] This final step requires the Court to determine which jurisdiction has a greater interest in the application of its own law to the issue or, conversely, which jurisdiction's interest would be more significantly impaired if its laws were not applied.[89] The comparative impairment analysis does not require the Court to determine whether the Texas rules or the California rules are the better or worthier

---

[84] *Id.*

[85] *See* Order Granting Def.'s Mot. to Transfer, Defs.' Mot. Brief App'x at 27-28 ("The only apparent connection between Plaintiffs and California is that the party against who Plaintiffs allege liability arising out of the accident, KMA, is a California resident."); Kia Motors America, Inc.'s Reply in Supp. of Its Mot. to Transfer Venue to the N. District of Tex. Pursuant to 28 U.S.C. Section 1404(a), Pls.' Resp. Brief App'x at 47.

[86] Pls.' First Am. Complaint for Damages, Pls.' Resp. Brief App'x at 3-20

[87] *See Hernandez*, 162 Cal. Rptr. 564.

[88] *Mazza*, 666 F.3d at 590.

[89] *Hill*, 2012 WL 967577, at *1.

rules but, rather, to decide—in light of the legal question at issue and the relevant state interests at stake—which jurisdiction should be allocated the predominating lawmaking power under the circumstances of the present case.[90]

As acknowledged in the Order Granting KMA's motion to transfer venue, Texas has a strong interest in this case.[91]   California choice-of-law cases continue to recognize that a jurisdiction ordinarily has "the predominant interest" in regulating or affecting conduct that occurs within its borders and on its roadways, absent some other compelling interest to be served by applying California law.[92]  As previously explained, Texas is the place of the wrong because it is the state where the last event necessary to make the actor liable (Plaintiffs' injury) occurred.[93]  Thus, it has interests in protecting its residents; deterring harmful conduct; setting the appropriate level of liability for companies conducting business within its territory; and being able to assure individuals and commercial entities operating within its territory that applicable limitations on liability set forth in Texas' laws will be available to those individuals and businesses in the event they are faced with litigation.[94]  Plaintiffs have provided no compelling interest to be served by applying California law that would override Texas' predominate interests.

Instead, Texas' interests would be significantly impaired if California law applied.  First, application of California law would eliminate Texas' ability to protect its own residents from the conduct alleged by Plaintiffs to be wrongful.[95]  Second, it would undercut Texas' efforts to

---

[90] *McCann*, 225 P.3d at 534.

[91] Order Granting Def.'s Mot. to Transfer, Defs.' Mot. Brief App'x at 29 n.3 ("[A]s to the choice of law question, the Court notes, without deciding, that an application of California's governmental interests test for choice of law may require an application of Texas law to this matter, given Texas's strong interest in this case.").

[92] *See Castro v. Budget Rent-A-Car Sys., Inc.*, 65 Cal. Rptr. 3d 430, 442 (Cal. Ct. App. 2007).

[93] *Hill*, 2012 WL 967577, at *7.

[94] *See, e.g.*, *McCann*, 225 P.3d at 531-34.

[95] Order Granting Def.'s Mot. to Transfer, Defs.' Mot. Brief App'x at 29-30 ("Texas's interest in vindicating the rights of its citizens with respect to claims arising out of conduct that allegedly caused a fatality within its borders is significant, and must be yield to by this Court.").

---

protect manufacturers that sell good products as reflected by the reasonable-alternative-design requirement for a design defect claim and the presumption of no liability if a manufacturer establishes that the product's design complied with federal safety standards and regulations. Finally, Texas' interest in assuring the application of its liability limitations in the event businesses operating in the state are sued would be entirely disregarded, as California has no statutory limits on potential liability.

By contrast, a failure to apply California law on the facts of the present case will effect a far less significant impairment of California's alleged interest.[96] Plaintiffs assert that California has an interest in "policing wrongful conduct occurring within its borders."[97] Plaintiffs specifically argue that "[t]his policy would be impaired by insulating California corporations from wrongdoing occurring in California and resulting in harm to out-of-state citizens."[98] California courts not only disagree with Plaintiffs' assessment regarding the place of the wrong in this case[99] but also reject the contention that lawsuits brought in foreign jurisdictions by plaintiffs who are not California residents effectively deter California corporations from engaging in unlawful practices.[100] In *Stangvik*, for instance, the California Supreme Court found that deterrence would only be negligibly advanced if claims by nonresidents of California proceeded in a foreign jurisdiction.[101] It explained that suits by California residents adequately serve to deter California

---

[96] Order Granting Def.'s Mot. to Transfer, Defs.' Mot. Brief App'x at 28 (finding that "California's contacts with Plaintiffs' causes of action are more tenuous" than Texas's significant contacts).

[97] Pls.' Resp. Brief, Doc. 62, at 17.

[98] *Id.*

[99] *See Hill*, 2012 WL 967577, at *7.

[100] *Stangvik v. Shiley Inc.*, 819 P.2d 14 (Cal. 1991); *see also Morris v. AGFA Corp.*, 51 Cal. Rptr. 3d 301, 313 (Cal. Ct. App. 2006) ("Successful litigation in Texas would have the same deterrent effect that a California court might afford."); *Vestal v. Shiley Inc.*, No. SACV96-1205-GLT(EEX), 1997 WL 910373, at *3 (C.D. Cal. Nov. 17, 1997).

[101] *Stangvik*, 819 P.2d 14.

---

**DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANTS'**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

companies from unlawful practices.[102]    Thus, application of Texas law would have little detrimental effect on California's ability to police conduct occurring within its borders.[103]

Plaintiffs' argument that the Kia Defendants have placed themselves at the heart of California's regulatory interest is equally unavailing.[104]    To support their contention that California law should apply to KMA's enjoyment of the benefits of doing business in the State of California, Plaintiffs rely on *Bernhard v. Harrah's Club*.[105]  But the holding in *Bernhard* actually supports the application of Texas law.  In that case, a Nevada tavern owner advertised and otherwise solicited in California for the business of California residents, knowing and expecting said California residents, in response to its advertising, to use the public highways to go to and from the club in Nevada.[106]  In this case, KMA has marketed in Texas for the business of Texas residents, expecting said Texas residents, in response to its advertising to use Kia products on Texas roads.  Thus, KMA has put itself at the heart of Texas' regulatory interests, namely to protect its consumers from defective products and to deter manufacturers from selling defective products in the state.  Texas' interests would be significantly impaired if its law did not apply because Texas cannot reasonably effectuate its policies of protection and deterrence if it does not extend its regulation to include out-of-state vehicle manufacturers who regularly and purposefully sell vehicles to Texas residents.

Furthermore, application of California law does not impair California's alleged interest in deterring wrongful conduct because California law does not impose a new duty on the Kia Defendants.  California law requires the Kia Defendants to manufacture safe products—the same general duty imposed by Texas.  Because the Kia Defendants willfully distribute their products outside of California and because California law imposes no conflicting duty by

---

[102] *Id.*

[103] *Id.*

[104] Pls.' Resp. Brief, Doc. 62, at 17.

[105] *Bernhard v. Harrah's Club*, 546 P.2d 719 (Cal. 1976).

[106] *Id.*

application of its laws, Texas has the greater interest in regulating and affecting conduct within its own borders.

## II.   Because Texas law applies to this case, Shameka Sims does not have standing to bring a wrongful death action.

As stated in the Kia Defendants' opening brief, Texas law provides standing to sue for wrongful death to surviving spouses, children, and parents.[107]   Grandchildren do not have standing to sue for wrongful death.   Therefore, as the grandchild of Henry Lee Sims, Sr., Shameka Sims cannot bring a claim for wrongful death.

## III.   The Kia Defendants did not waive their right to respond to Plaintiffs' argument that California law applies to this case.

The Kia Defendants argued in their brief in support of their motion for partial summary judgment that, under Texas law, Shameka Sims has no standing to bring a wrongful death claim.[108]   In response, Plaintiffs have raised the argument that California law should apply to Shameka Sims' wrongful death claim.[109]   The Kia Defendants are responding to that argument in this reply.   By asserting that the Kia Defendants cannot respond to Plaintiffs' choice-of-law argument in their response, Plaintiffs argue for the nonsensical proposition that the Kia Defendants are required to anticipate each argument Plaintiffs would raise in response to their motion for summary judgment and preemptively rebut each argument—before Plaintiffs ever make the argument.   The purpose of a reply is to allow the Kia Defendants, as the movant, to rebut those arguments raised in Plaintiffs' response.[110]

---

[107] Tex. Civ. Prac. & Rem. Code Ann. § 71.004(a).

[108] Defs.' Brief in Supp. of Their Mot. for Partial Summ. J., Doc. 58.

[109] Pls.' Resp. Brief, Doc. 62.

[110] *Lombardi v. Bank of Am.*, No. 3:13-CV-1464-O, 2014 WL 988541, at *3 (N.D. Tex. Mar. 13, 2014) ("The purpose of filing a reply 'is to give the movant the final opportunity to be heard, and to rebut the nonmovants' response, thereby persuading the court that the movant is entitled to the relief requested by the motion.'"); *Berkman v. City of Keene*, No. 3:10-CV-2378-B, 2011 WL 3268214, at *5 (N.D. Tex. July 29, 2011) ("The Court finds that the City was not presenting a new legal issue [in its reply], but rather responding to Berkman's assertions [in his response] . . . .").

The cases relied on by Plaintiffs' counsel to prove that the Kia Defendants waived their ability to respond to Plaintiffs' argument are inapposite. In those cases, the reply provided an entirely new ground upon which the same requested relief could be granted.[111] For example, in *International-Matex*, the movant initially argued that it was not obligated to comply with the terms of its agreement with the opposing party because that party had failed to comply first.[112] Then, in its reply, the movant argued that complying with the terms of the agreement would force the movant to commit fraud.[113] The court refused to consider the fraud argument because it was not mentioned in the opening brief.[114] Unlike in *International-Matex*, the Kia Defendants are not arguing a new ground upon which its motion for summary judgment on Shameka Sims' wrongful death claim can be granted. Instead, the arguments in this reply are presented to rebut Plaintiffs' arguments in their response.

### Conclusion

The question presented by Plaintiffs' response to the Kia Defendants' motion for partial summary judgment should be answered in straightforward fashion: Texas law applies to the claims in this case. Texas has a strong interest in deterring conduct in its borders, protecting its residents, and shielding out-of-state defendants from excessive liability. The application of California law would significantly impair these interests. And California's interests, if any, are attenuated, at best. Thus, under Texas law, Shameka Sims has no standing to bring a wrongful death claim. The Kia Defendants ask this Court to grant their motion for partial summary judgment.

---

[111] *See, e.g., Int'l-Matex Tank Terminals-Illinois v. Chem. Bank*, No. 1:08-CV-1200, 2009 WL 1651291, at *2 (W.D. Mich. June 11, 2009).

[112] *See id.*

[113] *See id.*

[114] *See id.*

---

Respectfully submitted,


**KURT C. KERN**
State Bar No. 11334600
kurt.kern@bowmanandbrooke.com
**CARY A. SLOBIN**
State Bar No. 00797445
cary.slobin@bowmanandbrooke.com
**TANYA B. SCARBROUGH**
State Bar No.  24049268
tanya.scarbrough@bowmanandbrooke.com
**AMANDA R. MCKINZIE**
State Bar No. 24088028
amanda.mckinzie@bowmanandbrooke.com
**BOWMAN AND BROOKE LLP**
2501 North Harwood, Suite 1700
Dallas, Texas  75201
Telephone:    (972) 616-1700
Facsimile:     (972) 616-1701
**COUNSEL FOR DEFENDANTS**


### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded to all known counsel of record in this cause in accordance with the Federal Rules of Civil Procedure on this 28th day of January, 2015.