ORIGINAL

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
APR - 6 2015
2:52
CLERK, U.S. DISTRICT COURT
By _____
                    Deputy

## UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

HENRY LEE SIMS, JR., *et al*          §
                                      §
   *Plaintiffs*,                      §
                                      §
VS.                                   §          CASE NO. 4:14-cv-00045-A
                                      §
KIA MOTORS AMERICA, INC. and          §
KIA MOTORS CORPORATION,               §
                                      §
   *Defendants*.                      §

### DEFENDANTS' APPENDIX IN SUPPORT OF DEFENDANTS' MOTION FOR
### LEAVE TO DESIGNATE RESPONSIBLE THIRD PARTIES

Defendants Kia Motors America, Inc. (KMA) and Kia Motors Corporation (KMC) respectfully submit this appendix in support of its motion for leave to designate Kevin Davis and Beverly Fuller as a responsible third parties. This appendix contains the following materials:

| EXHIBIT | DESCRIPTION | PAGE NUMBERS |
|---------|-------------|--------------|
| Exhibit A | First Amended Complaint for Damages | 3 – 19 |
| Exhibit B | Memorandum Opinion and Order | 20 – 27 |
| Exhibit C | Defendants' Reply to Plaintiffs' Response to Defendants' Motion for Partial Summary Judgment | 28 – 50 |
| Exhibit D | Police Statement of Kevin Davis | 51 |
| Exhibit E | Police Statement of Beverly Fuller | 52 |
| Exhibit F | KMA's Original Answer to Plaintiffs' First Amended Complaint | 53 – 74 |
| Exhibit G | KMC's Original Answer to Plaintiffs' First Amended Complaint | 75 – 92 |

Respectfully submitted,

_____

**KURT C. KERN**
State Bar No. 11334600
kurt.kern@bowmanandbrooke.com
**CARY A. SLOBIN**
State Bar No. 00797445
cary.slobin@bowmanandbrooke.com
**TANYA B. SCARBROUGH**
State Bar No. 24049268
tanya.scarbrough@bowmanandbrooke.com
**AMANDA R. MCKINZIE**
State Bar No. 24088028
amanda.mckinzie@bowmanandbrooke.com
**BOWMAN AND BROOKE LLP**
2501 North Harwood, Suite 1700
Dallas, Texas 75201
Telephone:      (972) 616-1700
Facsimile:      (972) 616-1701
**COUNSEL FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded to all known counsel of record in this cause in accordance with the Federal Rules of Civil Procedure on this _____th day of _April_____, 2015.

_____

2

ORIGINAL

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

**FILED**

APR - 3 2014

CLERK, U.S. DISTRICT COURT
By _____
        Deputy

HENRY LEE SIMS, JR., *et al*     §
        §
   *Plaintiffs,*        §
        §
VS.               §
        §
KIA MOTORS AMERICA, INC.,    §
        §
   *Defendant.*       §

**CASE NO. 4:14-cv-00045-A**

## FIRST AMENDED COMPLAINT FOR DAMAGES

# TABLE OF CONTENTS

Page

I. INCORPORATION ................................................................................... 3

II. PLAINTIFFS ......................................................................................... 3

III. DEFENDANTS ...................................................................................... 4

IV. JURISDICTION AND VENUE.................................................................. 4

V. FACTUAL ALLEGATIONS ..................................................................... 5

    A. The Defects in the Kia Soul's Fuel System ....................................... 5

    B. Plaintiffs' injuries ............................................................................. 11

VI. CAUSES OF ACTION – STRICT PRODUCTS LIABILITY ...................... 12

VII.    CAUSE OF ACTION - NEGLIGENCE ............................................. 13

VIII.    CAUSE OF ACTION - BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY (CAL. COM. CODE § 2314) ................................... 14

IX. CAUSE OF ACTION – WRONGFUL DEATH ......................................... 15

X. CAUSE OF ACTION - SURVIVAL.......................................................... 15

XI. PRAYER FOR RELIEF.......................................................................... 16

XII.    JURY DEMAND............................................................................... 17

COME NOW Plaintiffs, and allege as follows:

## I. INCORPORATION

1.    By this reference, each paragraph contained herein is incorporated as support for each paragraph which follows.

## II. PLAINTIFFS

2.    Henry Lee Sims, Jr., is the natural son of Henry Lee Sims, Sr. Henry Lee Sims, Jr., is a resident of the State of Texas.

3.    Timothy Everett Sims is the natural son of Henry Lee Sims, Sr. Timothy Everett Sims is a resident of the State of Texas.

4.    Willie Earl Sims is the natural son of Henry Lee Sims, Sr. Willie Earl Sims is a resident of the State of Texas.

5.    Shamika Renee Sims is the maternal granddaughter of Henry Lee Sims, Sr. Shamika Renee Sims is the natural daughter of Lizzie Sims, deceased. Lizzie Sims was the natural daughter of Henry Lee Sims, Sr. Shamika Renee Sims is a resident of the State of Texas.

6.    Kathlyn Lenetta Sims is the natural daughter of Henry Sims, Sr. Kathlyn Lenetta Sims is a resident of the State of Texas.

7.    Brence Eric Sims is the natural son of Henry Sims, Sr. Brence Eric Sims is a resident of the State of Texas.

8.    Michael Andre Sims is the natural son of Henry Sims, Sr. Michael Andre Sims is a resident of the State of Texas.

9.    Sarah Denise Sims is the natural daughter of Henry Sims, Sr. Sarah Denise Sims is a resident of the State of Texas.

10.    Pamela Rachel Sims is the natural daughter of Henry Sims, Sr. Pamela Rachel Sims is a resident of the State of Texas.

Exhibit A-5

11.   When not otherwise specified, the term "Plaintiffs" shall refer to the named Plaintiffs collectively and in their capacity as legal heirs to the Estate of Henry Sims, Sr. When not otherwise specified, "Mr. Sims" shall refer to Henry Sims, Sr.

### III.   DEFENDANTS

12.   Defendant Kia Motors America, Inc. ("KMA") is a corporation with its principal place of business located in the State of California. According to its website, KMA is "the marketing and distribution arm of Kia Motors Corporation based in Seoul, South Korea. KMA offers a complete line of vehicles through more than 755 dealers throughout the United States."

13.   Service of process upon KMA may be had at 11 Peters Canyon Road, Irvine, California, 92606.

14.   Defendant Kia Motors Corporation ("KMC") is a Korean corporation headquartered in Seoul, Korea. Kia Motors America is a subsidiary of KMC. At all relevant times, KMC was actively involved in designing, manufacturing, assembling, marketing, distributing, and selling Kia vehicles in California and throughout the United States.

15.   Service of process upon KMC may be had at 231 Yangjae-Dong, Seocho-gu, Seoul, Republic of Korea 137-938.

### IV.   JURISDICTION AND VENUE

16.   Jurisdiction is proper pursuant to 28 U.S.C. § 1332. There exists complete diversity between the parties and the amount in controversy exceeds $75,000.00.

17.   This Court has personal jurisdiction over Defendants because a substantial portion of the wrongdoing alleged in this Amended Complaint occurred in this forum, the Defendants are authorized to do business in this forum, both KMA and KMC have intentionally availed themselves of the markets available in the State of Texas and because Defendant KMA voluntarily submitted to the jurisdiction of this Court by seeking transfer of the above-captioned action from the U.S. District Court for the Central District of California. Consequently,

Exhibit A-6

Defendants have extensive contacts with the State of Texas rendering the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

18.     The Court further has jurisdiction because all Plaintiffs reside in this forum.

19.     Venue is proper in this forum pursuant to 28 U.S.C. § 1391 because a substantial part of the events, acts and omissions giving rise to Plaintiffs' claims occurred herein and because Defendant KMA previously requested that this action be transferred to this forum.

20.     This action was original filed in the United States District Court for the Central District of California because Defendant KMA is headquartered in the State of California and Defendant KMC has substantial contacts and operations within the State of California. Because of the substantial interest of the State of California to regulate businesses, activities and/or wrongful conduct occurring and/or emanating from within its borders, the laws of the State of California apply to Plaintiffs' claims.

## V.    FACTUAL ALLEGATIONS

### A.    The Defects in the Kia Soul's Fuel System

21.     On information and belief, KMC and/or KMA undertook the design of the Kia Soul in early 2005 under the direction of Tom Kearns, its Chief Designer. The Kia Soul was designed wholly or in part at the Design Center of America in the State of California.

22.     The Kia Soul design is characterized by several defects related to its fuel system.

23.     Given the hazards posed by a vehicle's gas tank, vehicle manufacturers must take reasonable steps to design and manufacture a gas tank that is not susceptible to failure in collisions and that, if fire in the gas tank does result, the fire does not immediately explode into the passenger cabin of the vehicle so that occupants have an opportunity to escape the burning car.

Exhibit A-7

24. Standard safety devices call for the fuel tank to be protected by a shield or straps. Almost all cars sold in the United States have a gas tank that is either protected by a shield or reinforcing straps.

25. A gas tank shield is made of a separate piece of sheet metal, which holds the gas tank in place and substantially improves the tank's ability to withstand puncture in an accident.

26. Reinforcing straps tie the gas tank to the frame of the vehicle and ensure that the tank will not dislodge or drop in an accident. Below is a photograph of the underside of a non-Kia vehicle (a 2006 Honda civic) that has its gas tank secured with straps:



27. Failure to use a gas tank shield or reinforcing straps, as most auto manufacturers do, increases the risk that the gas tank will dislodge and ignite in a collision.

28. Other safe design and manufacturing considerations must be given to the vehicle's fuel pump. The fuel pump transmits the gas from the tank to the engine, and it must

be located in a safe place. Although not common, in some vehicle models, technicians can access the fuel pump through the passenger cabin if the fuel pump needs service. It is easier and less costly to access the fuel pump in this manner than it is to remove the fuel tank to access the pump when the fuel pump is located inside the gas tank itself. But when the fuel pump is accessible through the passenger cabin, manufacturers must ensure that the "service cover" for the fuel pump is made of metal and appropriately affixed so that a fire in a gas tank cannot quickly melt through the cover and invade the vehicle.

29.     Unfortunately, Kia has not heeded the foregoing safe design and manufacturing guidelines in the Kia Soul and has, as a result, unnecessarily exposed Plaintiffs to an unreasonable risk of harm.

30.     In the Kia Soul, the gas tank is located just forward of the rear axle and immediately under the rear passenger seats, as depicted in red in the following photograph of a Defective Soul:



31.    Given the gas tank's location and proximity to the rear passengers, the tank must be designed and manufactured in a manner that ensures the safety of those in the car. It was not.

32.    The Kia Soul fails to shield or strap the gas tank – omitting both of these crucial protections. It did so despite the fact that Kia has incorporated fuel tank straps in certain models.

33.    Again, failing to use a gas tank shield or reinforcing straps increases the risk that the gas tank will dislodge and ignite in a major collision. The risk is particularly heightened in the Soul because of the gas tank's location immediately under the rear passenger seats.

34.    This is a defect and presents a significant safety risk exposing Kia Soul passengers to a risk of serious injury or death in the event of an accident.

35.    Kia is well aware of the need to affix the gas tank by using reinforcing straps. Kia has used straps on some of its vehicles and issued a recall in 2011 of 2003-2007 model year Spectra's in northern climates where road salt is used. As the recall notice explained:

> THERE IS A POSSIBILITY THAT CORROSION OF THE FUEL
> TANK STRAPS WHICH HOLD THE TANK MAY OCCUR AS A
> RESULT OF PROLONGED EXPOSURE TO ROAD SALT. AS A
> RESULT OF THE CORROSION, ONE OR BOTH STRAPS MAY
> SEPARATE ALLOWING THE FUEL TANK TO CONTACT THE
> GROUND AND POSSIBLY DISRUPT THE INTEGRITY OF THE
> TANK. CONSEQUENCE: THE FUEL TANK CAN FALL FROM
> THE VEHICLE AND STRIKE THE GROUND WHICH COULD
> CAUSE A FUEL LEAK. LEAKING FUEL CAN CREATE A FIRE
> HAZARD.

36.     The fuel pump cover in the Kia Soul is located immediately under the rear seat cushion and is made of plastic, increasing the likelihood of a "blow-torch" fire in the rear compartment.

37.     The service cover for the fuel pump is plastic and is located underneath the rear seat cushion as shown in the following photographs taken of a Defective Soul:





38.     Thus, the only thing separating the rear passenger from these plastic fuel pump service covers is the seat cushion on which the passenger sits.

39.     This is a highly dangerous location for a fuel pump service cover made of plastic, particularly given the other gas tank defects itemized above that already make the gas tank unreasonably dangerous. This location, coupled with the use of a plastic instead of a metal fuel pump service cover that is screwed to the floor pan of the vehicle, increases the likelihood that fire will penetrate the rear cabin in a "blow-torch" effect following a collision.

40.     This is a defect and presents a significant safety risk exposing Kia Soul passengers to a risk of serious injury or death in the event of an accident.

41.     Kia promoted the Soul as a "Top Safety Pick" with "advanced safety systems," with "safety awards from IIHS and NHTSA for added peace of mind."

**Exhibit A-12**

42.    A brochure/advertisement for the 2013 Soul proclaims that the Kia Soul is a "2012 Top Safety Pick Insurance Institute For Highway Safety" and that this award provided added "peace of mind."

43.    Given the gas tank defects itemized above, marketing statements that the Kia Soul is safe, "world class," and has "world-class quality" are false and misleading.

44.    Defendants made these representations to boost vehicle sales knowing that the gas tanks in the Soul were defective.

45.    Throughout the relevant period, Defendants possessed vastly superior information to that of Plaintiffs – if not exclusive information – about the design and function of the gas tanks in the Kia Soul.

46.    To date, Defendants have never disclosed the defects inherent in the Kia Soul's fuel system.

B.    Plaintiffs' Injuries

47.    On April 28, 2013, Henry Sims, Sr. was riding as a passenger in a 2010 Kia Soul. Mr. Sims was one of three passengers seated in the backseat of the vehicle.

48.    At approximately 2:00 p.m., the vehicle was traveling northbound on Jacksboro State Highway. As the Kia Soul approached the intersection of Jacksboro State Highway and the Hanger Cutoff Road, near Fort Worth, Texas, it was struck by another vehicle heading southbound on Hanger Cutoff Road.

49.    As a result of the collision, the Kia Soul in which Mr. Sims was riding began to spin clockwise. The vehicle struck a signal light pole and later a "Yield" sign located at the intersection.

50.    The vehicle caught fire after striking the "Yield" sign. Because the fuel tank had ruptured, flames quickly engulfed the vehicle. The two individuals riding in the front of the Kia Soul were able to escape with minor injuries. However, the three passengers riding in the

Exhibit A-13

backseat, including Mr. Sims, were trapped in the vehicle and succumbed to the fire. All three passengers, including Mr. Sims, were pronounced dead at the scene.

## VI.    CAUSES OF ACTION – STRICT PRODUCTS LIABILITY

51.    At all times relevant, Defendants KMA and/or KMC were involved in the design, manufacture, assembly, testing, marketing, sale, distribution and/or servicing of the Kia Soul, and its component parts, in which Mr. Sims was riding at the time of his death.

52.    Defendants KMC and KMA were responsible for placing the 2010 Kia Soul into the stream of commerce in the State of California.

53.    It was reasonably foreseeable to Defendants KMC and KMA that collisions similar to the one that claimed the life of Mr. Sims would occur during the normal and ordinary use of its vehicles, including the 2010 Kia Soul.

54.    Whether a gas tank is designed and manufactured with appropriate safeguards is a material safety concern. Defendants KMA and KMC had a duty to disclose and warn of these material facts regarding potential defects in the Kia Soul's fuel system because they were known and/or readily accessible only to Defendants who have superior knowledge and access to the facts, and Defendants knew they were not known to or reasonably discoverable by Plaintiffs. These omitted facts were material because they directly impact the safety of the Kia Soul.

55.    Defendants' concealment was done maliciously, oppressively, consciously and deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' rights and well-being and in order to enrich Defendants. Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to the proof adduced at trial.

56.    The vehicle in which Mr. Sims was a passenger did not perform safely as an ordinary consumer of the 2010 Kia Soul would expect, despite the vehicle's use for its intended purpose.

57.     The fuel system and/or safety features of the 2010 Kia Soul in which Mr. Sims
was a passenger were defectively manufactured, designed, assembled, sold, marketed,
engineered, distributed and/or tested.

58.     The acts and/or omissions of Defendants KMA and KMC were a proximate cause
of the death of Henry Sims, Sr.

59.     The acts and/or omissions of Defendants KMA and KMC were a proximate cause
of the Plaintiffs' damages, both individually and on behalf of the Estate of Henry Sims.

### VII.   CAUSE OF ACTION - NEGLIGENCE

60.     At all times relevant, Defendants KMA and/or KMC were involved in the design,
manufacture, assembly, testing, marketing, sale, distribution and/or servicing of the Kia Soul,
and its component parts, in which Mr. Sims was riding at the time of his death.

61.     At all times relevant, Defendants KMA and KMC owed Plaintiffs a duty to
exercise reasonable care in the design, manufacture, marketing, sale, assembly, distribution
and/or testing of the Kia Soul, and its component parts, including a duty to ensure that the
vehicle did not cause Plaintiffs, other users, bystanders and/or members of the public,
unnecessary injury or death.

62.     It was reasonably foreseeable to Defendants that collisions similar to the one
involving Mr. Sims would occur during the normal and ordinary use of its vehicles.

63.     The injuries suffered by Plaintiffs occurred because the vehicle in which Mr. Sims
was traveling was not reasonably crashworthy and/or not reasonably fit to safely withstand
foreseeable collisions with other vehicles and/or with fixed objects.

64.     Defendants KMA and KMC knew or should have known that the 2010 Kia Soul in
which Mr. Sims was a passenger was unreasonably dangerous in the event it was involved in a
collision like the one involving Mr. Sims, yet concealed that fact from Plaintiffs and the public.
Consequently, Defendants KMA and KMC were negligent and breached their duty of care to
Plaintiffs in the following ways:

a.      Defendants KMA and KMC failed to exercise due care in the design, manufacture, assembly, marketing, sale, engineering, distribution and/or testing of the 2010 Kia Soul in order to avoid the types of injuries experienced by Plaintiffs;

b.      Defendants KMA and KMC failed to incorporate within the 2010 Kia Soul reasonable safeguards to avoid catastrophic and uncontrollable fires resulting from collisions with other vehicles and/or fixed objects;

c.      Defendants KMA and KMC failed to take adequate steps to identify and/or mitigate the safety risks, including the risks of catastrophic and uncontrollable fires resulting from collisions with other vehicles and/or fixed objects; and

d.      Defendants KMA and KMC were otherwise careless or negligent in the design, manufacture, assembly, marketing, engineering and/or testing of the 2010 Kia Soul.

65.     As a direct result of Defendants negligence, Plaintiffs suffered harm in an amount to be determined by a jury following trial.

## VIII. CAUSE OF ACTION - BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

### (CAL. COM. CODE § 2314)

66.     Defendants are and were at all relevant times merchants with respect to motor vehicles under § 2104.

67.     Prior to the death of Mr. Sims, Defendants KMA and KMC impliedly warranted to members of the general public, including Plaintiffs, that the 2010 Kia Soul was of merchantable quality.

68.     Members of the general public, including Plaintiffs, were intended third-party beneficiaries of the implied warranty of merchantability.

69.     Plaintiffs relied upon the skill and judgment of Defendants KMA and KMC in the purchase, selection, and/or use of the 2010 Kia Soul as a safe and reliable means for transportation.

FIRST AMENDED COMPLAINT FOR DAMAGES                                    PAGE 14

Exhibit A-16

70.    The 2010 Kia Soul in which Mr. Sims was riding at the time of his death was not of merchantable quality as warranted by Defendants KMA and KMC, in that it was defectively designed, manufactured, marketed, sold, assembled, engineered, distributed and/or tested, thereby dangerously exposing the users and occupants to serious bodily injury.

71.    After Plaintiffs suffered the injuries described herein, notice was given by Plaintiffs to Defendants KMA and KMC, by filing this lawsuit of the breach of said warranty.

72.    As a direct and proximate result of the breach of said implied warranty, Plaintiffs sustained damages alleged herein in an amount to be proven at trial.

## IX.    CAUSE OF ACTION – WRONGFUL DEATH

73.    As alleged throughout this Amended Complaint, Mr. Sims died as a result of the defect, negligence, wrongful conduct and/or statutory violations of Defendants KMA and KMC.

74.    Plaintiffs are the heirs of Mr. Sims and have been harmed and suffered damages resulting from the acts and omissions of KMA and KMC.

75.    Plaintiffs seek general and special damages in connection with the loss of: financial support, gifts, benefits, services and for the pain suffering, mental and physical anguish, loss of care, comfort, society, companionship, advice and friendship of Mr. Sims. Plaintiffs seek all damages permitted by law, including punitive damages, resulting from the wrongful death of Mr. Sims in an amount to be proven at the time of trial.

## X.    CAUSE OF ACTION - SURVIVAL

76.    As alleged throughout this Amended Complaint, Mr. Sims died as a result of the defect, negligence, wrongful conduct and/or statutory violations of Defendants KMA and KMC.

77.    Decedent, Mr. Sims, suffered damages of a personal and pecuniary nature prior to his death, including but not limited to, personal property damage, personal injury, conscious physical and mental pain and suffering, disability, disfigurement, as well as medical expenses

and loss of earnings. Had Mr. Sims survived, he would have been entitled to bring an action for damages and such right of action survives his death.

78.     Plaintiffs, as natural children, or issue of deceased children, of Mr. Sims, as survivors claim the following related to the death of Mr. Sims: loss of services, pain, suffering, mental and physical anguish and agony suffered by the decedent prior to his death, loss of care, comfort, protection, companionship, society, advice and friendship, recovery for grief, mental anguish, emotional pain and suffering and distress, medical and/or burial expenses, loss of lifetime earnings of decedent, punitive damages and all other damages allowed by law.

### XI.   PRAYER FOR RELIEF

Wherefore, Plaintiffs request that the Court enter judgment against Defendants in the following fashion:

A.     The full amount of Plaintiffs' economic damages;

B.     The full amount of Plaintiffs' non-economic and/or general damages;

C.     The full amount of damages suffered by the Estate of Henry Sims, Sr.;

D.     Exemplary or punitive damages to the full extent allowed by law;

E.     The full amount of Plaintiffs' damages for loss of consortium, society, companionship, advice, support guidance, or similar benefits, resulting from the wrongful death of Henry Sims, Sr.;

F.     Plaintiffs' attorneys' fees and costs to the extent allowable;

G.     Prejudgment interest on Plaintiffs' damages; and

H.     Such other and further relief the Court deems just and proper.

## XII. JURY DEMAND

Plaintiffs demand a trial by jury as provided by Federal Rule of Civil Procedure 38.

DATED: March 31, 2014            HAGENS BERMAN SOBOL SHAPIRO LLP

**STEVE W. BERMAN** (*pro hac vice*)
WASB No. 12536
steve@hbsslaw.com
**MARTIN D. MCLEAN** (*pro hac vice*)
WASB No. 33269
martym@hbsslaw.com
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone:    (206) 623-7292
Facsimile:    (206) 623-0594

**MARC R. STANLEY**
State Bar No. 19046500
marcstanley@mac.com
**STANLEY LAW GROUP**
3100 Monticello Ave, Suite 770
Dallas, TX 75205
Telephone:    (214) 443-4301
Facsimile:    (214) 443-0358
**COUNSEL FOR PLAINTIFFS**

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

MAR 13 2015

CLERK, U.S. DISTRICT COURT
By_____
Deputy

| | | |
|---|---|---|
| HENRY LEE SIMS, JR., ET AL., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | NO. 4:14-CV-045-A |
| | § | |
| KIA MOTORS AMERICA, INC., | § | |
| ET AL., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION
### and
### ORDER

Before the court for consideration and decision is the
motion of defendants, Kia Motors Corporation ("KMC") and Kia
Motors America, Inc. ("KMA"), for partial summary judgment,
seeking an adjudication that one of the plaintiffs, Shameka Sims
("Shameka"), has no cause of action as a wrongful death statute
beneficiary arising from the death of her grandfather, Henry Lee
Sims, Sr. ("Henry Sr."). The court has concluded that such
motion should be granted.

### I.

### Background

This action was filed in August 2013 in the United States
District Court for the Central District of California against KMA
by survivors of Henry Sr., who died as a result of injuries he
suffered in a motor vehicle accident that occurred in Tarrant
County, Texas. Henry Sr. was a Texas resident at the time of his

death.   The plaintiffs are Henry Sr.'s surviving children and

Shameka, the daughter of Henry Sr.'s predeceased eldest daughter.

All of the plaintiffs reside in the State of Texas.

Henry Sr. was a passenger in a Kia Soul vehicle at the time

of the accident.   The plaintiffs alleged that his death was

caused by manufacturing, design, assembling, marketing,

engineering, and testing defects in that vehicle.   A cause of

action for Henry Sr.'s wrongful death, and a survival cause of

action to recover damages Henry Sr. would have been entitled to

recover had he survived the accident, were alleged on behalf of

all plaintiffs.

On the motion of KMA, by order dated January 24, 2014, the

California court transferred this action to this court pursuant

to the authority of 28 U.S.C. § 1404(a).   The transfer order

recited the California court's findings that this action could

have been filed in this district and that the convenience of the

witnesses and the interests of justice favored transferring the

action to this district.   The California court found in the

transfer order that the "only apparent connection between

Plaintiffs and California is that the party against whom

2

Exhibit B-21

Plaintiff alleged liability arising out of the accident, [KMA] is a California resident."  Doc. 25 at 3.[1]

On April 3, 2014, plaintiffs filed an amended complaint adding KMC, a Korean corporation headquartered in Seoul, Korea, as an additional defendant, alleging that KMC was actively involved in designing, manufacturing, assembling, marketing, distributing, and selling Kia vehicles throughout the United States.  Wrongful death and survival causes of action were asserted on behalf of all plaintiffs against both defendants in the amended complaint.

## II.

### The Motion for Partial Summary Judgment

On December 24, 2014, KMA and KMC filed a motion for partial summary judgment, asking that the court render judgment that Shameka take nothing by her wrongful death claim for the reason that the wrongful death statute of Texas is applicable and does not contemplate that a deceased person's grandchild qualifies as a wrongful death beneficiary, making reference to sections 71.002 through 71.004 of the Texas Civil Practice and Remedies Code. Defendants note in their supporting brief that "[p]laintiffs may argue that California law applies to this action, but given

---

[1]The "Doc. ___" references are to the numbers assigned to the items appearing on the clerk's docket in this Case No. 4:14-CV-045-A.

3

**Exhibit B-22**

California's choice-of-law rules and Texas' strong interest in the case (as noted by the California Court in the Order Granting Defendant's Motion to Transfer Venue . . .), Texas law should apply."  Doc. 58 at 3 n.1.

Defendants are not seeking a summary adjudication as to Shameka's entitlement to share as an heir of Henry Sr. in whatever recovery there might be as to the survival cause of action.

### III.

### Analysis

The appearance from the contents of plaintiffs' brief in support of their response in opposition to defendants' motion for partial summary judgment, and the contents of defendants' reply to that response, is that the parties have in mind that they will obtain from the court at this time a broad ruling as to which state's laws, California or Texas, apply to legal issues that are presented by this action.  The court does not plan to make such a ruling, but is limiting its choice-of-law ruling to the precise legal issues presented by the motion, that is, which state's laws determine whether Shameka is a wrongful death statute beneficiary entitled to recover in that capacity damages arising from the death of her grandfather, Henry Sr., and whether under that controlling law she has any entitlement to wrongful death statute

4

**Exhibit B-23**

benefits.   The court has concluded that Texas law controls that particular issue and that Shameka has no entitlement to wrongful death statute benefits under Texas law arising from Henry Sr.'s death.

Under Texas law, Shameka would not be entitled to participate as a wrongful death statute beneficiary.  Section 71.004(a) of the Texas Civil Practice and Remedies Code provides that an action to recover wrongful death damages under the Texas Wrongful Death Statute "is for the exclusive benefit of the surviving spouse, children, and parents of the deceased." California law, if it applied, would permit Shameka to participate in recovery of wrongful death damages.  Section 377.60(a) of the California Code of Civil Procedure provides that a cause of action for the death of a person caused by the wrongful act or neglect of another may be asserted by "[t]he decedent's surviving spouse, domestic partner, children, and the issue of deceased children   . . . ."

The parties seem to be in agreement that California's choice-of-law rules will apply to this case inasmuch as it was filed in California and even though it has since been transferred to this court in Texas; thus, the court will not devote time to discussion of that issue.  Nor is the court becoming involved in resolving the issue as to which law should apply as to KMC, who

5

was not made a party to this action until after it was
transferred to this court.  Theoretically, a different rule could
be applicable to KMC than is applicable to KMA.

The California Supreme Court has adopted what it calls the
"governmental interest analysis in resolving choice-of-law
issues."  <u>Kearney v. Salomon Smith Barney, Inc.</u>, 137 P.3d 914,
922 (Cal. 2006).  The governmental interest approach generally
involves the following three steps:

> First, the court determines whether the relevant law of
> each of the potentially affected jurisdictions with
> regard to the particular issue in question is the same
> or different.  Second, if there is a difference, the
> court examines each jurisdiction's interest in the
> application of its own law under the circumstances of
> the particular case to determine whether a true
> conflict exists.  Third, if the court finds that there
> is a true conflict, it carefully evaluates and compares
> the nature and strength of the interest of each
> jurisdiction in the application of its own law to
> determine which state's interest would be more impaired
> if its policy were subordinated to the policy of the
> other state, and then ultimately applies the law of the
> state whose interest would be the more impaired if its
> law were not applied.

<u>Id.</u> (citation and internal quotation marks omitted).

Applied to the "particular issue" with which the court is
dealing in this opinion, the court has determined, as indicated
above, that the laws of California and Texas are different.
However, going to the second step, the court has concluded that
in this particular case the difference between the laws of

6

Exhibit B-25

California and Texas as to the particular issue in question does
not present a true conflict because California has no interest in
applying its law concerning wrongful death statute beneficiaries
in a case involving residents of Texas, arising from the death of
a Texas resident, that occurred by reason of an accident that
occurred in the State of Texas. In contrast, Texas does have an
interest in applying the law of Texas to the determination of the
persons entitled to share in the wrongful death benefits
available by reason of the death of a Texas resident occurring in
the State of Texas when all of the potential death statute
beneficiaries are residents of the State of Texas. When the
analysis pursued by the California Supreme Court in Kearney is
considered, the conclusion the court reaches is that the
California Supreme Court would conclude that Texas law should
govern the particular issue under consideration. Id. at 923-925.
There is no question but that the interest of Texas would be more
impaired than California's if the policy of Texas relative to
those who are to share in wrongful death benefits were to be
subordinated to the policy of California. Id. at 925. Thus,
even if the court were to consider that a true conflict existed,
it should be resolved by a decision to apply Texas law on the
issue under discussion rather than California law.

Exhibit B-26

For the reasons stated,

The court ORDERS that Texas law is to be applied in
determining whether Shameka is a wrongful death statute
beneficiary entitled to recovery of damages arising from the
death of Henry Sr., and the court ORDERS AND DECLARES that she
has no entitlement to recovery of wrongful death benefits in this
case.

SIGNED March 13, 2015.

JOHN McBRYDE
United States District Judge

8



FILED
U.S. DISTRICT COURT
NORTHERN DIST. OF TX
FT. WORTH DIVISION

2015 JAN 28   PM 3: 23

CLERK OF COURT

WC

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

HENRY LEE SIMS, JR., *et al*          §
                                      §
  *Plaintiffs,*                       §
                                      §
VS.                                   §          CASE NO. 4:14-cv-00045-A
                                      §
KIA MOTORS AMERICA, INC., and         §
KIA MOTORS CORPORATION                §
                                      §
  *Defendants.*                       §

**DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE TO**
**DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

**Preliminary Statement**

In response to the Kia Defendants' motion for partial summary judgment on Shameka

Sims' wrongful death claim, Plaintiffs argue that California law should apply to their claims.

Plaintiffs make no other argument and concede that if Texas law applies, Shameka Sims has no

standing to participate in this action.  Because this lawsuit was originally filed in California but

was transferred to the Northern District of Texas pursuant to 28 U.S.C. § 1404(a), this Court

must utilize the California choice-of-law rules in deciding whether Texas or California law

applies.  Consequently, in ruling on this motion for partial summary judgment, the Court is now

presented with one, straightforward choice-of-law issue:

> In resolving choice-of-law issues, California courts apply the governmental-
> interest analysis, which ultimately requires the application of the law of the state
> with the greatest interest.  Here, all Plaintiffs are Texas residents; the vehicle at
> issue was purchased in Texas; and the last event necessary for liability
> (Plaintiffs' injury) occurred during an automobile accident on a Texas road.
> Should California law apply when California's only connection with the case is
> that Kia Motors America, Inc. is headquartered there?

That is the overarching question that Plaintiffs attempt to obscure in their response brief.  In this

reply, the Kia Defendants seek, in light of Plaintiffs' brief, to develop this issue and to treat the

subissues as succinctly as possible.

# Table of Contents

Preliminary Statement..................................................................................................1

Table of Authorities....................................................................................................3

Argument & Authorities.............................................................................................5

   I.  According to California choice-of-law rules, Texas law should apply to the claims
      in this case. ........................................................................................................5

      A.  The applicable laws of Texas and California differ materially as to liability and
          damages. ...............................................................................................5

      B.  Despite materially different laws, there is no true conflict because only Texas
          has an interest in having its laws applied. ................................................7

          1.  The "place of the wrong" is Texas, not California, because Texas is the
              state where the last event necessary to make the actor liable occurred..............8

          2.  As the place of the wrong, Texas has an interest in deterring allegedly
              harmful conduct within its borders.......................................................12

          3.  Texas has a valid interest in shielding out-of-state businesses conducting
              business within state borders from what Texas considers to be excessive
              litigation. .............................................................................................13

          4.  Texas has an interest in ensuring its residents are compensated and in
              determining the distribution of proceeds. ............................................16

      C.  Even if this Court determines that a true conflict exists, Texas has a greater
          interest than California in the application of its own laws, and Texas' interest
          would be more significantly impaired if its laws are not applied................................17

  II.  Because Texas law applies to this case, Shameka Sims does not have standing
      to bring a wrongful death action......................................................................21

  III.  The Kia Defendants did not waive their right to respond to Plaintiffs' argument
      that California law applies to this case.........................................................21

Conclusion................................................................................................................22

## Table of Authorities

**Cases**

*Barker v. Lull Eng'g Co.*, 573 P.2d 443 (Cal. 1978) ....................................................................6

*Berkman v. City of Keene*, No. 3:10-CV-2378-B, 2011 WL 3268214
   (N.D. Tex. July 29, 2011)..............................................................................................................21

*Bernhard v. Harrah's Club*, 546 P.2d 719 (Cal. 1976) ...............................................................20

*BIC Pen Corp. v. Carter*, 346 S.W.3d 533 (Tex. 2011)................................................................6

*Birdsong v. Apple, Inc.*, 590 F.3d 955 (9th Cir. 2009)................................................................6

*Castro v. Budget Rent-A-Car Sys., Inc.*, 65 Cal. Rptr. 3d 430 (Cal. Ct. App. 2007) ...................18

*Cortez v. Global Ground Support, LLC*, No. 09-4138 SC, 2010 WL 5173861
   (N.D. Cal. Dec. 15, 2010) .............................................................................................................11

*Daly v. Gen. Motors Corp.*, 575 P.2d 1162 (Cal. 1978) ..............................................................7

*Downing v. Abercrombie & Fitch*, 265 F.3d 994 (9th Cir. 2001)................................................14

*Ford Motor Co. v. Ledesma*, 242 S.W.3d 32 (Tex. 2007) ............................................................12

*Hernandez v. Burger*, 162 Cal. Rptr. 564 (Cal. Dist. Ct. App. 1980) ....................................16, 17

*Hill v. Novartis Pharm. Corp.*, No. 1:06–cv–00939–AWI–DLB, 2012 WL 967577
   (E.D. Cal. Mar. 21, 2012)..........................................................................................10, 17, 18, 19

*Howe v. Diversified Builders, Inc.*, 69 Cal. Rptr. 56 (Cal. Dist. Ct. App. 1968).....................15, 16

*Hurtado v. Super. Ct. of Sacramento Cnty.*, 522 P.2d 666 (Cal. 1974)................................15, 16

*Int'l-Matex Tank Terminals-Illinois v. Chem. Bank*, No. 1:08-CV-1200, 2009 WL 1651291
   (W.D. Mich. June 11, 2009).........................................................................................................22

*Kearney v. Salomon Smith Barney, Inc.*, 137 P.3d 914 (Cal. 2006) ...........................................5

*Lane v. Hughes Aircraft Co.*, 993 P.2d 388 (Cal. 2000)...............................................................7

*Lombardi v. Bank of Am.*, No. 3:13-CV-1464-O, 2014 WL 988541 (N.D. Tex. Mar. 13, 2014)...21

*Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012)......................................... passim

*McCann v. Foster Wheeler LLC*, 225 P.3d 516 (Cal. 2010)................................................ passim

*Morris v. AGFA Corp.*, 51 Cal. Rptr. 3d 301 (Cal. Ct. App. 2006)..............................................19

*Offshore Rental Co. v. Cont'l Oil Co.*, 583 P.2d 721 (Cal. 1978) ..........................................13, 14

*Stangvik v. Shiley Inc.*, 819 P.2d 14 (Cal. 1991) ...................................................................19, 20

*State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003) .........................................12

*Vestal v. Shiley Inc.*, No. SACV96-1205-GLT(EEX), 1997 WL 910373
     (C.D. Cal. Nov. 17, 1997) ...................................................................................................19

**Statutes**

Cal. Civ. Proc. Code § 377.60..................................................................................................6

Tex. Bus. & Com. Code Ann. § 2.314 .....................................................................................6

Tex. Civ. Prac. & Rem. Code Ann. § 33.001 ..........................................................................7

Tex. Civ. Prac. & Rem. Code Ann. § 41.001 ..........................................................................7

Tex. Civ. Prac. & Rem. Code Ann. § 41.008 ......................................................................7, 14

Tex. Civ. Prac. & Rem. Code Ann. § 71.002 .........................................................................14

Tex. Civ. Prac. & Rem. Code Ann. § 71.004 ...............................................................6, 14, 21

Tex. Civ. Prac. & Rem. Code Ann. § 82.005 .............................................................6, 12, 14

### Argument & Authorities

I.   **According to California choice-of-law rules, Texas law should apply to the claims in this case.**

California courts apply the governmental-interest analysis in resolving choice-of-law issues.[1]  This analysis generally involves three steps.[2]  First, the Court determines whether the relevant law of each of the potentially affected jurisdictions is the same or different.[3]  Second, if there is a difference, the Court examines the jurisdictions' respective interests to determine which jurisdiction's interests would be more severely impaired if that jurisdiction's laws were not applied in the particular context presented by the case.[4]  Third, if the Court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interests of each jurisdiction in the application of its own law to determine which state's interests would be more impaired if its policy were subordinated to the policy of the other state.[5]  The Court should apply the law of the state whose interest would be more impaired if its law were not applied.[6]

A.   **The applicable laws of Texas and California differ materially as to liability and damages.**

Without belaboring this point, which has been thoroughly briefed in KMA's motion to transfer venue and Plaintiffs' response to the Kia Defendants' motion for partial summary judgment, California law conflicts with Texas law concerning the elements necessary to support Plaintiffs' claims and the potential measure of damages.  The following is a non-exhaustive table comparing each jurisdiction's relevant laws:

---

[1] See, e.g., Kearney v. Salomon Smith Barney, Inc., 137 P.3d 914, 922 (Cal. 2006).
[2] Id.
[3] Id.
[4] Id.
[5] Id.
[6] Id.

Exhibit C-32

| Claim | California | Texas |
|---|---|---|
| **Wrongful Death Claim** | A cause of action for the death of a person caused by the wrongful act or neglect of another may be asserted by any of the following persons or by the decedent's personal representative on their behalf: (a) The decedent's surviving spouse, domestic partner, children, and issue of deceased children, or, if there is no surviving issue of the decedent, the persons, including the surviving spouse or domestic partner, who would be entitled to the property of the decedent by intestate succession.[7] | An action to recover damages as provided by the wrongful death subchapter is for the exclusive benefit of the surviving spouse, children, and parents of the deceased.[8] |
| **Manufacturing Defect** | The product deviates from the manufacturer's intended result or from other seemingly identical products from the manufacturer's same product line.[9] | The product deviates, in its construction or quality, from the specifications or planned output in a manner that renders it unreasonably dangerous.[10] |
| **Design Defect** | The product failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner, or the product may alternatively be found defective in design if the plaintiff demonstrates that the product's design proximately caused his injury and the defendant fails to establish, in light of the relevant factors, that on balance the benefits of the challenged design outweigh the risk of danger inherent in such design.[11] | (1)  There was a safer alternative design other than the one actually used that in reasonable probability: (a) would have prevented or significantly reduced the risk of the claimant's personal injury, property damage, or death without substantially impairing the product's utility; and (b) was economically and technologically feasible at the time the product left the control of the manufacturer or seller by the application of existing or reasonably achievable scientific knowledge; and (2)  the defect was a producing cause of the personal injury, property damage, or death for which the claimant seeks recovery.[12] |
| **Breach of Implied Warranty of Merchantability** | A breach of the warranty of merchantability occurs if the product lacks even the most basic degree of fitness for ordinary use.[13] | (1)  The defendant sold or leased a product to the plaintiff; (2)  the product was unmerchantable; (3)  the plaintiff notified the defendant of the breach; and (4)  the plaintiff suffered injury.[14] |

[7] Cal. Civ. Proc. Code § 377.60.

[8] Tex. Civ. Prac. & Rem. Code Ann. § 71.004(a).

[9] *Barker v. Lull Eng'g Co.*, 573 P.2d 443 (Cal. 1978).

[10] *BIC Pen Corp. v. Carter*, 346 S.W.3d 533, 540 (Tex. 2011).

[11] *Barker*, 573 P.2d 443.

[12] Tex. Civ. Prac. & Rem. Code Ann. § 82.005.

[13] *Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 (9th Cir. 2009).

[14] Tex. Bus. & Com. Code Ann. § 2.314.

| Claim | California | Texas |
|---|---|---|
| **Punitive Damages** | California has no statutory cap on punitive damages.[15] | Recovery of exemplary damages is limited to the greater of (1) two times economic damages[16] plus noneconomic damages up to $750,000; or (2) $200,000.[17] |
| **Impact of Claimant's Responsibility on Recovery** | Responsibility and liability for damage are assigned in direct proportion to the amount of negligence of each of the parties, were to be applied to actions founded on strict products liability; in such an action, the plaintiff's recovery would be reduced to the extent that his own lack of reasonable care contributed to his injury.[18] | A claimant may not recover damages if his percentage of responsibility is greater than 50 percent.[19] |

The Kia Defendants, therefore, agree that California and Texas laws materially differ and that the first prong of the governmental-interest analysis is satisfied.

> **B.     Despite materially different laws, there is no true conflict because only Texas has an interest in having its laws applied.**

Because the laws of California and Texas differ materially, the Court must examine the interests of each jurisdiction in having its own law applied to the dispute to determine whether there is a true conflict.[20]   A "true conflict" occurs when each state has a legitimate interest in having its law applied in a particular setting.[21]   Only if the Court determines that the laws are materially different and that each state has an interest in having its own law applied, thus reflecting an actual conflict, must the Court take the final step and select the law of the state whose interests would be "more impaired" if its laws were not applied.[22]   In other words, this Court may properly find Texas law applicable without proceeding to the third step if it finds that California has no legitimate interest in the application of its laws.

---

[15] *See, e.g., Lane v. Hughes Aircraft Co.*, 993 P.2d 388 (Cal. 2000).

[16] Economic damages are compensatory damages for pecuniary loss. Tex. Civ. Prac. & Rem. Code Ann. § 41.001(4).

[17] Tex. Civ. Prac. & Rem. Code Ann. § 41.008.

[18] *Daly v. Gen. Motors Corp.*, 575 P.2d 1162, 1172 (Cal. 1978).

[19] Tex. Civ. Prac. & Rem. Code Ann. § 33.001.

[20] *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 590 (9th Cir. 2012).

[21] *McCann v. Foster Wheeler LLC*, 225 P.3d 516, 523 (Cal. 2010).

[22] *Mazza*, 666 F.3d at 590.

1.    The "place of the wrong" is Texas, not California, because Texas is
the state where the last event necessary to make the actor liable
occurred.

Ignoring relevant California Supreme Court precedent, Plaintiffs repeatedly argue in their brief that Texas has no interest in the application of its laws in this case. In fact, Texas has several interests in having its laws applied here, and its interests arise from more than merely the location of the collision.[23] To circumvent California Supreme Court precedent establishing Texas' interests, which will be explained in the proceeding sections, Plaintiffs have argued, "[T]here is overwhelming evidence that a substantial part of the wrongful conduct alleged in Plaintiffs' Amended Complaint occurred in California."[24] Plaintiffs dedicate three pages to proving that the place of the wrong is California because the subject vehicle was designed and developed at KMA in California.[25] Plaintiffs alternatively argue that "the wrongful conduct alleged in Plaintiffs' Amended Complaint occurred when defendants placed the defective Kia Soul into the stream of commerce in the United States."[26]

First, as fully briefed in KMA's motion to transfer venue, Plaintiffs' factual allegations regarding KMA's activities are incorrect. KMA does not design, develop, certify compliance testing, or manufacture vehicles of any type.[27] It is a distributor of Kia brand motor vehicles.[28] Its business activities are focused on distribution of those vehicles, along with the related activities to support the independent dealers who sell Kia brand motor vehicles.[29] Those related

---

[23] *But see* Pls.' Brief in Support of Resp. in Opposition to Defs.' Motion for Partial Summary Judgment, Doc. 62, at 3 (stating that the Kia Defendants "insinuate that Texas law should apply merely because the collision occurred in Texas") [hereinafter Pls.' Resp. Brief].

[24] Pls. Resp. Brief, Doc. 62, at 5.

[25] *Id.* at 5-7.

[26] *Id.* at 14-15.

[27] *See* Order Granting Def.'s Mot. to Transfer, App'x in Supp. of Defs.' Brief in Supp. of Their Mot. for Partial Summ. J. at 27-28 [hereinafter Defs.' Mot. Brief App'x]; Kia Motors America, Inc. Original Answer to Pls.' First Am. Complaint, App'x in Supp. of Pls.' Brief in Supp. of Resp. to Defs.' Mot. for Partial Summ. J. at 39 [hereinafter Pls.' Resp. Brief App'x].

[28] *See* Order Granting Def.'s Mot. to Transfer, Defs.' Mot. Brief App'x at 27-28.

[29] *See, e.g.,* Commercial invoice reflecting sale of subject vehicle to KMA and commercial invoice reflecting distribution of subject vehicle, Pls. Resp. Brief App'x at 41-44.

activities include vehicle and part marketing and wholesale, warranty administration, and customer service functions.[30] Although KMA was the distributor of the subject 2010 Kia Soul, the vehicle was not purchased by a consumer in California.[31] Instead, the subject vehicle was placed in the stream of commerce in Texas where Beverly Fuller purchased it at an authorized Kia dealership.[32]

Plaintiffs are aware that KMA does not design vehicles because this issue was explained by KMA in its motion to transfer venue and in Michele Cameron's sworn declaration that accompanied the motion.[33] Plaintiffs are also aware of the inaccuracy of their argument as Plaintiffs deposed Michele Cameron on January 8, 2015.[34] In her deposition, Cameron explained that the type of design performed in California is different from the design of a fuel tank or the other component parts at issue here. The design center in California has designers that develop exterior vehicle designs and styling and the look and feel of the vehicles. The research and development of the vehicle and the actual design of the vehicle to be built are done in Korea.[35] Cameron specifically stated that KMA was not involved in the fuel system design in the subject vehicle or the components used therein, and the brochures and materials Plaintiffs bring before the Court never state otherwise.[36] Yet, Plaintiffs continue to misconstrue this information and the word "design" in order to bolster their argument that California has an interest in this case.

Second, regardless of the inaccuracy of the assertion that KMA had any role in the design or development of the vehicle, California courts have consistently held that when

---

[30] *See, e.g.*, Press releases, warranty documentation authored by Defendant KMA, and marketing materials authored by Defendant KMA, Pls.' Resp. Brief App'x at 24-36.

[31] *See* Commercial invoice reflecting distribution of subject vehicle, Pls.' Resp. Brief App'x at 44.

[32] *See id.*

[33] *See* Order Granting Def.'s Mot. to Transfer, Defs.' Mot. Brief App'x at 27-28.

[34] The Kia Defendants can provide the transcript of the deposition of Michele Cameron to the Court upon request.

[35] *See* Order Granting Def.'s Mot. to Transfer, Defs.' Mot. Brief App'x at 27-28.

[36] *See* Press releases and marketing materials, Pls.' Resp. Brief App'x at 24-31, 36.

---

analyzing choice-of-law issues, the "place of the wrong" is the state where the last event necessary to make the actor liable occurred.[37]  For instance, in *Mazza*, the plaintiffs sought certification of a class and claimed that Honda misrepresented and concealed material information in connection with the marketing and sale of certain vehicles.[38] The court found that the last event necessary for liability as to the foreign class members—communication of the advertisements to the claimants and their reliance thereon in purchasing the vehicle—took place in the various foreign states.[39]  The court then held that these foreign states had a strong interest in the application of their laws to transactions between their citizens and corporations doing business within their state.[40]

In a case such as this alleging strict products-liability claims, a plaintiff must prove a defect in the manufacture or design of the product or failure to warn, causation, *and injury*.[41] Accordingly, the place where the plaintiff was injured is considered the place of the wrongful conduct.[42] This principle was applied in *Hill* where the plaintiff alleged that a drug she had taken caused severe osteonecrosis.[43]  The court refused to find that New Jersey—the state of the defendant's headquarters where key decisions were made—was the place of the wrong. Instead, California was the place of the wrong because the last event necessary to make the defendant liable—the plaintiff's injury—occurred in California.[44]  Thus, California, as the place where the drug was prescribed to and injured one of its residents, had the predominate interest in having its law applied.[45]  Here, the last event necessary to make the Kia Defendants liable in

---

[37] *See, e.g., Hill v. Novartis Pharm. Corp.*, No. 1:06–cv–00939–AWI–DLB, 2012 WL 967577, at *7 (E.D. Cal. Mar. 21, 2012); *Mazza*, 666 F.3d at 593-94.

[38] *Mazza*, 666 F.3d at 593-94.

[39] *Id.*

[40] *Id.*

[41] *Hill*, 2012 WL 967577, at *7.

[42] *Id.*

[43] *Id.*

[44] *Id.*

[45] *Id.*

this case—Plaintiffs' injury—occurred in Texas, giving Texas the predominate interest in having its law applied.[46]

Plaintiffs' primary argument that California has an interest in the application of its laws stems from the faulty premise that the place of the wrong is the location where the product was manufactured, developed, or distributed. In *Cortez v. Global Ground Support*, a California court rejected an argument very similar to Plaintiffs'.[47] The defendants in that case argued that Kansas law should apply because the product at issue was designed, manufactured, and configured in Kansas by a company with its principal place of business in Kansas.[48] The court found that "[w]hile Defendants may have designed and manufactured the [subject product] in Kansas, it ultimately entered California through the stream of commerce, and it allegedly injured Plaintiff[, a California resident,] in California."[49] Consequently, Kansas had *no legitimate interest* in having its law applied to this action.[50] The court further found that the defendants' choice-of-law argument was wholly unsupported by the law and bordered on frivolous.[51]

Plaintiffs must assert this flawed argument that KMA's activities are sufficient to create an interest in applying California law because California has no connection to the case outside of KMA. Disregarding for a moment that KMA did not design, develop, or manufacture the subject vehicle, *Cortez* makes clear that the location of product design and development is irrelevant during a choice-of-law analysis.[52] The vehicle at issue here entered the stream of commerce in Texas, and Plaintiffs were injured in Texas.[53] Therefore, the place of the alleged

---

[46] Pls.' Resp. Brief, Doc. 62, at 3.

[47] *Cortez v. Global Ground Support, LLC*, No. 09-4138 SC, 2010 WL 5173861, at *3-4 (N.D. Cal. Dec. 15, 2010).

[48] *Id.*

[49] *Id.*

[50] *Id.*

[51] *Id.*

[52] *Id.*

[53] *See* Pls.' Resp. Brief, Doc. 62, at 3; Commercial invoice reflecting distribution of subject vehicle, Pls.' Resp. Brief App'x at 44.

---

wrong for the purposes of determining which state, California or Texas, has a predominate interest in having its laws applied is Texas. California, in contrast, has no true connection to this case, and no legitimate interest in having its laws applied.

>    **2.    As the place of the wrong, Texas has an interest in deterring allegedly harmful conduct within its borders.**

The California Supreme Court has recognized a state's interests in deterring conduct within its borders.[54]  This interest is based on the "basic principle of federalism . . . that each State may make its own reasoned judgment about what conduct is permitted or proscribed within its borders, and each State alone can determine what measure of punishment, if any, to impose on a defendant who acts within its jurisdiction."[55]

Through its legislature and its courts, Texas has made reasoned judgments about what it considers to be a "defective product" that should not be released into the stream of commerce in Texas.[56]  Utilizing these products-liability causes of action, Texas consumers can hold manufacturers accountable when a defective product used in Texas causes an injury.  Texas has also determined that if the defective product causes the death of a Texas resident, certain individuals may bring a wrongful death claim, through which exemplary damages may be recovered to punish the manufacturer. These threats of litigation and of punitive damages act to deter harmful conduct within Texas borders.  In fact, in his Order Granting KMA's Transfer, Judge Carney recognized, "Texas's interest in vindicating the rights of its citizens with respect to claims arising out of conduct that allegedly caused a fatality within its borders is significant."[57] Because the conduct alleged by Plaintiffs to be harmful occurred in Texas, Texas has an

---

[54] *McCann*, 225 P.3d at 534.

[55] *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 422 (2003).

[56] *See, e.g., Ford Motor Co. v. Ledesma*, 242 S.W.3d 32 (Tex. 2007) (defining the elements of a manufacturing defect claim); Tex. Civ. Prac. & Rem. Code Ann. § 82.005 (establishing the elements of a design defect claim).

[57] Order Granting Def.'s Mot. to Transfer, Defs.' Mot. Brief App'x at 29-30.

---

interest in applying its law in the case in order to ensure that the allegedly harmful conduct, if proven wrongful, does not reoccur within its borders.

> **3.     Texas has a valid interest in shielding out-of-state businesses conducting business within state borders from what Texas considers to be excessive litigation.**

Achieving the optimal balance between protecting consumers and attracting foreign businesses, with resulting increase in commerce and jobs, is a decision properly to be made by the legislatures and courts of each state.[58]  Accordingly, as the California Supreme Court has recently reiterated, each state has an interest in setting the appropriate level of liability for companies conducting business within its territory.[59]  Each state also has an interest in being able to assure individuals and commercial entities operating within its territory that applicable liability limitations set forth in the jurisdiction's law will be available to those individuals and businesses in the event they are faced with litigation in the future.[60]

The California Supreme Court's decision in *Offshore Rental* supports the foregoing principles.  In that case, the plaintiff was a California company that brought suit in California to recover economic damages it had suffered when one of its key employees had been injured in Louisiana, allegedly as a result of the negligence of one of the defendant company's employees in Louisiana.[61]  The case presented a choice-of-law issue because California law permits a company to maintain a cause of action for the economic damage suffered by the company as a result of an injury to a key employee, whereas Louisiana law does not permit an employer to maintain such a cause of action.[62]  In examining the question of whether Louisiana had an interest in having its law, the court explained, "At the heart of Louisiana's denial of liability lies

---

[58] *Mazza*, 666 F.3d at 592.

[59] *See McCann*, 225 P.3d at 529; *Mazza*, 666 F.3d at 592.

[60] *Mazza*, 666 F.3d at 592-93.

[61] *Offshore Rental Co. v. Cont'l Oil Co.*, 583 P.2d 721 (Cal. 1978).

[62] *Id.*

the vital interest in promoting freedom of investment and enterprise within Louisiana's borders, among investors incorporated both in Louisiana and elsewhere. The imposition of liability on defendant, therefore, would strike at the essence of a compelling Louisiana law."[63]  Thus, although the defendant in that case was a California company doing business in Louisiana, the California court recognized that the interest of Louisiana in protecting companies from what Louisiana viewed as excessive liability extended to the California company.[64]

Texas has created limitations on liability for individuals and businesses faced with litigation in this state. For example, Texas created a wrongful death cause of action in the heirs for the wrongful death of the decedent, which deters the kind of conduct within Texas' borders that wrongfully takes life.[65]  But, unlike other states, Texas limited the availability of this cause of action to the surviving spouse, parents, and children of the decedent.[66]  Additionally, although exemplary damages are allowed in wrongful death actions, the amount of punitive damages recoverable is limited in Texas to "an amount equal to the greater of: (1)(A) two times the amount of economic damages; plus(B) an amount equal to any noneconomic damages found by the jury, not to exceed $750,000; or(2) $200,000."[67]  Moreover, in products-liability cases alleging a design defect, the plaintiff is required to show that a reasonable alternative design existed.[68]

In other words, Texas has exercised its right to limit the level of liability for companies doing business within the state, and it has an interest in being able to assure businesses that these limitations will apply to them when faced with litigation in this state. In this case, Plaintiffs'

---

[63] *Id.*

[64] *Id.*

[65] Tex. Civ. Prac. & Rem. Code Ann. § 71.002; *see also Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1006 (9th Cir. 2001).

[66] Tex. Civ. Prac. & Rem. Code Ann. § 71.004(a).

[67] Tex. Civ. Prac. & Rem. Code Ann. § 41.008(b).

[68] *See* Tex. Civ. Prac. & Rem. Code Ann. § 82.005.

Exhibit C-41

decedent, a Texas resident, died in a Kia vehicle being driven on a Texas roadway.[69] Texas, therefore, has an interest not only in deterring any allegedly wrongful conduct that caused the death of Plaintiffs' decedent from occurring within its borders but also in assuring Kia that Texas' limitations of liability apply to them.[70] California, in contrast, has no interest in impairing the ability of Kia to compete for business in Texas by imposing upon them obligations that Texas does not impose upon foreign corporations or their own domestic corporations.[71]

Plaintiffs argue that the Kia Defendants "cannot establish that the State of Texas has an interest in limiting the recovery of its residents to the benefit of two non-resident defendants."[72] This argument ignores the existence of Texas's other interests such as encouraging economic growth and deterring wrongful conduct. Plaintiffs offer *Hurtado*, a case they argue is nearly identical to this case, for the proposition that foreign states are deemed to have no interest in limiting the recovery of their own residents. *Hurtado* concerned an automobile accident that *occurred in California* and *involved private individuals* from California (defendants) and Mexico (plaintiffs).[73] The court found that Mexico had no interest in applying its limitation of damages to plaintiffs because Mexico had no defendant resident to protect and no interest in denying full recovery to its residents injured by non-Mexican defendants.[74]

Unlike in this case, no commercial entities were involved in *Hurtado*, so the state's interest in regulating out-of-state commercial entities and limiting their potential liability was not at issue.[75] In fact, the California Supreme Court later recognized that nothing in *Hurtado* suggests that a state's interest in the application of a statute limiting liability for a specified commercial activity carried on within the state should not apply to out-of-state companies doing

---

[69] Pls.' First Am. Complaint for Damages, Pls.' Resp. Brief App'x at 3-20.

[70] *See McCann*, 225 P.3d at 534.; *Mazza*, 666 F.3d at 592-93.

[71] *Howe v. Diversified Builders, Inc.*, 69 Cal. Rptr. 56, 59 (Cal. Dist. Ct. App. 1968).

[72] Pls.' Resp. Brief, Doc. 62, at 14.

[73] *Hurtado*, 522 P.2d 666.

[74] *Id.*

[75] *Id.*

business within the state.[76] Contrary to Plaintiffs' argument, then, Texas does have an interest in limiting the recovery of its residents to protect out-of-state companies from what Texas has determined to be excessive liability. If California law were to be applied in this situation, Texas would be impaired in its ability to calibrate liability to foster commerce.[77]

### 4. Texas has an interest in in determining the distribution of proceeds to its statutory plaintiffs.

The California Supreme Court has recognized a state's interest in determining the distribution of proceeds from litigation to the state's residents.[78] The interest of the state in compensation of plaintiffs is to ensure that residents of the state do not become dependent on the resources of that state for necessary medical, disability, and unemployment.[79] A state has no interest in either ensuring the compensation of non-resident plaintiffs who will not become dependent on that state for its resources or extending to non-resident plaintiffs rights to which they are not entitled by the state of their domicile.[80]

Thus, in *Hernandez v. Burger*, a California court refused to extend its own domestic damages rule to a plaintiff who was a resident of Mexico and who was allegedly injured in Mexico.[81] There was no risk that the non-resident plaintiff would become a ward of the State of California.[82] And the only connection California had with the case was "that defendants happen to be California residents and that California [was] the forum."[83] California, therefore, had no

---

[76] *McCann*, 225 P.3d at 531.

[77] *See Mazza*, 666 F.3d at 593.

[78] *Hurtado v. Super. Ct. of Sacramento Cnty.*, 522 P.2d 666 (Cal. 1974).

[79] *See Hernandez v. Burger*, 162 Cal. Rptr. 564 (Cal. Dist. Ct. App. 1980).

[80] *See Howe*, 69 Cal. Rptr. at 60.

[81] *Hernandez*, 162 Cal. Rptr. 564.

[82] *Id.*

[83] *Id.*

Exhibit C-43

legitimate concern in extending its own domestic damages rule and providing the non-resident plaintiffs with rights to which they were not entitled by Mexico.[84]

Similarly, this Court should refuse to extend California's laws to Plaintiffs in this case who are residents of Texas, not California, and who were allegedly injured in Texas. Like in *Hernandez*, the only connection California has with this case is that KMA happens to be headquartered in California.[85] There is no risk that Plaintiffs will become wards of the State of California, so California has no interest in ensuring Texas Plaintiffs are compensated and benefit from California's laws.[86] Texas, on the other hand, has an interest in making sure that these Texas residents do not become dependent on the State of Texas for necessary medical, disability, and unemployment.[87] In sum, Texas has a strong interest in this case simply because Plaintiffs are Texas residents.

**C.   Even if this Court determines that a true conflict exists, Texas has a greater interest than California in the application of its own laws, and Texas' interest would be more significantly impaired if its laws are not applied.**

If this Court determines that California has a legitimate interest in the application of its law, then the Court must proceed to the comparative impairment analysis.[88] This final step requires the Court to determine which jurisdiction has a greater interest in the application of its own law to the issue or, conversely, which jurisdiction's interest would be more significantly impaired if its laws were not applied.[89] The comparative impairment analysis does not require the Court to determine whether the Texas rules or the California rules are the better or worthier

---

[84] *Id.*

[85] *See* Order Granting Def.'s Mot. to Transfer, Defs.' Mot. Brief App'x at 27-28 ("The only apparent connection between Plaintiffs and California is that the party against who Plaintiffs allege liability arising out of the accident, KMA, is a California resident."); Kia Motors America, Inc.'s Reply in Supp. of Its Mot. to Transfer Venue to the N. District of Tex. Pursuant to 28 U.S.C. Section 1404(a), Pls.' Resp. Brief App'x at 47.

[86] Pls.' First Am. Complaint for Damages, Pls.' Resp. Brief App'x at 3-20

[87] *See Hernandez*, 162 Cal. Rptr. 564.

[88] *Mazza*, 666 F.3d at 590.

[89] *Hill*, 2012 WL 967577, at *1.

---

rules but, rather, to decide—in light of the legal question at issue and the relevant state interests at stake—which jurisdiction should be allocated the predominating lawmaking power under the circumstances of the present case.[90]

As acknowledged in the Order Granting KMA's motion to transfer venue, Texas has a strong interest in this case.[91] California choice-of-law cases continue to recognize that a jurisdiction ordinarily has "the predominant interest" in regulating or affecting conduct that occurs within its borders and on its roadways, absent some other compelling interest to be served by applying California law.[92] As previously explained, Texas is the place of the wrong because it is the state where the last event necessary to make the actor liable (Plaintiffs' injury) occurred.[93] Thus, it has interests in protecting its residents; deterring harmful conduct; setting the appropriate level of liability for companies conducting business within its territory; and being able to assure individuals and commercial entities operating within its territory that applicable limitations on liability set forth in Texas' laws will be available to those individuals and businesses in the event they are faced with litigation.[94] Plaintiffs have provided no compelling interest to be served by applying California law that would override Texas' predominate interests.

Instead, Texas' interests would be significantly impaired if California law applied. First, application of California law would eliminate Texas' ability to protect its own residents from the conduct alleged by Plaintiffs to be wrongful.[95] Second, it would undercut Texas' efforts to

---

[90] *McCann*, 225 P.3d at 534.

[91] Order Granting Def.'s Mot. to Transfer, Defs.' Mot. Brief App'x at 29 n.3 ("[A]s to the choice of law question, the Court notes, without deciding, that an application of California's governmental interests test for choice of law may require an application of Texas law to this matter, given Texas's strong interest in this case.").

[92] *See Castro v. Budget Rent-A-Car Sys., Inc.*, 65 Cal. Rptr. 3d 430, 442 (Cal. Ct. App. 2007).

[93] *Hill*, 2012 WL 967577, at *7.

[94] *See, e.g.*, *McCann*, 225 P.3d at 531-34.

[95] Order Granting Def.'s Mot. to Transfer, Defs.' Mot. Brief App'x at 29-30 ("Texas's interest in vindicating the rights of its citizens with respect to claims arising out of conduct that allegedly caused a fatality within its borders is significant, and must be yield to by this Court.").

protect manufacturers that sell good products as reflected by the reasonable-alternative-design requirement for a design defect claim and the presumption of no liability if a manufacturer establishes that the product's design complied with federal safety standards and regulations. Finally, Texas' interest in assuring the application of its liability limitations in the event businesses operating in the state are sued would be entirely disregarded, as California has no statutory limits on potential liability.

By contrast, a failure to apply California law on the facts of the present case will effect a far less significant impairment of California's alleged interest.[96] Plaintiffs assert that California has an interest in "policing wrongful conduct occurring within its borders."[97] Plaintiffs specifically argue that "[t]his policy would be impaired by insulating California corporations from wrongdoing occurring in California and resulting in harm to out-of-state citizens."[98] California courts not only disagree with Plaintiffs' assessment regarding the place of the wrong in this case[99] but also reject the contention that lawsuits brought in foreign jurisdictions by plaintiffs who are not California residents effectively deter California corporations from engaging in unlawful practices.[100] In *Stangvik*, for instance, the California Supreme Court found that deterrence would only be negligibly advanced if claims by nonresidents of California proceeded in a foreign jurisdiction.[101] It explained that suits by California residents adequately serve to deter California

---

[96] Order Granting Def.'s Mot. to Transfer, Defs.' Mot. Brief App'x at 28 (finding that "California's contacts with Plaintiffs' causes of action are more tenuous" than Texas's significant contacts).

[97] Pls.' Resp. Brief, Doc. 62, at 17.

[98] *Id.*

[99] *See Hill*, 2012 WL 967577, at *7.

[100] *Stangvik v. Shiley Inc.*, 819 P.2d 14 (Cal. 1991); *see also Morris v. AGFA Corp.*, 51 Cal. Rptr. 3d 301, 313 (Cal. Ct. App. 2006) ("Successful litigation in Texas would have the same deterrent effect that a California court might afford."); *Vestal v. Shiley Inc.*, No. SACV96-1205-GLT(EEX), 1997 WL 910373, at *3 (C.D. Cal. Nov. 17, 1997).

[101] *Stangvik*, 819 P.2d 14.

---

Exhibit C-46

companies from unlawful practices.[102]   Thus, application of Texas law would have little detrimental effect on California's ability to police conduct occurring within its borders.[103]

Plaintiffs' argument that the Kia Defendants have placed themselves at the heart of California's regulatory interest is equally unavailing.[104]   To support their contention that California law should apply to KMA's enjoyment of the benefits of doing business in the State of California, Plaintiffs rely on *Bernhard v. Harrah's Club*.[105]   But the holding in *Bernhard* actually supports the application of Texas law.   In that case, a Nevada tavern owner advertised and otherwise solicited in California for the business of California residents, knowing and expecting said California residents, in response to its advertising, to use the public highways to go to and from the club in Nevada.[106]   In this case, KMA has marketed in Texas for the business of Texas residents, expecting said Texas residents, in response to its advertising to use Kia products on Texas roads.   Thus, KMA has put itself at the heart of Texas' regulatory interests, namely to protect its consumers from defective products and to deter manufacturers from selling defective products in the state.   Texas' interests would be significantly impaired if its law did not apply because Texas cannot reasonably effectuate its policies of protection and deterrence if it does not extend its regulation to include out-of-state vehicle manufacturers who regularly and purposefully sell vehicles to Texas residents.

Furthermore, application of California law does not impair California's alleged interest in deterring wrongful conduct because California law does not impose a new duty on the Kia Defendants.   California law requires the Kia Defendants to manufacture safe products—the same general duty imposed by Texas.   Because the Kia Defendants willfully distribute their products outside of California and because California law imposes no conflicting duty by

---

[102] *Id.*

[103] *Id.*

[104] Pls.' Resp. Brief, Doc. 62, at 17.

[105] *Bernhard v. Harrah's Club*, 546 P.2d 719 (Cal. 1976).

[106] *Id.*

application of its laws, Texas has the greater interest in regulating and affecting conduct within its own borders.

## II.    Because Texas law applies to this case, Shameka Sims does not have standing to bring a wrongful death action.

As stated in the Kia Defendants' opening brief, Texas law provides standing to sue for wrongful death to surviving spouses, children, and parents.[107]    Grandchildren do not have standing to sue for wrongful death. Therefore, as the grandchild of Henry Lee Sims, Sr., Shameka Sims cannot bring a claim for wrongful death.

## III.    The Kia Defendants did not waive their right to respond to Plaintiffs' argument that California law applies to this case.

The Kia Defendants argued in their brief in support of their motion for partial summary judgment that, under Texas law, Shameka Sims has no standing to bring a wrongful death claim.[108]    In response, Plaintiffs have raised the argument that California law should apply to Shameka Sims' wrongful death claim.[109]    The Kia Defendants are responding to that argument in this reply. By asserting that the Kia Defendants cannot respond to Plaintiffs' choice-of-law argument in their response, Plaintiffs argue for the nonsensical proposition that the Kia Defendants are required to anticipate each argument Plaintiffs would raise in response to their motion for summary judgment and preemptively rebut each argument—before Plaintiffs ever make the argument. The purpose of a reply is to allow the Kia Defendants, as the movant, to rebut those arguments raised in Plaintiffs' response.[110]

---

[107] Tex. Civ. Prac. & Rem. Code Ann. § 71.004(a).

[108] Defs.' Brief in Supp. of Their Mot. for Partial Summ. J., Doc. 58.

[109] Pls.' Resp. Brief, Doc. 62.

[110] *Lombardi v. Bank of Am.*, No. 3:13-CV-1464-O, 2014 WL 988541, at *3 (N.D. Tex. Mar. 13, 2014) ("The purpose of filing a reply 'is to give the movant the final opportunity to be heard, and to rebut the nonmovants' response, thereby persuading the court that the movant is entitled to the relief requested by the motion.'"); *Berkman v. City of Keene*, No. 3:10-CV-2378-B, 2011 WL 3268214, at *5 (N.D. Tex. July 29, 2011) ("The Court finds that the City was not presenting a new legal issue [in its reply], but rather responding to Berkman's assertions [in his response] . . . .").

The cases relied on by Plaintiffs' counsel to prove that the Kia Defendants waived their ability to respond to Plaintiffs' argument are inapposite. In those cases, the reply provided an entirely new ground upon which the same requested relief could be granted.[111] For example, in *International-Matex*, the movant initially argued that it was not obligated to comply with the terms of its agreement with the opposing party because that party had failed to comply first.[112] Then, in its reply, the movant argued that complying with the terms of the agreement would force the movant to commit fraud.[113] The court refused to consider the fraud argument because it was not mentioned in the opening brief.[114] Unlike in *International-Matex*, the Kia Defendants are not arguing a new ground upon which its motion for summary judgment on Shameka Sims' wrongful death claim can be granted. Instead, the arguments in this reply are presented to rebut Plaintiffs' arguments in their response.

## Conclusion

The question presented by Plaintiffs' response to the Kia Defendants' motion for partial summary judgment should be answered in straightforward fashion: Texas law applies to the claims in this case. Texas has a strong interest in deterring conduct in its borders, protecting its residents, and shielding out-of-state defendants from excessive liability. The application of California law would significantly impair these interests. And California's interests, if any, are attenuated, at best. Thus, under Texas law, Shameka Sims has no standing to bring a wrongful death claim. The Kia Defendants ask this Court to grant their motion for partial summary judgment.

---

[111] *See, e.g., Int'l-Matex Tank Terminals-Illinois v. Chem. Bank*, No. 1:08-CV-1200, 2009 WL 1651291, at *2 (W.D. Mich. June 11, 2009).

[112] *See id.*

[113] *See id.*

[114] *See id.*

Exhibit C-49

Respectfully submitted,

**KURT C. KERN**
State Bar No. 11334600
kurt.kern@bowmanandbrooke.com
**CARY A. SLOBIN**
State Bar No. 00797445
cary.slobin@bowmanandbrooke.com
**TANYA B. SCARBROUGH**
State Bar No. 24049268
tanya.scarbrough@bowmanandbrooke.com
**AMANDA R. McKINZIE**
State Bar No. 24088028
amanda.mckinzie@bowmanandbrooke.com
**BOWMAN AND BROOKE LLP**
2501 North Harwood, Suite 1700
Dallas, Texas 75201
Telephone:    (972) 616-1700
Facsimile:    (972) 616-1701
**COUNSEL FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded to all known counsel of record in this cause in accordance with the Federal Rules of Civil Procedure on this 28th day of January, 2015.

**THE STATE OF TEXAS** )(
**COUNTY OF TARRANT** )(

D ✓
PAGE ___ OF ___
13-4/135

My name is _Kevin Davis_. I am _58_ years of age.
My date of birth is _12-28-54_. I live at _116 Rustling Elm Way, Azle TX. 76020_
My phone number is _817-586-8324_. I have completed _16_ years of schooling. I can
read, write, and understand the English language.

Start Time: ____

I approach the intersection going south, I slowed
down, Looked at the light, it appeared green so I
went into the intersection. I saw movement in the corner
of my eye then an impact. The next thing I remember
is seeing air bags in front of me.
I looked at my son to make sure he was okay. I saw
that the other car was on fire, My son and I got out
of the van and ran to the other car. There was a lot of
flames and smoke. I looked at the people in the front seat, Drivers
I tried pulling the door open. I couldn't, I yelled at side
them to come thru the window, I helped get them out the window.
I talked to a person in the back seat. Flames were very
bad. I tried to pull the door open, I got it a few inches
open but not enough The window was out. I kept yelling
come out the window but the person shook his head no. Others
had arrived to help I went around the cars did the others
trying to find a way to help I tried the hatchback, the flames
were too hot. Another young man came to the drivers side and
we both kept pulling on the rear door begging for someone to
come out the windows. I went to the passenger side front
and reached in the window with my right hand, I had a
grip on someone's hand, I think it was a woman, the smoke was
too thick, the fire too hot, I couldn't pull her at all. The fire
was to big, we all were driven back.

---

Making a false statement to a police officer is a violation of the Texas Penal Code and is
punishable by imprisonment, fine, and or both. Knowing this I make the above statement
freely and willingly and state that it is true and correct to the best of my knowledge as I
have told the officer.

End Time: ____

Signed: _Kevin D. Davis_

Date: _4/28/2013_

Witnessed ____

**THE STATE OF TEXAS** )(
**COUNTY OF TARRANT** )(

*Driver* PAGE ___ OF ___
B-41135

My name is _Beverly A Fuller_. I am _65_ years of age.
My date of birth is _04/22/50_. I live at _5712 Burton Ave FF Worth, Tx 76119_
My phone number is _817 457-8914_. I have completed _12_ years of schooling. I can
read, write, and understand the English language.
Start Time: _1500_

Traveling North, *thru* green light, Saw grey
vehicle to my Right seeming not to stop. Tried
to speed up, then the grey vehicle went thru
traffic light & hit my vehicle broad side
Air bags deployed & car on fire, back door
stuck/jammed. Opened front door leaped
thru the fire my sister crossed over seat
& exit after me. Lots of good Samaritain
tried to get the back door open to save & free.
Sis. Lillie Smith, Nephew Walter King & bro Henry Sias.

Making a false statement to a police officer is a violation of the Texas Penal Code and is
punishable by imprisonment, fine, and or both. Knowing this I make the above statement
freely and willingly and state that it is true and correct to the best of my knowledge as I
have told the officer.

4/28/13

End Time: _1520_

Signed _Beverly Fuller_

Date: _4-28-13_

Witnessed _____

**Exhibit E-52**

ORIGINAL

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

FILED
U.S. DISTRICT COURT
NORTHERN DIST. OF TX
FT. WORTH DIVISION

2014 APR 17  PM 4: 08

CLERK OF COURT

| | | |
|---|---|---|
| HENRY LEE SIMS, JR., *et al* | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| VS. | § | CASE NO. 4:14-cv-00045-A |
| | § | |
| KIA MOTORS AMERICA, INC., and | § | |
| KIA MOTORS CORPORATION | § | |
| | § | |
| *Defendants.* | § | |

### KIA MOTORS AMERICA, INC.'S ORIGINAL
### ANSWER TO PLAINTIFFS' FIRST AMENDED COMPLAINT

Kia Motors America, Inc. (hereinafter "KMA"), for itself alone, answers the First

Amended Complaint of Plaintiffs Henry Lee Sims, Jr., Timothy Everett Sims, Willie Earl

Sims, Shamika Rae Sims, Kathlyn Lenetta Sims, Brence Eric Sims, Michael Andre

Sims, Sarah Denise Sims, and Pamela Rachael Sims, individually and as legal heirs to

the Estate of Henry Lee Sims, Sr., on file herein as follows:

### GENERAL ALLEGATIONS

1.     In response to Paragraph 1, KMA is without sufficient information to admit

or deny the allegations contained therein.  Therefore, KMA denies the allegations in

Paragraph 1.

2.     KMA is without sufficient information to admit or deny the allegations in

Paragraph 2 of Plaintiffs' First Amended Complaint and therefore denies same.

3.     KMA is without sufficient information to admit or deny the allegations in

Paragraph 3 of Plaintiffs' First Amended Complaint and therefore denies same.

**Exhibit F-53**

4.     KMA is without sufficient information to admit or deny the allegations in Paragraph 4 of Plaintiffs' First Amended Complaint and therefore denies same.

5.     KMA is without sufficient information to admit or deny the allegations in Paragraph 5 of Plaintiffs' First Amended Complaint and therefore denies same.

6.     KMA is without sufficient information to admit or deny the allegations in Paragraph 6 of Plaintiffs' First Amended Complaint and therefore denies same.

7.     KMA is without sufficient information to admit or deny the allegations in Paragraph 7 of Plaintiffs' First Amended Complaint and therefore denies same.

8.     KMA is without sufficient information to admit or deny the allegations in Paragraph 8 of Plaintiffs' First Amended Complaint and therefore denies same.

9.     KMA is without sufficient information to admit or deny the allegations in Paragraph 9 of Plaintiffs' First Amended Complaint and therefore denies same.

10.     KMA is without sufficient information to admit or deny the allegations in Paragraph 10 of Plaintiffs' First Amended Complaint and therefore denies same.

11.     To the extent the allegations in Paragraph 11 state a legal conclusion, no response is required.

12.     In response to Paragraph 12, KMA admits that it is a corporation with its principal place of business in Irvine, California.  KMA further admits that it markets and distributes certain Kia brand motor vehicles, including the 2010 Kia Soul model, through more than 765 authorized independent dealers in the United States.  KMA also admits that Kia Motors Corporation ("KMC") is located in Seoul, South Korea.

13.     In response to Paragraph 13, KMA denies the allegation but admits that it may be personally served at 111 Peters Canyon Road, Irvine, California 92606.

Exhibit F-54

14. In response to Paragraph 14 of Plaintiffs' First Amended Complaint, KMA admits that it is a subsidiary of KMC. KMA states that the remaining allegations in Paragraph 14 do not pertain to KMA nor require a response from it. To the extent an answer is required, KMA denies the remaining allegations of Paragraph 14.

15. KMA states that the allegations in Paragraph 15 do not pertain to KMA nor require a response from it. To the extent an answer is required, KMA denies the allegations of Paragraph 15.

16. In response to Paragraph 16, KMA admits that there is diversity of citizenship between the parties and that Plaintiffs seek more than $75,000 in damages. KMA denies that it is responsible for any damages sustained by Plaintiffs.

17. The allegations in Paragraph 17 regarding the sufficiency of KMA's contacts with this State necessary to support jurisdiction is a conclusion of law to which no response is required of KMA. To the extent a response is required, KMA admits that it voluntarily submitted to the jurisdiction of this Court by seeking transfer of the above-captioned action from the U.S. District Court for the Central District of California. KMA further states that to the extent the allegations in Paragraph 17 do not pertain to KMA, no response is required from it. To the extent an answer is required, KMA denies the allegations of Paragraph 17.

18. KMA is without sufficient information to admit or deny the allegations in Paragraph 18 of Plaintiffs' First Amended Complaint and therefore denies same.

19. KMA admits that it previously requested that this action be transferred to this forum. KMA is without sufficient information to admit or deny the remaining allegations in Paragraph 19 of the First Amended Complaint and therefore denies same.

20.    KMA admits that this action was originally filed in the United States District Court for the Central District of California.   However, KMA specifically denies that California law applies to this lawsuit.   KMA states that, to the extent the allegations in Paragraph 20 do not pertain to KMA, no response is required from it.   To the extent an answer is required, KMA denies the allegations of Paragraph 20.   KMA further specifically denies the remaining allegations in Paragraph 20 of Plaintiffs' First Amended Complaint.

21.    In response to Paragraph 21, KMA denies the allegations.   Specifically, KMA denies that it has a design studio in California.   KMA also denies that it previously employed or now employs Tom Kearns.    KMA further denies that it designed, manufactured, developmentally tested, undertook FMVSS compliance testing, or assembled the 2010 Kia Soul model and its component parts, including the subject 2010 Kia Soul.   KMA denies that it made any decisions that impacted crashworthiness, vehicle fuel system design, vehicle fuel system integrity, choice of materials, vehicle engineering development, or testing pertaining to the 2010 Kia Soul model and its component parts, including the subject 2010 Kia Soul.

22.    KMA specifically denies the allegations in Paragraph 22 of Plaintiffs' First Amended Complaint.

23.    KMA denies that it designed, manufactured, developmentally tested, undertook FMVSS compliance testing, or assembled the 2010 Kia Soul model and its component parts, including the subject 2010 Kia Soul.   KMA denies that it made any decisions that impacted crashworthiness, vehicle fuel system design, vehicle fuel system integrity, choice of materials, vehicle engineering development, or testing

Exhibit F-56

pertaining to the 2010 Kia Soul model and its component parts, including the subject 2010 Kia Soul. Consequently, KMA is without sufficient information to admit or deny the allegations in Paragraph 23 of Plaintiffs' First Amended Complaint and therefore denies same. KMA further specifically denies the allegations in Paragraph 23 of Plaintiffs' First Amended Complaint to the extent Plaintiffs suggest the vehicle at issue is unreasonably dangerous or defective.

24.     KMA denies that it designed, manufactured, developmentally tested, undertook FMVSS compliance testing, or assembled the 2010 Kia Soul model and its component parts, including the subject 2010 Kia Soul. KMA denies that it made any decisions that impacted crashworthiness, vehicle fuel system design, vehicle fuel system integrity, choice of materials, vehicle engineering development, or testing pertaining to the 2010 Kia Soul model and its component parts, including the subject 2010 Kia Soul. KMA is without sufficient information to admit or deny the allegations in Paragraph 24 of Plaintiffs' First Amended Complaint and therefore denies same. KMA specifically denies the allegations in Paragraph 24 of Plaintiffs' First Amended Complaint to the extent Plaintiffs suggest the vehicle at issue is unreasonably dangerous or defective.

25.     KMA denies that it designed, manufactured, developmentally tested, undertook FMVSS compliance testing, or assembled the 2010 Kia Soul model and its component parts, including the subject 2010 Kia Soul. KMA denies that it made any decisions that impacted crashworthiness, vehicle fuel system design, vehicle fuel system integrity, choice of materials, vehicle engineering development, or testing pertaining to the 2010 Kia Soul model and its component parts, including the subject

2010 Kia Soul. KMA is without sufficient information to admit or deny the allegations in Paragraph 25 of Plaintiffs' First Amended Complaint and therefore denies same. KMA further specifically denies the allegations in Paragraph 25 of Plaintiffs' First Amended Complaint to the extent Plaintiffs suggest the vehicle at issue is unreasonably dangerous or defective.

26.     KMA denies that it designed, manufactured, developmentally tested, undertook FMVSS compliance testing, or assembled the 2010 Kia Soul model and its component parts, including the subject 2010 Kia Soul. KMA denies that it made any decisions that impacted crashworthiness, vehicle fuel system design, vehicle fuel system integrity, choice of materials, vehicle engineering development, or testing pertaining to the 2010 Kia Soul model and its component parts, including the subject 2010 Kia Soul. KMA is without sufficient information to admit or deny the allegations in Paragraph 26 of Plaintiffs' First Amended Complaint and therefore denies same. KMA further specifically denies the allegations in Paragraph 26 of Plaintiffs' First Amended Complaint to the extent Plaintiffs suggest the vehicle at issue is unreasonably dangerous or defective.

27.     KMA denies that it designed, manufactured, developmentally tested, undertook FMVSS compliance testing, or assembled the 2010 Kia Soul model and its component parts, including the subject 2010 Kia Soul. KMA denies that it made any decisions that impacted crashworthiness, vehicle fuel system design, vehicle fuel system integrity, choice of materials, vehicle engineering development, or testing pertaining to the 2010 Kia Soul model and its component parts, including the subject 2010 Kia Soul. KMA is without sufficient information to admit or deny the allegations in

Paragraph 27 of Plaintiffs' First Amended Complaint and therefore denies same. KMA further specifically denies the allegations in Paragraph 27 of Plaintiffs' First Amended Complaint to the extent Plaintiffs suggest the vehicle at issue is unreasonably dangerous or defective.

28. KMA denies that it designed, manufactured, developmentally tested, undertook FMVSS compliance testing, or assembled the 2010 Kia Soul model and its component parts, including the subject 2010 Kia Soul. KMA denies that it made any decisions that impacted crashworthiness, vehicle fuel system design, vehicle fuel system integrity, choice of materials, vehicle engineering development, or testing pertaining to the 2010 Kia Soul model and its component parts, including the subject 2010 Kia Soul. KMA is without sufficient information to admit or deny the allegations in Paragraph 28 of Plaintiffs' First Amended Complaint and therefore denies same. KMA further specifically denies the allegations in Paragraph 28 of Plaintiffs' First Amended Complaint to the extent Plaintiffs suggest the vehicle at issue is unreasonably dangerous or defective.

29. KMA denies that it designed, manufactured, developmentally tested, undertook FMVSS compliance testing, or assembled the 2010 Kia Soul model and its component parts, including the subject 2010 Kia Soul. KMA denies that it made any decisions that impacted crashworthiness, vehicle fuel system design, vehicle fuel system integrity, choice of materials, vehicle engineering development, or testing pertaining to the 2010 Kia Soul model and its component parts, including the subject 2010 Kia Soul. KMA is without sufficient information to admit or deny the allegations in Paragraph 29 of Plaintiffs' First Amended Complaint and therefore denies same. KMA

Exhibit F-59

further specifically denies the allegations in Paragraph 29 of Plaintiffs' First Amended Complaint to the extent Plaintiffs suggest wrongdoing by KMA or that the vehicle at issue is unreasonably dangerous or defective.

30.     KMA denies that it designed, manufactured, developmentally tested, undertook FMVSS compliance testing, or assembled the 2010 Kia Soul model and its component parts, including the subject 2010 Kia Soul. KMA denies that it made any decisions that impacted crashworthiness, vehicle fuel system design, vehicle fuel system integrity, choice of materials, vehicle engineering development, or testing pertaining to the 2010 Kia Soul model and its component parts, including the subject 2010 Kia Soul. KMA is without sufficient information to admit or deny the allegations in Paragraph 30 of Plaintiffs' First Amended Complaint and therefore denies same. KMA further specifically denies the allegations in Paragraph 30 of Plaintiffs' First Amended Complaint to the extent Plaintiffs suggest the vehicle at issue is unreasonably dangerous or defective.

31.     KMA denies that it designed, manufactured, developmentally tested, undertook FMVSS compliance testing, or assembled the 2010 Kia Soul model and its component parts, including the subject 2010 Kia Soul. KMA denies that it made any decisions that impacted crashworthiness, vehicle fuel system design, vehicle fuel system integrity, choice of materials, vehicle engineering development, or testing pertaining to the 2010 Kia Soul model and its component parts, including the subject 2010 Kia Soul. KMA is without sufficient information to admit or deny the allegations in Paragraph 31 of Plaintiffs' First Amended Complaint and therefore denies same. KMA further specifically denies the allegations in Paragraph 31 of Plaintiffs' First Amended

Complaint to the extent Plaintiffs suggest the vehicle at issue is unreasonably dangerous or defective.

32.     KMA denies that it designed, manufactured, developmentally tested, undertook FMVSS compliance testing, or assembled the 2010 Kia Soul model and its component parts, including the subject 2010 Kia Soul.  KMA denies that it made any decisions that impacted crashworthiness, vehicle fuel system design, vehicle fuel system integrity, choice of materials, vehicle engineering development, or testing pertaining to the 2010 Kia Soul model and its component parts, including the subject 2010 Kia Soul.  KMA is without sufficient information to admit or deny the allegations in Paragraph 32 of Plaintiffs' First Amended Complaint and therefore denies same.  KMA further specifically denies the allegations in Paragraph 32 of Plaintiffs' First Amended Complaint to the extent Plaintiffs suggest the vehicle at issue is unreasonably dangerous or defective.

33.     KMA denies that it designed, manufactured, developmentally tested, undertook FMVSS compliance testing, or assembled the 2010 Kia Soul model and its component parts, including the subject 2010 Kia Soul.  KMA denies that it made any decisions that impacted crashworthiness, vehicle fuel system design, vehicle fuel system integrity, choice of materials, vehicle engineering development, or testing pertaining to the 2010 Kia Soul model and its component parts, including the subject 2010 Kia Soul.  KMA is without sufficient information to admit or deny the allegations in Paragraph 33 of Plaintiffs' First Amended Complaint and therefore denies same.  KMA further specifically denies the allegations in Paragraph 33 of Plaintiffs' First Amended

Complaint to the extent Plaintiffs suggest the vehicle at issue is unreasonably dangerous or defective.

34.     KMA denies that it designed, manufactured, developmentally tested, undertook FMVSS compliance testing, or assembled the 2010 Kia Soul model and its component parts, including the subject 2010 Kia Soul. KMA denies that it made any decisions that impacted crashworthiness, vehicle fuel system design, vehicle fuel system integrity, choice of materials, vehicle engineering development, or testing pertaining to the 2010 Kia Soul model and its component parts, including the subject 2010 Kia Soul. KMA is without sufficient information to admit or deny the allegations in Paragraph 34 of Plaintiffs' First Amended Complaint and therefore denies same. KMA further specifically denies the allegations in Paragraph 34 of Plaintiffs' First Amended Complaint to the extent Plaintiffs suggest the vehicle at issue is unreasonably dangerous or defective.

35.     KMA denies that it issued the unrelated recall described in Paragraph 35 of Plaintiffs' First Amended Complaint. KMA is without sufficient information to admit or deny the remaining allegations in Paragraph 35 of Plaintiffs' First Amended Complaint and therefore denies same.     KMA further specifically denies the allegations in Paragraph 35 of Plaintiffs' First Amended Complaint to the extent Plaintiffs suggest the vehicle at issue is unreasonably dangerous or defective.

36.     KMA denies that it designed, manufactured, developmentally tested, undertook FMVSS compliance testing, or assembled the 2010 Kia Soul model and its component parts, including the subject 2010 Kia Soul. KMA denies that it made any decisions that impacted crashworthiness, vehicle fuel system design, vehicle fuel

system integrity, choice of materials, vehicle engineering development, or testing pertaining to the 2010 Kia Soul model and its component parts, including the subject 2010 Kia Soul. KMA is without sufficient information to admit or deny the allegations in Paragraph 36 of Plaintiffs' First Amended Complaint and therefore denies same. KMA further specifically denies the allegations in Paragraph 36 of Plaintiffs' First Amended Complaint to the extent Plaintiffs suggest the vehicle at issue is unreasonably dangerous or defective.

37.    KMA denies that it designed, manufactured, developmentally tested, undertook FMVSS compliance testing, or assembled the 2010 Kia Soul model and its component parts, including the subject 2010 Kia Soul. KMA denies that it made any decisions that impacted crashworthiness, vehicle fuel system design, vehicle fuel system integrity, choice of materials, vehicle engineering development, or testing pertaining to the 2010 Kia Soul model and its component parts, including the subject 2010 Kia Soul. KMA is without sufficient information to admit or deny the allegations in Paragraph 37 of Plaintiffs' First Amended Complaint and therefore denies same. KMA further specifically denies the allegations in Paragraph 37 of Plaintiffs' First Amended Complaint to the extent Plaintiffs suggest the vehicle at issue is unreasonably dangerous or defective.

38.    KMA denies that it designed, manufactured, developmentally tested, undertook FMVSS compliance testing, or assembled the 2010 Kia Soul model and its component parts, including the subject 2010 Kia Soul. KMA denies that it made any decisions that impacted crashworthiness, vehicle fuel system design, vehicle fuel system integrity, choice of materials, vehicle engineering development, or testing

pertaining to the 2010 Kia Soul model and its component parts, including the subject 2010 Kia Soul. KMA is without sufficient information to admit or deny the allegations in Paragraph 38 of Plaintiffs' First Amended Complaint and therefore denies same. KMA further specifically denies the allegations in Paragraph 38 of Plaintiffs' First Amended Complaint to the extent Plaintiffs suggest the vehicle at issue is unreasonably dangerous or defective.

39.     KMA denies that it designed, manufactured, developmentally tested, undertook FMVSS compliance testing, or assembled the 2010 Kia Soul model and its component parts, including the subject 2010 Kia Soul. KMA denies that it made any decisions that impacted crashworthiness, vehicle fuel system design, vehicle fuel system integrity, choice of materials, vehicle engineering development, or testing pertaining to the 2010 Kia Soul model and its component parts, including the subject 2010 Kia Soul. KMA is without sufficient information to admit or deny the allegations in Paragraph 39 of Plaintiffs' First Amended Complaint and therefore denies same. KMA further specifically denies the allegations in Paragraph 39 of Plaintiffs' First Amended Complaint to the extent Plaintiffs suggest the vehicle at issue is unreasonably dangerous or defective.

40.     KMA denies that it designed, manufactured, developmentally tested, undertook FMVSS compliance testing, or assembled the 2010 Kia Soul model and its component parts, including the subject 2010 Kia Soul. KMA denies that it made any decisions that impacted crashworthiness, vehicle fuel system design, vehicle fuel system integrity, choice of materials, vehicle engineering development, or testing pertaining to the 2010 Kia Soul model and its component parts, including the subject

2010 Kia Soul. KMA is without sufficient information to admit or deny the allegations in Paragraph 40 of Plaintiffs' First Amended Complaint and therefore denies same. KMA further specifically denies the allegations in Paragraph 40 of Plaintiffs' First Amended Complaint to the extent Plaintiffs suggest the vehicle at issue is unreasonably dangerous or defective.

41.     In response to Paragraph 41, KMA admits that it described the Kia Soul as a Top Safety Pick with advanced safety systems, with safety awards from IIHS and NHTSA for added peace of mind.

42.     In response to Paragraph 42, KMA admits that it described the Kia Soul as a "2012 Top Safety Pick Insurance Institute for Highway Safety" and that its safety awards provided "added peace of mind."

43.     KMA specifically denies the allegations in Paragraph 43 of Plaintiffs' First Amended Complaint. KMA further specifically denies the allegations in Paragraph 43 of Plaintiffs' First Amended Complaint to the extent Plaintiffs suggest wrongdoing by KMA or a defect in the vehicle at issue.

44.     KMA specifically denies the allegations in Paragraph 44 of Plaintiffs' First Amended Complaint. KMA further specifically denies the allegations in Paragraph 44 of Plaintiffs' First Amended Complaint to the extent Plaintiffs suggest wrongdoing by KMA or a defect in the vehicle at issue.

45.     KMA is without sufficient information to admit or deny the allegations in Paragraph 45 of Plaintiffs' First Amended Complaint and therefore denies same. KMA specifically denies the allegations in Paragraph 45 of Plaintiffs' First Amended

Exhibit F-65

Complaint to the extent Plaintiffs suggest wrongdoing by KMA or a defect in the vehicle at issue.

46.     KMA specifically denies the allegations in Paragraph 46 of Plaintiffs' First Amended Complaint to the extent Plaintiffs suggest wrongdoing by KMA or a defect in the vehicle at issue.

47.     KMA is without sufficient information to admit or deny the allegations in Paragraph 47 of Plaintiffs' First Amended Complaint and therefore denies same.

48.     KMA is without sufficient information to admit or deny the allegations in Paragraph 48 of Plaintiffs' First Amended Complaint and therefore denies same.

49.     KMA is without sufficient information to admit or deny the allegations in Paragraph 49 of Plaintiffs' First Amended Complaint and therefore denies same.

50.     KMA is without sufficient information to admit or deny the allegations in Paragraph 50 of Plaintiffs' First Amended Complaint and therefore denies same.

### CAUSES OF ACTION – PRODUCTS LIABILITY

51.     In response to Paragraph 51, KMA admits that it marketed the 2010 Kia Soul model in the United States. KMA denies that it designed, manufactured, developmentally tested, undertook FMVSS compliance testing, or assembled the 2010 Kia Soul model and its component parts, including the subject 2010 Kia Soul. KMA denies that it made any decisions that impacted crashworthiness, vehicle fuel system design, vehicle fuel system integrity, choice of materials, vehicle engineering development, or testing pertaining to the 2010 Kia Soul model and its component parts, including the subject 2010 Kia Soul. Therefore, KMA denies the remaining allegations in Paragraph 51 of Plaintiffs' First Amended Complaint.

Complaint to the extent Plaintiffs suggest wrongdoing by KMA or a defect in the vehicle at issue.

46.    KMA specifically denies the allegations in Paragraph 46 of Plaintiffs' First Amended Complaint to the extent Plaintiffs suggest wrongdoing by KMA or a defect in the vehicle at issue.

47.    KMA is without sufficient information to admit or deny the allegations in Paragraph 47 of Plaintiffs' First Amended Complaint and therefore denies same.

48.    KMA is without sufficient information to admit or deny the allegations in Paragraph 48 of Plaintiffs' First Amended Complaint and therefore denies same.

49.    KMA is without sufficient information to admit or deny the allegations in Paragraph 49 of Plaintiffs' First Amended Complaint and therefore denies same.

50.    KMA is without sufficient information to admit or deny the allegations in Paragraph 50 of Plaintiffs' First Amended Complaint and therefore denies same.

### CAUSES OF ACTION – PRODUCTS LIABILITY

51.    In response to Paragraph 51, KMA admits that it marketed the 2010 Kia Soul model in the United States. KMA denies that it designed, manufactured, developmentally tested, undertook FMVSS compliance testing, or assembled the 2010 Kia Soul model and its component parts, including the subject 2010 Kia Soul. KMA denies that it made any decisions that impacted crashworthiness, vehicle fuel system design, vehicle fuel system integrity, choice of materials, vehicle engineering development, or testing pertaining to the 2010 Kia Soul model and its component parts, including the subject 2010 Kia Soul. Therefore, KMA denies the remaining allegations in Paragraph 51 of Plaintiffs' First Amended Complaint.

52.    In response to Paragraph 52, KMA denies that it distributed the subject 2010 Kia Soul for initial retail sale in California.

53.    In response to Paragraph 53, KMA denies the allegations.

54.    KMA denies that it designed, manufactured, developmentally tested, undertook FMVSS compliance testing, or assembled the 2010 Kia Soul model and its component parts, including the subject 2010 Kia Soul.  KMA denies that it made any decisions that impacted crashworthiness, vehicle fuel system design, vehicle fuel system integrity, choice of materials, vehicle engineering development, or testing pertaining to the 2010 Kia Soul model and its component parts, including the subject 2010 Kia Soul.  However, KMA specifically denies the allegations in Paragraph 54 of Plaintiffs' First Amended Complaint to the extent Plaintiffs suggest the vehicle at issue is unreasonably dangerous or defective.  To the extent the allegations in Paragraph 54 call for the legal conclusion that KMA owes a duty to Plaintiffs, no response is required. To the extent a response is required, KMA denies the allegations.  KMA specifically denies the remaining allegations in Paragraph 54 of Plaintiffs' First Amended Complaint.

55.    KMA specifically denies the allegations in Paragraph 55 of Plaintiffs' First Amended Complaint.  KMA further specifically denies the allegations in Paragraph 55 of Plaintiffs' First Amended Complaint to the extent Plaintiffs suggest wrongdoing by KMA or a defect in the vehicle at issue.

56.    In response to Paragraph 56, KMA denies the allegations.

57.    In response to Paragraph 57, KMA denies the allegations

58.    In response to Paragraph 58, KMA denies the allegations.

59.    In response to Paragraph 59, KMA denies the allegations.

## CAUSES OF ACTION – NEGLIGENCE

60. In response to Paragraph 60, KMA admits that it marketed the 2010 Kia Soul model, including the subject 2010 Kia Soul, in the United States. KMA denies that it designed, manufactured, developmentally tested, undertook FMVSS compliance testing, or assembled the 2010 Kia Soul model and its component parts, including the subject 2010 Kia Soul. KMA denies that it made any decisions that impacted crashworthiness, vehicle fuel system design, vehicle fuel system integrity, choice of materials, vehicle engineering development, or testing pertaining to the 2010 Kia Soul model and its component parts, including the subject 2010 Kia Soul. Therefore, KMA denies the remaining allegations in Paragraph 60 of Plaintiffs' First Amended Complaint.

61. In response to Paragraph 61, KMA admits that it marketed the 2010 Kia Soul model, including the subject 2010 Kia Soul, in the United States. KMA specifically denies that it designed, manufactured, developmentally tested, undertook FMVSS compliance testing, or assembled the 2010 Kia Soul model and its component parts, including the subject 2010 Kia Soul. KMA denies that it made any decisions that impacted crashworthiness, vehicle fuel system design, vehicle fuel system integrity, choice of materials, vehicle engineering development, or testing pertaining to the 2010 Kia Soul model and its component parts, including the subject 2010 Kia Soul. Therefore, KMA denies the remaining allegations in Paragraph 61 of Plaintiffs' First Amended Complaint.

62. In response to Paragraph 62, KMA denies the allegations.

63. In response to Paragraph 63, KMA denies the allegations.

64. In response to Paragraph 64 and its subparts, KMA denies the allegations. KMA specifically denies that it designed, manufactured, developmentally tested,

Exhibit F-68

undertook FMVSS compliance testing, or assembled the 2010 Kia Soul model and its component parts, including the subject 2010 Kia Soul. KMA denies that it made any decisions that impacted crashworthiness, vehicle fuel system design, vehicle fuel system integrity, choice of materials, vehicle engineering development, or testing pertaining to the 2010 Kia Soul model and its component parts, including the subject 2010 Kia Soul. Therefore, KMA denies the remaining allegations in Paragraph 64 of Plaintiffs' First Amended Complaint.

65. KMA specifically denies the allegations in Paragraph 65 of Plaintiffs' First Amended Complaint.

## CAUSES OF ACTION – IMPLIED WARRANTY OF MERCHANTABILITY

66. KMA specifically denies that California law applies to this lawsuit. KMA further specifically denies the remaining allegations in Paragraph 66 of Plaintiffs' First Amended Complaint.

67. KMA admits that it provided a written limited warranty applicable to the subject 2010 Kia Soul. KMA denies the remaining allegations in Paragraph 67 of Plaintiffs' First Amended Complaint.

68. In response to Paragraph 68, KMA denies the allegations.

69. In response to Paragraph 69, KMA denies the allegations.

70. In response to Paragraph 70, KMA denies the allegations.

71. In response to Paragraph 71, KMA denies the allegations.

72. In response to Paragraph 72, KMA denies the allegations.

## CAUSES OF ACTION – WRONGFUL DEATH

73. In response to Paragraph 73, KMA denies the allegations.

74.     In response to Paragraph 74, KMA denies that Plaintiffs are entitled to any relief or recovery from KMA in any amount or manner.

75.     In response to Paragraph 75, KMA denies that Plaintiffs are entitled to any relief or recovery from KMA in any amount or manner.

## CAUSES OF ACTION – SURVIVAL

76.     KMA specifically denies the allegations in Paragraph 76 of Plaintiffs' First Amended Complaint.

77.     KMA is without sufficient information to admit or deny the allegations in Paragraph 77 of Plaintiffs' First Amended Complaint and therefore denies same. KMA further denies that Henry Sims, Sr. was and/or Plaintiffs are entitled to any relief or recovery from KMA in any amount or manner.

78.     In response to Paragraph 78, KMA denies that Henry Sims, Sr. was and/or Plaintiffs are entitled to any relief or recovery from KMA in any amount or manner.

## PRAYER FOR RELIEF

79.     KMA specifically denies Plaintiffs are entitled to recover judgment from KMA for any damages, relief, or recovery, pre-judgment interest, post-judgment interest, costs of suit, and/or any further relief as alleged in the Prayer of Plaintiffs' First Amended Complaint.

## DEFENSES

80.     Plaintiffs' injuries and damages were caused in whole or in part by the negligence of persons, entities, and/or other persons or third parties, including but not limited to Kevin Davis and Beverly Fuller, over whom KMA had no control, who failed to use that degree of care and caution as would have been used by a reasonably prudent

Exhibit F-70

person under the same or similar circumstances, thereby producing or proximately causing or contributing to Plaintiffs' alleged damages or injuries. Such acts or omissions of Kevin Davis, Beverly Fuller, and/or other persons, third parties, or other then-existing circumstances, were the proximate cause, producing cause, sole proximate cause, or sole producing cause of the subject accident and any alleged resulting injuries or damages. KMA is therefore entitled to have the Court and jury apply the doctrine of comparative apportionment of responsibility.

81. This action is subject to the proportionate responsibility provisions of Chapter 33 of the Texas Civil Practice and Remedies Code, including (without limitation) the requirement of § 33.003 thereof that the trier of fact determine the relative responsibility of each plaintiff, defendant, settling person, and responsible third party that may be joined in the suit. Plaintiffs' recovery, if any, from KMA should be reduced by the comparative negligence, fault, responsibility, or causation attributable to Plaintiffs, to other defendants, to settling persons and/or responsible third parties, such as Kevin Davis or Beverly Fuller.

82. In the unlikely event an adverse judgment is rendered against KMA in this matter, KMA requests contribution and/or all available credits and offsets as provided for under the Texas Civil Practice and Remedies Code and other applicable law.

83. The imposition of joint and several liability on KMA is unconstitutional and violates the provisions of the United States Constitution and the Texas Constitution, including but not limited to KMA's right to due process and equal protection of the law.

84. KMA asserts the defense of rebuttable presumption against liability pursuant to Chapter 82 of the Texas Civil Practice and Remedies Code as the design,

Exhibit F-71

manufacture, and marketing of the subject vehicle fully complied with mandatory safety standards, industry standards, and government standards, including, but not limited to the Federal Motor Vehicle Safety Standards in effect at the time the subject vehicle was designed, manufactured, and marketed.

85.     The vehicle at issue complied with all applicable Federal Motor Vehicle Safety Standards. Accordingly, Plaintiffs' claims may be barred, in whole or in part, by the doctrine of federal preemption.

86.     KMA denies that Plaintiffs performed all the conditions precedent to a right of recovery, and in particular, KMA denies that Plaintiffs gave it any notice of breach related to Plaintiffs' breach of implied warranty claims.   Tex. Bus. & Com. Code §§ 2.607(c)(1), 2A.516(c)(1).

87.     KMA states that in the unlikely event Plaintiffs recover any damages for past medical expenses in this case, Plaintiffs' recovery of past medical expenses should be limited to those amounts actually paid or incurred by or on behalf of Plaintiff pursuant to § 41.0105 of the Texas Civil Practice and Remedies Code and under Texas law.

88.     KMA invokes § 18.091 of the Texas Civil Practice and Remedies Code and requests that to the extent that Plaintiffs seek recovery for loss of earning capacity, loss of contributions of a pecuniary value, or a loss of inheritance that the evidence to prove such loss must be present in the form of a net loss after reduction for income tax payments or unpaid tax liability.   Defendant further requests that the Court instruct the jury as to whether any recovery for compensatory damages sought by Plaintiffs is subject to federal income taxes.

89.  KMA reserves the right to amend this Answer to assert additional defenses, affirmative or otherwise, to supplement or amend this pleading, and to assert third-party claims, all as may be required upon the completion of reasonable discovery and investigation, in the manner authorized by the Texas Rules of Civil Procedure.

## JURY DEMAND

90.  KMA respectfully requests a jury be empanelled to try the facts and issues of this case.

## REQUEST FOR RELIEF

WHEREFORE PREMISES CONSIDERED, Kia Motors America, Inc. respectfully requests that the Court deny all relief requested by Plaintiffs in this matter and enter judgment on its behalf and award costs in its favor and for any other relief to which it is justly entitled, either at law or in equity.

Respectfully submitted,

**KURT C. KERN – Lead Counsel**
State Bar No. 11334600
kurt.kern@bowmanandbrooke.com
**CARY A. SLOBIN**
State Bar No. 00797445
cary.slobin@bowmanandbrooke.com
**TANYA B. SCARBROUGH**
State Bar No. 24049268
tanya.scarbrough@bowmanandbrooke.com

**BOWMAN AND BROOKE LLP**
2501 N. Harwood Street, Suite 1700
Dallas, TX 75201
Telephone: 972.616.1700
Telecopier: 972.616.1701

**ATTORNEYS FOR DEFENDANT
KIA MOTORS AMERICA, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded to all known counsel of record in this cause in accordance with the Federal Rules of Civil Procedure on this 17th day of April, 2014.



FILED
U.S. DISTRICT COURT
NORTHERN DIST. OF TX
FT. WORTH DIVISION

ORIGINAL

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS 2014 APR 17 PM 4: 09
### FORT WORTH DIVISION

CLERK OF COURT

| | | |
|---|---|---|
| HENRY LEE SIMS, JR., et al | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CASE NO. 4:14-cv-00045-A |
| | § | |
| KIA MOTORS AMERICA, INC., and | § | |
| KIA MOTORS CORPORATION | § | |
| | § | |
| Defendants. | § | |

## KIA MOTORS CORPORATION'S ORIGINAL
## ANSWER TO PLAINTIFFS' FIRST AMENDED COMPLAINT

Kia Motors Corporation (hereinafter "KMC"), for itself alone, answers the First

Amended Complaint of Plaintiffs Henry Lee Sims, Jr., Timothy Everett Sims, Willie Earl

Sims, Shamika Rae Sims, Kathlyn Lenetta Sims, Brence Eric Sims, Michael Andre

Sims, Sarah Denise Sims, and Pamela Rachael Sims, individually and as legal heirs to

the Estate of Henry Lee Sims, Sr., on file herein as follows:

### GENERAL ALLEGATIONS

1.	In response to Paragraph 1, KMC is without sufficient information to admit

or deny the allegations contained therein. Therefore, KMC denies the allegations in

Paragraph 1.

2.	KMC is without sufficient information to admit or deny the allegations in

Paragraph 2 of Plaintiffs' First Amended Complaint and therefore denies same.

3.	KMC is without sufficient information to admit or deny the allegations in

Paragraph 3 of Plaintiffs' First Amended Complaint and therefore denies same.

4.	KMC is without sufficient information to admit or deny the allegations in

Paragraph 4 of Plaintiffs' First Amended Complaint and therefore denies same.

5.      KMC is without sufficient information to admit or deny the allegations in Paragraph 5 of Plaintiffs' First Amended Complaint and therefore denies same.

6.      KMC is without sufficient information to admit or deny the allegations in Paragraph 6 of Plaintiffs' First Amended Complaint and therefore denies same.

7.      KMC is without sufficient information to admit or deny the allegations in Paragraph 7 of Plaintiffs' First Amended Complaint and therefore denies same.

8.      KMC is without sufficient information to admit or deny the allegations in Paragraph 8 of Plaintiffs' First Amended Complaint and therefore denies same.

9.      KMC is without sufficient information to admit or deny the allegations in Paragraph 9 of Plaintiffs' First Amended Complaint and therefore denies same.

10.     KMC is without sufficient information to admit or deny the allegations in Paragraph 10 of Plaintiffs' First Amended Complaint and therefore denies same.

11.     To the extent the allegations in Paragraph 11 state a legal conclusion, no response is required.

12.     KMC admits that Kia Motors America, Inc. ("KMA") imports to the United States and then distributes for further sale certain Kia brand vehicles, including the subject 2010 Kia Soul. KMC states that the remaining allegations in Paragraph 12 do not pertain to KMC nor require a response from it. To the extent an answer is required, KMC denies the remaining allegations of Paragraph 12.

13.     KMC states that the allegations in Paragraph 13 do not pertain to KMC nor require a response from it. To the extent an answer is required, KMC denies the allegations of Paragraph 13.

14. In response to Paragraph 14 of Plaintiffs' First Amended Complaint, KMC admits only that it is a foreign corporation existing under the laws of the Republic of Korea, with its principal place of business in Seoul, South Korea; that it designs, manufactures, tests, and assembles certain Kia motor vehicles; and that KMA is a wholly owned subsidiary of KMC. To the extent an answer is required, KMC denies the remaining allegations of Paragraph 14.

15. The allegation in Paragraph 15 of Plaintiffs' First Amended Complaint regarding the propriety of serving KMC in the specified manner is a conclusion of law to which no response is required of KMC. To the extent a response is required, KMC specifically denies this allegation.

16. In response to Paragraph 16, KMC admits that there is diversity of citizenship between the parties and that Plaintiffs' pleadings seek more than $75,000 in damages. KMC denies that it is responsible for any damages sustained by Plaintiffs.

17. The allegations in Paragraph 17 regarding the sufficiency of KMC's contacts with this State necessary to support jurisdiction is a conclusion of law to which no response is required of KMC. To the extent a response is required, KMC specifically denies the allegations in Paragraph 17 of Plaintiffs' First Amended Complaint.

18. KMC is without sufficient information to admit or deny the allegations in Paragraph 18 of Plaintiffs' First Amended Complaint and therefore denies same.

19. KMC admits that KMA sought a transfer to this forum. KMC is without sufficient information to admit or deny the remaining allegations in Paragraph 19 of Plaintiffs' First Amended Complaint and therefore denies same.

20.    KMC admits that this action was originally filed in the United States District Court for the Central District of California.   However, KMC specifically denies that California law applies to this lawsuit.   KMC states that, to the extent the allegations in Paragraph 20 do not pertain to KMC, no response is required from it.   To the extent an answer is required, KMC denies the allegations of Paragraph 20.   KMC further specifically denies the remaining allegations in Paragraph 20 of Plaintiffs' First Amended Complaint.

21.    In response to Paragraph 21, KMC denies the allegations.   Specifically, KMC denies that KMC has a design studio in California.   KMC also denies that it previously employed or now employs Tom Kearns.   KMC denies that any design decisions that impacted crashworthiness, vehicle fuel system design, vehicle fuel system integrity, choice of materials, vehicle engineering development, or testing pertaining to the 2010 Kia Soul model and its component parts were made in California.

22.    KMC specifically denies the allegations in Paragraph 22 of Plaintiffs' First Amended Complaint.

23.    KMC admits that its vehicle designers and test engineers identify potential risks and further admits that the safety of vehicle occupants is a foremost and highly valued priority of all KMC employees and KMC does its utmost to honor its responsibilities to the public. There is no design or testing consideration more important than safety, and KMC designs and manufactures safe vehicles.   KMC specifically denies, however, that it is possible to eliminate all risk or to make a vehicle that will protect all occupants from all possible injuries in all types of motor vehicle crashes because there are almost limitless combinations of circumstances that can occur in

Exhibit G-78

crashes. To the extent the allegations in Paragraph 23 call for the legal conclusion that KMC owes a duty to Plaintiffs, no response is required. KMC specifically denies the remaining allegations in Paragraph 23 of Plaintiffs' First Amended Complaint. KMC further specifically denies the allegations in Paragraph 23 of Plaintiffs' First Amended Complaint to the extent Plaintiffs suggest the vehicle at issue is unreasonably dangerous or defective.

24.     KMC is without sufficient information to admit or deny the allegations in Paragraph 24 of Plaintiffs' First Amended Complaint and therefore denies same. KMC specifically denies the allegations in Paragraph 24 of Plaintiffs' First Amended Complaint to the extent Plaintiffs suggest the vehicle at issue is unreasonably dangerous or defective.

25.     KMC is without sufficient information to admit or deny the allegations in Paragraph 25 of Plaintiffs' First Amended Complaint and therefore denies same. KMC specifically denies the allegations in Paragraph 25 of Plaintiffs' First Amended Complaint to the extent Plaintiffs suggest the vehicle at issue is unreasonably dangerous or defective.

26.     KMC is without sufficient information to admit or deny the allegations in Paragraph 26 of Plaintiffs' First Amended Complaint and therefore denies same. KMC specifically denies the allegations in Paragraph 26 of Plaintiffs' First Amended Complaint to the extent Plaintiffs suggest the vehicle at issue is unreasonably dangerous or defective.

27.     KMC specifically denies the allegations in Paragraph 27 of Plaintiffs' First Amended Complaint.

Exhibit G-79

28.     KMC admits that its vehicle designers and test engineers identify potential
risks and further admits that the safety of vehicle occupants is a foremost and highly
valued priority of all KMC employees and KMC does its utmost to honor its
responsibilities to the public. There is no design or testing consideration more important
than safety, and KMC designs and manufactures safe vehicles. KMC specifically
denies, however, that it is possible to eliminate all risk or to make a vehicle that will
protect all occupants from all possible injuries in all types of motor vehicle crashes
because there are almost limitless combinations of circumstances that can occur in
crashes. KMC specifically denies the allegations in Paragraph 28 of Plaintiffs' First
Amended Complaint to the extent Plaintiffs suggest the vehicle at issue is unreasonably
dangerous or defective. KMC is without sufficient information to admit or deny the
remaining allegations in Paragraph 28 of Plaintiffs' First Amended Complaint and
therefore denies same.

29.     KMC specifically denies the allegations in Paragraph 29 of Plaintiffs' First
Amended Complaint. KMC further specifically denies the allegations in Paragraph 29 of
Plaintiffs' First Amended Complaint to the extent Plaintiffs suggest wrongdoing by KMC
or that the vehicle at issue is unreasonably dangerous or defective.

30.     KMC admits that the gas tank of the Kia Soul is located forward of the rear
axle and under the rear passenger seats. KMC specifically denies that the location of
the gas tank rendered the subject vehicle unreasonably dangerous or defective. KMC
further specifically denies the allegations in Paragraph 30 of Plaintiffs' First Amended
Complaint to the extent Plaintiffs suggest wrongdoing by KMC or a defect in the vehicle
at issue.

31.    KMC admits that its vehicle designers and test engineers identify potential risks and further admits that the safety of vehicle occupants is a foremost and highly valued priority of all KMC employees and KMC does its utmost to honor its responsibilities to the public.  There is no design or testing consideration more important than safety, and KMC designs and manufactures safe vehicles.  KMC specifically denies, however, that it is possible to eliminate all risk or to make a vehicle that will protect all occupants from all possible injuries in all types of motor vehicle crashes because there are almost limitless combinations of circumstances that can occur in crashes.  KMC further specifically denies the allegations in Paragraph 31 of Plaintiffs' First Amended Complaint to the extent Plaintiffs suggest wrongdoing by KMC or that the vehicle at issue is unreasonably dangerous or defective.

32.    KMC admits the 2010 Kia Soul used a fixed mount rather than straps to secure the fuel tank.  KMC admits other Kia vehicles used either a fixed mount or straps to secure the fuel tank.  KMC specifically denies the remaining allegations in Paragraph 32 of Plaintiffs' First Amended Complaint.  KMC further specifically denies the allegations in Paragraph 32 of Plaintiffs' First Amended Complaint to the extent Plaintiffs suggest wrongdoing by KMC or that the vehicle at issue is unreasonably dangerous or defective.

33.    KMC specifically denies the allegations in Paragraph 33 of Plaintiffs' First Amended Complaint.  KMC further specifically denies the allegations in Paragraph 33 of Plaintiffs' First Amended Complaint to the extent Plaintiffs suggest the vehicle at issue is unreasonably dangerous or defective.

34.    KMC specifically denies the allegations in Paragraph 34 of Plaintiffs' First Amended Complaint.  KMC further specifically denies the allegations in Paragraph 34 of Plaintiffs' First Amended Complaint to the extent Plaintiffs suggest the vehicle at issue is unreasonably dangerous or defective.

35.    KMC admits that it issued an unrelated recall regarding the Spectra purchased in certain states due to a possibility of corrosion of the fuel tank straps caused by road salt.  KMC admits the 2010 Kia Soul used a fixed mount rather than straps to secure the fuel tank.  KMC admits other Kia vehicles used either a fixed mount or straps to secure the fuel tank.   KMC specifically denies the remaining allegations in Paragraph 35 of Plaintiffs' First Amended Complaint.  KMC further specifically denies the allegations in Paragraph 35 of Plaintiffs' First Amended Complaint to the extent Plaintiffs suggest the vehicle at issue is unreasonably dangerous or defective.

36.    KMC admits that the fuel pump assembly cover is made of a composite resin.  KMC also admits that the fuel pump assembly cover is located underneath the rear seat cushion.  KMC denies that the location of the fuel pump assembly cover and the materials used to seal or cover the fuel pump assembly access rendered the subject vehicle defective or unreasonably dangerous.  KMC specifically denies the remaining allegations in Paragraph 36 of Plaintiffs' First Amended Complaint.   KMC further specifically denies the allegations in Paragraph 36 of Plaintiffs' First Amended Complaint to the extent Plaintiffs suggest the vehicle at issue is unreasonably dangerous or defective.

37.    KMC admits that the fuel pump assembly cover is made of a composite resin.  KMC also admits that the fuel pump assembly cover is located underneath the

Exhibit G-82

rear seat cushion. KMC denies that the location of the fuel pump assembly cover and the materials used to seal or cover the fuel pump assembly access rendered the subject vehicle defective or unreasonably dangerous. KMC specifically denies the remaining allegations in Paragraph 37 of Plaintiffs' First Amended Complaint. KMC further specifically denies the allegations in Paragraph 37 of Plaintiffs' First Amended Complaint to the extent Plaintiffs suggest the vehicle at issue is unreasonably dangerous or defective.

38.    KMC admits that the fuel tank assembly cover is located underneath the rear seat cushion. KMC specifically denies the allegations in Paragraph 38 of Plaintiffs' First Amended Complaint to the extent Plaintiffs suggest the vehicle at issue is unreasonably dangerous or defective.

39.    KMC specifically denies the allegations in Paragraph 39 of Plaintiffs' First Amended Complaint. KMC further specifically denies the allegations in Paragraph 39 of Plaintiffs' First Amended Complaint to the extent Plaintiffs suggest the vehicle at issue is unreasonably dangerous or defective.

40.    KMC specifically denies the allegations in Paragraph 40 of Plaintiffs' First Amended Complaint. KMC further specifically denies the allegations in Paragraph 40 of Plaintiffs' First Amended Complaint to the extent Plaintiffs suggest the vehicle at issue is unreasonably dangerous or defective.

41.    KMC is without sufficient information to admit or deny the allegations in Paragraph 41 of Plaintiffs' First Amended Complaint and therefore denies same.

42.    KMC is without sufficient information to admit or deny the allegations in Paragraph 42 of Plaintiffs' First Amended Complaint and therefore denies same.

43. KMC specifically denies the allegations in Paragraph 43 of Plaintiffs' First Amended Complaint. KMC further specifically denies the allegations in Paragraph 43 of Plaintiffs' First Amended Complaint to the extent Plaintiffs suggest wrongdoing by KMC or a defect in the vehicle at issue.

44. KMC specifically denies the allegations in Paragraph 44 of Plaintiffs' First Amended Complaint. KMC further specifically denies the allegations in Paragraph 44 of Plaintiffs' First Amended Complaint to the extent Plaintiffs suggest wrongdoing by KMC or a defect in the vehicle at issue.

45. KMC is without sufficient information to admit or deny the allegations in Paragraph 45 of Plaintiffs' First Amended Complaint and therefore denies same. KMC specifically denies the allegations in Paragraph 45 of Plaintiffs' First Amended Complaint to the extent Plaintiffs suggest wrongdoing by KMC or a defect in the vehicle at issue.

46. KMC specifically denies the allegations in Paragraph 46 of Plaintiffs' First Amended Complaint to the extent Plaintiffs suggest wrongdoing by KMC or a defect in the vehicle at issue. KMC has never disclosed "defects inherent in the Kia Soul's fuel system" because the fuel system is not defective.

47. KMC is without sufficient information to admit or deny the allegations in Paragraph 47 of Plaintiffs' First Amended Complaint and therefore denies same.

48. KMC is without sufficient information to admit or deny the allegations in Paragraph 48 of Plaintiffs' First Amended Complaint and therefore denies same.

49. KMC is without sufficient information to admit or deny the allegations in Paragraph 49 of Plaintiffs' First Amended Complaint and therefore denies same.

50.    KMC is without sufficient information to admit or deny the allegations in Paragraph 50 of Plaintiffs' First Amended Complaint and therefore denies same.

## CAUSES OF ACTION – STRICT PRODUCTS LIABILITY

51.    KMC admits it was involved in the design, manufacture, assembly, and testing of the Kia Soul. KMC specifically denies the remaining allegations regarding KMC in Paragraph 51 of Plaintiffs' First Amended Complaint.

52.    KMC specifically denies the allegations regarding KMC in Paragraph 52 of Plaintiffs' First Amended Complaint. KMC states that the remaining allegations in Paragraph 52 do not pertain to KMC nor require a response from it. To the extent an answer is required, KMC denies the remaining allegations of Paragraph 52.

53.    KMC specifically denies the allegations in Paragraph 53 of Plaintiffs' First Amended Complaint.

54.    KMC admits that its vehicle designers and test engineers identify potential risks and further admits that the safety of vehicle occupants is a foremost and highly valued priority of all KMC employees and KMC does its utmost to honor its responsibilities to the public. There is no design or testing consideration more important than safety, and KMC designs and manufactures safe vehicles. KMC specifically denies, however, that it is possible to eliminate all risk or to make a vehicle that will protect all occupants from all possible injuries in all types of motor vehicle crashes because there are almost limitless combinations of circumstances that can occur in crashes. KMC further specifically denies the allegations in Paragraph 54 of Plaintiffs' First Amended Complaint to the extent Plaintiffs suggest wrongdoing by KMC or a defect in the vehicle at issue. To the extent the allegations in Paragraph 54 call for the legal conclusion that KMC owes a duty to Plaintiffs, no response is required. To the

Exhibit G-85

extent a response is required, KMC denies the allegations. KMC specifically denies the remaining allegations in Paragraph 54 of Plaintiffs' First Amended Complaint.

55.    KMC specifically denies the allegations in Paragraph 55 of Plaintiffs' First Amended Complaint. KMC further specifically denies the allegations in Paragraph 55 of Plaintiffs' First Amended Complaint to the extent Plaintiffs suggest wrongdoing by KMC or a defect in the vehicle at issue.

56.    In response to Paragraph 56, KMC denies the allegations.

57.    In response to Paragraph 57, KMC denies the allegations.

58.    In response to Paragraph 58, KMC denies the allegations.

59.    In response to Paragraph 59, KMC denies the allegations.

CAUSES OF ACTION – NEGLIGENCE

60.    KMC admits it was involved in the design, manufacture, assembly, and testing of the subject Kia Soul. KMC specifically denies the remaining allegations regarding KMC in Paragraph 60 of Plaintiffs' First Amended Complaint.

61.    KMC admits that its vehicle designers and test engineers identify potential risks and further admits that the safety of vehicle occupants is a foremost and highly valued priority of all KMC employees and KMC does its utmost to honor its responsibilities to the public. There is no design or testing consideration more important than safety, and KMC designs and manufactures safe vehicles. KMC specifically denies, however, that it is possible to eliminate all risk or to make a vehicle that will protect all occupants from all possible injuries in all types of motor vehicle crashes because there are almost limitless combinations of circumstances that can occur in crashes. KMC further specifically denies the allegations in Paragraph 61 of Plaintiffs' First Amended Complaint to the extent Plaintiffs suggest wrongdoing by KMC or a

defect in the vehicle at issue.  To the extent the allegations in Paragraph 61 call for the legal conclusion that KMC owes a duty to Plaintiffs, no response is required.  To the extent a response is required, KMC denies the allegations.  KMC specifically denies the remaining allegations in Paragraph 61 of Plaintiffs' First Amended Complaint.

62.    KMC specifically denies the allegations in Paragraph 62 of Plaintiffs' First Amended Complaint.

63.    KMC specifically denies the allegations in Paragraph 63 of Plaintiffs' First Amended Complaint.

64.    KMC specifically denies the allegations in Paragraph 64, including the allegations in subsections a-d, of Plaintiffs' First Amended Complaint.  KMC further specifically denies the allegations in Paragraph 64, including the allegations in subsections a-d, of Plaintiffs' First Amended Complaint to the extent Plaintiffs suggest wrongdoing by KMC or a defect in the vehicle at issue.

65.    KMC specifically denies the allegations in Paragraph 65 of Plaintiffs' First Amended Complaint.

### CAUSES OF ACTION – IMPLIED WARRANTY OF MERCHANTABILITY

66.    KMC specifically denies that California law applies to this lawsuit.  KMC further specifically denies the remaining allegations regarding KMC in Paragraph 66 of Plaintiffs' First Amended Complaint.

67.    KMC specifically denies the allegations in Paragraph 67 of Plaintiffs' First Amended Complaint.  KMC states that the remaining allegations in Paragraph 67 do not pertain to KMC nor require a response from it.  To the extent an answer is required, KMC denies the remaining allegations of Paragraph 67.

68.    In response to Paragraph 68, KMC denies the allegations.

Exhibit G-87

69.    In response to Paragraph 69, KMC denies the allegations.

70.    In response to Paragraph 70, KMC denies the allegations.

71.    In response to Paragraph 71, KMC denies the allegations.

72.    In response to Paragraph 72, KMC denies the allegations.

## CAUSES OF ACTION – WRONGFUL DEATH

73.    KMC specifically denies the allegations in Paragraph 73 of Plaintiffs' First Amended Complaint.

74.    In response to Paragraph 74, KMC denies that Plaintiffs are entitled to any relief or recovery from KMC in any amount or manner.

75.    In response to Paragraph 75, KMC denies that Plaintiffs are entitled to any relief or recovery from KMC in any amount or manner.

## CAUSES OF ACTION – SURVIVAL

76.    KMC specifically denies the allegations in Paragraph 76 of Plaintiffs' First Amended Complaint.

77.    KMC is without sufficient information to admit or deny the allegations in Paragraph 77 of Plaintiffs' First Amended Complaint and therefore denies same. KMC further denies that Henry Sims, Sr. was and/or Plaintiffs are entitled to any relief or recovery from KMC in any amount or manner.

78.    In response to Paragraph 78, KMC denies that Henry Sims, Sr. was and/or Plaintiffs are entitled to any relief or recovery from KMC in any amount or manner.

Exhibit G-88

## I.  PRAYER FOR RELIEF

79.    KMC specifically denies Plaintiffs are entitled to recover judgment from KMC for any damages, pre-judgment interest, post-judgment interest, costs of suit, and/or any further relief as alleged in the Prayer of Plaintiffs' First Amended Complaint.

## II.  DEFENSES

80.    Plaintiffs' injuries and damages were caused in whole or in part by the negligence of persons, entities, and/or other persons or third parties, including but not limited to Kevin Davis and Beverly Fuller, over whom KMC had no control, who failed to use that degree of care and caution as would have been used by a reasonably prudent person under the same or similar circumstances, thereby producing or proximately causing or contributing to Plaintiffs' alleged damages or injuries.  Such acts or omissions of Kevin Davis, Beverly Fuller, and/or other persons, third parties, or other then-existing circumstances, were the proximate cause, producing cause, sole proximate cause, or sole producing cause of the subject accident and any alleged resulting injuries or damages.  KMC is therefore entitled to have the Court and jury apply the doctrine of comparative apportionment of responsibility.

81.    This action is subject to the proportionate responsibility provisions of Chapter 33 of the Texas Civil Practice and Remedies Code, including (without limitation) the requirement of § 33.003 thereof that the trier of fact determine the relative responsibility of each plaintiff, defendant, settling person, and responsible third party that may be joined in the suit.  Plaintiffs' recovery, if any, from KMC should be reduced by the comparative negligence, fault, responsibility, or causation attributable to Plaintiffs, to other defendants, to settling persons and/or responsible third parties, such as Kevin Davis or Beverly Fuller.

82.   In the unlikely event an adverse judgment is rendered against KMC in this matter, KMC requests contribution and/or all available credits and offsets as provided for under the Texas Civil Practice and Remedies Code and other applicable law.

83.   The imposition of joint and several liability on KMC is unconstitutional and violates the provisions of the United States Constitution and the Texas Constitution, including but not limited to KMC's right to due process and equal protection of the law.

84.   KMC asserts the defense of rebuttable presumption against liability pursuant to Chapter 82 of the Texas Civil Practice and Remedies Code as the design, manufacture, and marketing of the subject vehicle fully complied with mandatory safety standards, industry standards, and government standards, including, but not limited to the Federal Motor Vehicle Safety Standards in effect at the time the subject vehicle was designed, manufactured, and marketed.

85.   The vehicle at issue complied with all applicable Federal Motor Vehicle Safety Standards.  Accordingly, Plaintiffs' claims may be barred, in whole or in part, by the doctrine of federal preemption.

86.   KMC denies that Plaintiffs performed all the conditions precedent to a right of recovery, and in particular, KMC denies that Plaintiffs gave it any notice of breach related to Plaintiffs' breach of implied warranty claims   Tex. Bus. & Com. Code §§ 2.607(c)(1), 2A.516(c)(1).

87.   KMC states that in the unlikely event Plaintiffs recover any damages for past medical expenses in this case, Plaintiffs' recovery of past medical expenses should be limited to those amounts actually paid or incurred by or on behalf of Plaintiff pursuant to § 41.0105 of the Texas Civil Practice and Remedies Code and under Texas law.

88.   KMC invokes § 18.091 of the Texas Civil Practice and Remedies Code and requests that to the extent that Plaintiffs seek recovery for loss of earning capacity, loss of contributions of a pecuniary value, or a loss of inheritance that the evidence to prove such loss must be present in the form of a net loss after reduction for income tax payments or unpaid tax liability.  Defendant further requests that the Court instruct the jury as to whether any recovery for compensatory damages sought by Plaintiffs is subject to federal income taxes.

89.   KMC reserves the right to amend this Answer to assert additional defenses, affirmative or otherwise, to supplement or amend this pleading, and to assert third-party claims, all as may be required upon the completion of reasonable discovery and investigation, in the manner authorized by the Texas Rules of Civil Procedure.

### III. JURY DEMAND

90.   KMC respectfully requests a jury be empanelled to try the facts and issues of this case.

### IV. REQUEST FOR RELIEF

WHEREFORE PREMISES CONSIDERED, Kia Motors Corporation respectfully requests that the Court deny all relief requested by Plaintiffs in this matter and enter judgment on its behalf and award costs in its favor and for any other relief to which it is justly entitled, either at law or in equity.

Exhibit G-91

Respectfully submitted,

KURT C. KERN – Lead Counsel
State Bar No. 11334600
kurt.kern@bowmanandbrooke.com
CARY A. SLOBIN
State Bar No. 00797445
cary.slobin@bowmanandbrooke.com
TANYA B. SCARBROUGH
State Bar No. 24049268
tanya.scarbrough@bowmanandbrooke.com

BOWMAN AND BROOKE LLP
2501 N. Harwood Street, Suite 1700
Dallas, TX 75201
Telephone: 972.616.1700
Telecopier: 972.616.1701

ATTORNEYS FOR DEFENDANT
KIA MOTORS CORPORATION

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded to all known counsel of record in this cause in accordance with the Federal Rules of Civil Procedure on this 17th day of April, 2014.