ORIGINAL

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
JUN - 1 2015
CLERK, U.S. DISTRICT COURT
By_____
Deputy

| | |
|---|---|
| HENRY LEE SIMS, JR., *et al* § | |
| § | |
| *Plaintiffs,* § | |
| § | |
| VS. § | CASE NO. 4:14-cv-00045-A |
| § | |
| KIA MOTORS AMERICA, INC., and § | |
| KIA MOTORS CORPORATION § | |
| § | |
| *Defendants.* § | |

**KIA'S REPLY TO PLAINTIFFS' RESPONSE TO KIA'S MOTION TO EXCLUDE TESTIMONY OF PLAINTIFFS' EXPERT JERRY WALLINGFORD**

Jerry Wallingford's design defect and safer alternative design opinions are based entirely on Michael McCort's theory that, in order for the fuel tank to have ruptured, the fuel tank had to move down prior to impacting the sign base. This Court recently found that McCort's "downward tank-displacement theory" was unreliable. Consequently, Wallingford's opinions, which are all premised on this unreliable opinion, are also unreliable and must be excluded. But even if this Court finds that Wallingford's opinions are not based on an unreliable foundation, his opinions must be excluded because he has failed to reliably demonstrate the existence of a safer alternative design.

I. **Wallingford's opinions must be excluded in their entirety because they are based on Michael McCort's unreliable downward tank-displacement theory.**

This Court excluded McCort's opinion that the Kia Soul's fuel tank ruptured because the fuel tank moved downward before it interacted with the sign base.[1] Without this theory, Plaintiffs have no explanation of what led to the fuel tank's interaction with the sign base.[2] Absent the interaction, the parties' experts agree that the fuel tank does not rupture. Because Plaintiffs and

---

[1] Order Granting Defs.' Mot. to Limit the Testimony of Pls.' Expert Michael McCort, Doc. 104, at 1-2.
[2] McCort Report at 10, Pls.' App., Doc. 95, at K-103 ("In order for the rupture to occur, . . . a displaced position of the tank w[as] required.").

---

KIA'S REPLY TO PLAINTIFFS' RESPONSE TO KIA'S MOTION TO EXCLUDE TESTIMONY
OF PLAINTIFFS' EXPERT JERRY WALLINGFORD     PAGE 1

their experts cannot explain what led to the fuel tank rupture, they cannot prove—or even contend—that the fuel tank of the Kia Soul was defective because it ruptured.

Wallingford admitted that he did not reconstruct this accident and that, instead, he relied on the opinions of McCort.[3] And in his report, Wallingford adopts McCort's downward tank-displacement theory in explaining the rupture and his proposed safer alternative designs:

> Following the initial crash, *the fuel tank deformed downward some distance* from its mounted position and was therefore closer to the roadway. Had a shield been in place, I believe . . . that ground clearance would not have been lessened and the road sign base would have been narrowly avoided. . . .
>
> Here, had the fuel tank been properly secured, the fuel tank would not have deformed downward and would have avoided contacting the base of the Yield sign. Consequently, failure to use fuel tank mounting straps is another defect in the 2010 Kia Soul.[4]

Furthermore, Plaintiffs told the Court in their response that Wallingford opined that his alternative designs would prevent this downward tank movement:

> Mr. Wallingford's opinions are that if a fuel tank shield was utilized, the ground clearance for the fuel tank would not have been compromised [or, in other words, the tank would not have moved downwards] and the "Yield" sign base would likely have been avoided. . . .
>
> In the state-court action, Mr. Park testified that fuel tank straps result in the fuel tank being secured up against the floor pan of the vehicle so that it cannot move or shift[.] . . . Moreover, Mr. Wallingford has opined . . . that the use of straps prevents the tank from moving downwards.[5]

Thus, Wallingford's opinions that the Soul's fuel tank was defective and that his alleged "safer alternative designs" would have prevented a fuel tank rupture (that he, now, cannot explain) are based on the unreliable premise that the fuel tank ruptured because it moved downward.[6]

The Texas Supreme Court has specifically held that "[i]f the foundational data underlying opinion testimony are unreliable, an expert will not be permitted to base an opinion on that data because any opinion drawn from that data is likewise unreliable."[7] In other words, an expert's

---

[3] Wallingford Dep. 95:22-96:1, Defs.' App., Doc. 88, at F-96-97.
[4] Wallingford Report at 23, Defs.' App., at C-73, C-76 (emphasis added).
[5] Pls.' Brief in Opposition to Defs.' Mot. to Exclude Jerry Wallingford, Doc. 94, at 16-18 [hereinafter Pls.' Resp.].
[6] Wallingford Report at 29-30, Defs.' App., at C-78-80.
[7] *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 712-14 (Tex. 1997).

opinion is unreliable and, legally, no evidence if the premise upon which his opinions are based is unreliable.[8] Wallingford's design defect and alternative design opinions are all based upon McCort's unreliable downward tank-displacement theory. Thus, Wallingford's design defect and safer alternative design opinions are also unreliable and must be excluded. As such, the Court's inquiry can, and should, end here.

II. **Wallingford's opinions must be excluded because they fail to satisfy Federal Rule of Evidence 702 and applicable Texas law and are, therefore, unreliable.**

Should the Court continue its analysis, Wallingford's testimony still falls short of the requirements of Rule 702 because his opinions are not based on sufficient facts or data and are not the product of reliable principles and methods.[9] In a products liability action alleging a design defect, *the burden is on the claimant* to prove (1) that there was a safer alternative design and (2) that the defect was a producing cause of the personal injury or death for which the claimant seeks recovery.[10] A "safer alternative design" means a product design, other than the one actually used that in reasonable probability, (1)(a) *would have prevented or significantly reduced the risk of the claimant's personal injury or death* (b) without substantially impairing the product's utility; and (2)(a) was economically and (b) technologically feasible (c) at the time the product left the control of the manufacturer or seller by the application of existing or reasonably achievable scientific knowledge.[11] If Plaintiffs fail to demonstrate *any* of these elements of a safer alternative design, their design defect claim must fail.

A. **No supporting facts and data exist demonstrating a tank shield would have prevented or significantly reduced the risk of injury or death.**

Plaintiffs have still failed to prove that Wallingford's abstract fuel tank shield idea would have prevented or significantly reduced the risk of injury or death. Wallingford did not disclose

---

[8] *Id.* at 713.
[9] *See* Fed. R. Evid. 702; Tex. R. Civ. P. § 82.005.
[10] Tex. R. Civ. P. § 82.005(a).
[11] *See* Tex. R. Civ. P. § 82.005(b).

in his expert report a specific shield design.[12] Since then, he has been unable to articulate a specific shield design.[13] And he has failed to prove that his shield concept would have prevented or significantly reduced the risk of Mr. Sims' injury or death.[14] Wallingford has not relied on any facts, data, or literature to support his conclusions,[15] and he has neither conducted any testing nor relied on the testing of others.[16] Wallingford has no science, such as calculations related to his shield idea, to support his speculation.[17]

Contrary to Plaintiffs' contention, McCort did not calculate the forces that acted on the fuel tank during the crash. While McCort did analyze the speeds of the vehicles during the collision, he did not calculate the force required for a sign base to puncture a fuel tank:

> Q   How much force would it take for an immovable object like that slip base to penetrate a fuel tank?
> A   I don't know.
> Q   You haven't tried to calculate that or consider that?
> A   No. . . .[18]

To determine whether a fuel tank shield would prevent a fuel tank from being ruptured, one would first need to understand the force the fuel tank shield would need to withstand to protect against a rupture. Because Wallingford relied on McCort who did not calculate these forces, Wallingford cannot opine—based on anything other than his own *ipse dixit*—that his fuel tank shield would have been able to withstand the force to which the Kia Soul's fuel tank was

---

[12] *See* Wallingford Report, Defs.' App., at C-51-82.
[13] *See* Kia's Mot. to Exclude the Testimony of Pls.' Expert Jerry Wallingford, Doc. 87, at 14-17.
[14] *See id.*
[15] *See* Kia's Mot. to Exclude the Testimony of Pls.' Expert Jerry Wallingford, Doc. 87.
[16] *Watkins v. Telsmith*, 121 F.3d 984, 991-93(5th Cir. 1997) (affirming the exclusion of an expert who had not tested or reviewed any testing of his proposed safer alternative design); *Casey v. Toyota Motor Eng'g & Mfg. N. Am., Inc.*, 770 F.3d 322, 330-31 (5th Cir. 2014); Wallingford Dep. 111:24-25, Defs.' App., at F-99. Plaintiffs argue that the "Panther Platform" testing supports the opinion that a tank shield would have been prevented tank rupture. First, Plaintiffs fail to mention that this testing was used to analyze rear impacts—not direct frontal fuel tank impacts—and the resulting upgrade was not a tank shield. Nonetheless, Wallingford did not rely on this testing to support his opinions—this testing was not discussed until after his opinions were supposedly fully developed.
[17] *Bourelle v. Crown Equip. Corp.*, 220 F.3d 532, 537 (7th Cir. 2000) (excluding an expert's opinion when he had not prepared any detailed design or calculations, performed an economic feasibility study, prepared preliminary design drawings, or performed any risk-utility type testing).
[18] McCort Dep. 114:18-25, Defs.' App., at D-84.

subjected. Plaintiffs have offered no other facts or data to demonstrating that a fuel tank shield would have prevented or significantly reduced the risk injury or death.[19]

### B.   Wallingford has not demonstrated feasibility of a specific shield.

Plaintiffs have directed the Court's attention to "dozens of pages of documents and photographs" of fuel tank shields that Wallingford claims would have prevented or significantly reduced the risk of Plaintiffs' injuries.[20] Wallingford could not, during his deposition, provide any detailed information regarding design of these shields, including the kind of metal used, the thickness of the shield, the angle of the shield, or the type of forces it must be able to withstand.[21] Thus, he has no actual analysis of these shield designs and no facts or data supporting his speculative conclusion that those shields were technologically feasible for the 2010 Kia Soul.[22] Regardless, Wallingford admitted that none of the vehicles he examined had the shield he proposed in this case.[23]

Moreover, none of these photographs or documents reflects the alternative design Wallingford abstractly discussed. During his deposition, Wallingford argued that the Kia Soul should have had a shield of undetermined thickness with an angle between fifteen and forty-five degrees covering the bottom and sides of the tank.[24] When asked if he could identify any passenger car that had the shield he was proposing should have been used on the subject vehicle,

---

[19] Pls.' Resp. at 16. At least one other district court in the Fifth Circuit has previously excluded the opinions of Jerry Wallingford. *Thompson v. Nissan N. Am., Inc.*, 429 F. Supp. 2d 759, 781-82 (E.D. La. 2006). Like in this case, in *Thompson*, Wallingford failed to conduct the necessary analysis to reliably establish his design defect opinions and failed to present any other evidence supporting his testimony. *Id.*
[20] *Id.* at 14.
[21] *See* Wallingford Report, Defs.' App., at C-51-82.
[22] Fed. R. Evid. 702. Instead, to support their argument that the fuel tank shield was technologically feasible, Plaintiffs heavily rely on the testimony of Defendants' expert, Ridenour, whose testimony was provided after Wallingford's opinions were supposedly developed. Pls.' Resp. at 10 -12. Plaintiffs should not be permitted to rely on Ridneour testimony as a "gap filler" to Wallingford's incomplete analysis.
[23] Wallingford Dep. 20:1-4, Defs.' App., at F-90.
[24] Wallingford Dep. 144:3-9, Defs.' App., at F-110.

---

KIA'S REPLY TO PLAINTIFFS' RESPONSE TO KIA'S MOTION TO EXCLUDE TESTIMONY
OF PLAINTIFFS' EXPERT JERRY WALLINGFORD                                                                 PAGE 5

Wallingford replied no.[25] Yet, Plaintiffs now offer these documents and photographs as reflections of Wallingford's proposed shield design.[26] If these documents and photographs do reflect Wallingford's proposed designs, he should have disclosed this information in his expert report on January 30, 2015.

### C. Wallingford has not offered any facts or data proving that the use of fuel tank straps to increase the ground clearance was technologically feasible.

Wallingford has no reliable facts or data to demonstrate that fuel tank straps were feasible and would not have substantially impaired the utility of the 2010 Kia Soul. Wallingford testified that for the fuel tank straps to prevent the rupture, the fuel tank would have to be raised 2 ¼ inches. Contrary to Plaintiffs' assertion, Wallingford admitted during his deposition that, to do this, vehicle modifications are required but he does not know exactly what would be required:

> A    In order for the straps to be completely successful in this accident, . . . based on how the T base struck the tank in this incident, I would have to pull the tank up approximately two inches into the existing cavity, **maybe with some minor reconfiguration of the fuel tank, maybe with some minor reconfiguration of the floor pan** . . . .[27]

Wallingford has provided no basis that these modifications to the 2010 Kia Soul are feasible and further, if modified, he has no data demonstrating what the overall effect to the vehicle would be. Wallingford does not deny that raising the tank by his proposed 2 ¼ inches by the use of tank straps would create a tank-to-ground clearance of 10.4 inches.[28] Like the rest of his opinions, he has no analysis to withstand Rule 702's scrutiny.

---

[25] *Id.* Wallingford continued, "[The shield angle] is something that I have proposed in response to your question because of the exposure to the front of this particular tank . . . ." In other words, even though Wallingford's opinions should have been fully developed by the expert report disclosure deadline, Wallingford was still attempting to develop his opinions during his deposition.
[26] Pls.' Resp. at 14-15
[27] Wallingford Dep. 135:15-136:1. This testimony is not part of the original Appendices but was added to controvert Plaintiffs' misrepresentations in their Response. Defendants will submit the testimony if permitted and requested by the Court.
[28] *Id.* 90:9-10, at 95. During his deposition, Wallingford could not identify any passenger car with ground clearance of 8.4 or more inches. *Id.* 157:2-5, at 115.

**D. Wallingford has not offered any facts or data supporting his opinions regarding economic feasibility and risk-utility.**

First, Wallingford has not provided facts or data supporting a risk-utility of increasing the ground clearance of the Kia Soul or of using fuel tank straps. Second, Wallingford provided no evidence or data in his expert report or during his deposition to support his conclusory statements that he analyzed the economics of the alternatives he proposed.[29] Third, Wallingford provided no evidence or data in his report or during his deposition to support his conclusory statement that a fuel tank shield would not hinder the performance of the Kia Soul.[30]

Plaintiffs seek to distract the Court from this failure by arguing that Defendants should have asked him to explain his analyses during his deposition. Plaintiffs have the burden to prove that their purported alternative designs are sufficient under Texas law. Any evidence or data Wallingford had to support his conclusions should have been disclosed in his expert report.[31] Because the information was not disclosed, Plaintiffs cannot offer these new opinions simply by stating them in a conclusory declaration almost four months after the expert report was due.[32]

**E. Wallingford's crashworthiness opinions are not based on a required defect.**

Plaintiffs blur the lines between facts and expert opinions. Both parties agree that post-collision, three of the doors were inoperable due to the impact/collision damage.[33] Wallingford, however, has opined that because the doors were inoperable indicates the vehicle was not crashworthy. Texas courts have repeatedly held that, "[t]he mere fact that an accident occurred is not sufficient proof that the automobile was defective."[34]

---

[29] Wallingford Dep. 93:2-9, Pls.' App., Doc. 95, at J-90-91.
[30] See Wallingford Report at 23, Defs.' App., at C-73.
[31] See Tex. R. Civ. P. 82.005; Fed. R. Civ. P. 26(a)(2).
[32] See Fed. R. Civ. P. 26(a)(2).
[33] Pls.' Resp. at 22.
[34] Romo v. Ford Motor Co., 798 F. Supp. 2d 798, 809 (S.D. Tex. 2011); Brown v. Miska, 96 F.3d 1445 (5th Cir. 1996).

For Wallingford's crashworthiness opinion to stand Plaintiffs must produce expert testimony supporting the existence of a defect; without such testimony, Plaintiffs cannot reach the jury.[35] Plaintiffs' have not challenged their requirement to so.[36] Here, Wallingford has admitted he has no door system design defect opinions or safer alternative designs.[37] Thus, he cannot opine that the vehicle and its doors were not crashworthy.[38]

### III. Wallingford's Declaration should be disregarded and excluded.

Rule 26(a)(2) obligated Wallingford to provide "a complete statement of all opinions he would express and the basis and reasons for them" and "the facts or data considered by the witness in forming them."[39] Plaintiffs now attempt to add to his existing opinions and testimony to support their response through a conclusory declaration attached as an exhibit. With this conclusory declaration, Plaintiffs attempt to provide Wallingford's "analysis" of technological and economic feasibility as well as performance of the risk-utility analysis. Plaintiffs argue that Defendants should have asked about Wallingford's analyses during his deposition and thus, seek to bypass the requirements of Rule 26(a)(2) and their burden of proof.[40] Any opinion required under Texas law to prove Plaintiffs' strict product liability not disclosed at the time of the expert disclosure deadline should be excluded.[41]

Even if the Court considers it, Wallingford's conclusory declaration continues to evidence Wallingford's complete reliance upon the unreliable downward-tank displacement theory for his advocated alternative designs. Wallingford concludes in his declaration that the obvious benefit of using fuel tank shields and reinforcing straps is that both are specifically

---

[35] *See* Kia's Mot. to Exclude the Testimony of Pls.' Expert Jerry Wallingford, Doc. 87, at 26-27.
[36] Pls.' Resp. at 22-23.
[37] *See* Kia's Mot. to Exclude the Testimony of Pls.' Expert Jerry Wallingford, Doc. 87, at 26-27. He has also failed to demonstrate that Plaintiffs' injuries were enhanced by the inoperability of the doors post-impact.
[38] *See* Kia's Mot. to Exclude the Testimony of Pls.' Expert Jerry Wallingford, Doc. 87, at 26-27.
[39] Fed. R. Civ. P. 26(a)(2).
[40] *See* Pls.' Resp. at 13, 21-22.
[41] *See* Fed. R. Civ. P. 26(a)(2).

designed to preserve ground clearance for the tank.[42] The declaration too is devoid of sufficient facts or data and of any proof that his testimony is based on reliable principles and methods or that he has reliably applied the principles and methods to the facts of the case.[43]

Wallingford's conclusory declaration also contradicts his own deposition testimony in an effort to avoid being excluded in this case such that his declaration can be deemed a "sham declaration."[44] He states that during his deposition he provided defense counsel with numerous photographs of the safer alternative designs he believes would have prevented or significantly reduced the likelihood that Henry Sims Sr. died in this vehicle fire.[45] During his deposition, however, Wallingford testified that none of the vehicles he examined had the shield he proposed in this case.[46]

## Conclusion

Wallingford has opined that the Kia Soul was defective because the fuel tank was not adequately protected from moving downward and from the resulting rupture during contact with the sign base. All of his opinions, however, are based on the theory that the fuel tank moved downward during the collision, which the Court has already determined to be unreliable. Because Wallingford's design defect opinions are based on an unreliable opinion, they are, themselves, unreliable and must be excluded.

But even if not excluded on that basis alone, his testimony cannot withstand Rule 702's scrutiny or *Daubert*. Wallingford has unsupported conclusions that are not based on sufficient facts or data and are not the product of reliable principals and methods. Moreover, he has not reliably applied the principals and methods to the facts of this case. Further, he cannot meet the

---

[42] Sworn Decl. of Jerry G. Wallingford ¶ 21, Pls.' App., at C-21.
[43] *Id.* at C-18-22.
[44] *Cole v. Frank's Casing Crew & Rental Tools, Inc.*, No. CIV.A. H-04-2566, 2005 WL 2647966, at *5 (S.D. Tex. Oct. 17, 2005).
[45] Sworn Decl. of Jerry G. Wallingford ¶ 27, Pls.' App., at C-21.
[46] Wallingford Dep. 20:1-4, Ex. F, App. at 90.

---


requirements of Section 82.005 of the Texas Civil Practice & Remedies Code by demonstrating the existence of a safer alternative design. Finally, his crashworthiness opinion is wholly unsupported. For these reasons, Wallingford's remaining opinions and testimony must not proceed to the jury.

Respectfully submitted,

**KURT C. KERN**
State Bar No. 11334600
kurt.kern@bowmanandbrooke.com
**CARY A. SLOBIN**
State Bar No. 00797445
cary.slobin@bowmanandbrooke.com
**TANYA B. SCARBROUGH**
State Bar No. 24049268
tanya.scarbrough@bowmanandbrooke.com
**AMANDA R. MCKINZIE**
State Bar No. 24088028
amanda.mckinzie@bowmanandbrooke.com
**BOWMAN AND BROOKE LLP**
2501 North Harwood, Suite 1700
Dallas, Texas 75201
Telephone: (972) 616-1700
Facsimile: (972) 616-1701
**DAVID R. KELLY, admitted** *pro hac vice*
State Bar No. 0054665
david.kelly@bowmanandbrooke.com
**BOWMAN AND BROOKE, LLP**
150 South Fifth Street, Suite 3000
Minneapolis, MN 55402
Telephone: (612) 339-8682
Facsimile: (612) 672-3200
**COUNSEL FOR DEFENDANTS**

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded to all known counsel of record in this cause in accordance with the Federal Rules of Civil Procedure on this 1st day of June, 2015.