ORIGINAL

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| HENRY LEE SIMS, JR., et al., | |
| Plaintiffs, | Case No. 4:14-cv-00045-A |
| VS. | |
| KIA MOTORS AMERICA, INC. and KIA MOTORS CORPORATION, | |
| Defendants. | |

**PLAINTIFFS' OPPOSITION AND BRIEF IN SUPPORT
TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

Defendants seek summary judgment dismissal of all of plaintiffs' claims. The basis for defendants' request is that without expert testimony, plaintiffs cannot sustain their burden of proof applicable to their claims. Defendants argue that because the court has stricken the testimony of Michael McCort and Jerry Wallingford, summary judgment is appropriate.

Plaintiffs do not dispute defendants' characterization of Texas law regarding the necessity of expert testimony. However, plaintiffs contend that the opinions of both Mr. McCort and Mr. Wallingford are admissible. Consequently, defendants' motion for summary judgment should be denied.

## II. PLAINTIFFS' EXPERTS

### A. OFFER OF PROOF REGARDING MICHAEL McCORT

The Court previously limited the testimony that Mr. McCort would be permitted to offer at trial. See Dkt. No. 104. Specifically, the Court ruled that Mr. McCort could not testify that the fuel tank of the subject Kia Soul moved downward during the crash sequence. The Court

1

stated that Mr. McCort did not rely upon sufficient facts and data in reaching his conclusions and that his opinions did not satisfy the requirements of FRE 702 (a)-(d).

If allowed to testify at trial, Mr. McCort would testify that he is a professional engineer with expertise in performing automobile reconstructions. *See* Pls' Appendix, Exhibit A, p. 3. Mr. McCort is licensed and certified in multiple states, and who has lectured at universities and engineering forums on various aspects of accident reconstruction. *See* Pls' Appendix, Exhibit A, p. 3. He is thus familiar with the appropriate scientific methodologies used in performing valid accident reconstructions. *See* Pls' Appendix, Exhibit A, p. 4.

Accident reconstruction involves the accumulation and analysis of data, information and evidence from a particular collision in order to ascertain how the crash occurred. *Id.* at pp. 3-4. Many times, accident reconstruction involves "ruling out" that a particular event occurred in a crash sequence by analyzing available information, physical evidence and data. *Id.* at p. 4. The undisputed evidence in the record is that Mr. McCort performed his accident reconstruction in this case in accordance with the appropriate scientific methodologies applicable to accident reconstructions. *Id.* at p. 5.

A central question in this case involves how the fuel tank of the 2010 Kia Soul was able to puncture by the base of a street sign located along the roadway where this crash occurred. There is no dispute that the fuel tank of the vehicle was torn open by the base of the Yield sign. The dispute centers on how the tank was able to contact the sign post base.

The fuel tank of the Kia Soul is mounted directly to the body of the vehicle. *Id.* at p. 4. Therefore, in order for the fuel tank to be in a position to hit the sign post base, one of two things necessarily had to occur. Either the entire vehicle lost ground clearance during the crash or the

fuel tank itself was deformed downward as a part of the crash sequence. Those are the only two ways this sign post base, which did not move, could contact this vehicle's fuel tank. *Id.* at p. 4.

As a part of his accident reconstruction in this case, Mr. McCort analyzed whether the vehicle as a whole, rather than just the fuel tank, dropped sufficiently to allow the tank to contact the sign post base. *Id.* at pp. 4-5. Mr. McCort conducted simulations on numerous vehicle configurations incorporating the different kinds of physical damage that may have been sustained by the Kia Soul during the crash sequence. This included a worst case scenario configuration that incorporated the most several potential damage sustained by the vehicle that could be accounted for by the actual physical evidence seen on the vehicle. *Id.* at p. 5. This methodology is widely-used by accident re-reconstruction experts. *Id.* at pp. 4-5.

After reviewing all available evidence, Mr. McCort concluded that the body of the Kia Soul could not have dropped sufficiently to allow the fuel tank of the vehicle to be in position to make contact with the "Yield" sign base. *Id.* at pp. 4-5. Considering that the <u>only</u> other possibility is that the fuel tank, itself, dropped during the crash, Mr. McCort concluded that the tank deformed downward before hitting the Yield sign.

Mr. McCort's opinions are supported by the physical evidence, as well. He observed that the fuel tank's mounting brackets were bent after the crash—a fact indicative of tank movement. In addition, video footage of defendants' own testing of the fuel tank shows that its sags downwards several inches when the vehicle is accelerated or decelerated even in the absence of a collision. *Id.* at p 5.

Plaintiffs submit that Mr. McCort's opinions are reliable, supported by the facts and data and should be admissible at the time of trial. Defendants' may not agree with Mr. McCort's opinions, but their arguments pertain to the weight of this evidence, not its admissibility.

### B. OFFER OF PROOF REGARDING JERRY WALLINGFORD

Through various orders, the Court has excluded the testimony of Jerry Wallingford. *See* Dkt. Nos. 105, 110. The Court concluded Mr. Wallingford did not rely upon sufficient facts and data in reaching his conclusions and that his opinions did not satisfy the requirements of FRE 702 (a)-(d). Specifically, the Court held that "Wallingford's opinions are based on the premise that '[f]ollowing the initial crash, the fuel tank deformed downward some distance from its mounted position and was therefore close to the roadway.'" *Id.* at pg. 2. Because this conclusion was based upon the already-stricken opinions of Mr. McCort, discussed above, the Court determined that Mr. Wallingford's testimony was inadmissible, as well. *Id.*

As stated above, plaintiffs respectfully contend that Mr. McCort's methodology was sufficient and his testimony should be admitted at trial. However, setting aside the admissibility of Mr. McCort's opinions regarding the downward displacement of the fuel tank, Mr. Wallingford has offered opinions that are *not* reliant upon Mr. McCort's conclusions regarding the downward displacement of the fuel tank.

If permitted to testify at trial, Mr. Wallingford would supply evidence establishing each of the elements of plaintiffs' claims. *See* Dkt. Nos. 95; *see also* Pls' App. at Exs. B, C & E. Mr. Wallingford has opined that the use of fuel tank straps would necessarily have *increased* the amount of ground clearance for the subject Kia Soul between 2 ¼ inches without modifications, and up to 3 ¾ inches with minor modifications. *See* Dkt. No. 94, p. 17; *see also* Pls' App. at Ex. E, p. 62. Mr. Wallingford testified that this increase in ground clearance would have allowed the fuel tank to avoid hitting "Yield" sign base regardless of any downward displacement of the fuel tank. *Id.*

Moreover, Mr. Wallingford also testified that the use of a fuel tank shield would have prevented the fuel tank from rupturing even if the "Yield" sign base could *not* be avoided. Dkt.

4

No. 95, Ex. D. pp. 44-46; Pls' App. at Ex. C, pp. 33-34. In particular, Mr. Wallingford opined that a fuel tank shield would have absorbed and redirected the energy from striking the "Yield" sign base away from the Kia Soul's fuel tank. *Id.* Certainly, this opinion is not reliant upon the downward displacement of the fuel tank as it presumes the tank would be contacted by the slip base.

Plaintiffs respectfully submit that the opinions of Mr. Wallingford regarding the efficacy of using fuel tank straps and a fuel tank shield to protect the fuel tank of the subject Kia Soul are reliable and not dependent upon Mr. McCort's downward displacement theory. Consequently, Mr. Wallingford should be permitted to testify at trial.

### III. CONCLUSION

Plaintiffs agree that Texas law would require them to offer expert testimony in order to carry the burden of proof applicable to their claims. Absent expert testimony, summary judgment would be appropriate.

However, for the reasons stated herein, plaintiffs contend that each of their experts have authored relied opinions that the jury should be permitted to hear. These opinions and the related testimony of the experts demonstrate the existence of genuine issues of material fact as to all elements of Plaintiffs' claims. Consequently, summary judgment should be denied.

DATED this 8th day of June, 2015

**HAGENS BERMAN SOBOL SHAPIRO LLP**

Steve W. Berman (*pro hac vice*)
WSBA No. 12536
steve@hbsslaw.com
Martin D. McLean (*pro hac vice*)
WSBA No. 33269
martym@hbsslaw.com
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292

Facsimile: (206) 623-0594

By /s/ Martin Woodward
Martin Woodward
Marc R. Stanley
State Bar No. 19046500
marcstanley@mac.com
Martin Woodward
State Bar No. 00797693
mwoodward@stanleylawgroup.com
**STANLEY LAW GROUP**
6116 N. Central Expressway
Suite 1500
Dallas, TX 75206
Telephone: (214) 443-4300
Facsimile: (214) 443-0358
*Counsel For Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 8, 2015 the foregoing was served electronically on all counsel who have appeared in this case. Once filed by the Clerk, notice of this filing will also be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may also access this filing through the Court's system.

*/s/ Martin Woodward*
MARTIN WOODWARD